IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARTHA JULIA HIDALGO                          :
VILLAFANE, Individually, As Executor and      : Civil Action No.: 2:20-cv-06393-RBS
as Personal Representative of the Estate of   :
Martha Erika Alonso Hidalgo,                  :
                                              :
MA. GUADALUPE NANCY CANALES                   :
ELIZALDE, Individually, as Executor and as    :
Personal Representative of the Estate of Marco:
Antonio Tavera Romero,                        :
                                              :
LOURDES FRANCISCA MENDOZA                     :
HERNANDEZ, Individually, as Executor and      :
as Personal Representative of the Estate of   :
Hector Baltazar Mendoza,                      :
         v.                                   :
AGUSTAWESTLAND PHILADELPHIA                    :
CORPORATION                                   :
         and                                  :
LEONARDO S.p.A.                               :

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO *FORUM NON CONVENIENS* AND PURSUANT TO FED. R. CIV. P. 12(b)(7) FOR FAILURE TO JOIN NECESSARY AND INDISPENSABLE PARTIES**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................iii-vi

I. PRELIMINARY STATEMENT ....................................................................................1

II. FACTUAL BACKGROUND........................................................................................2

III. THE SUBJECT HELICOPTER ...................................................................................3

IV. MOTION TO DISMISS PURSUANT TO *FORUM NON CONVENIENS* .........................5

    A. Legal Standard ....................................................................................................5

    B. Argument ............................................................................................................6

        1. An Adequate Alternative Forum Exists in Mexico.................................7

        2. The Plaintiffs' Choice of Forum is Entitled to Limited – If Any- Deference.......9

        3. Private and Public Interest Factors Favor Litigation in Mexico ........................12

           a. Private interest factors favor litigation in Mexico ........................................13

               1. Relative Ease of Access to Sources of Proof and Residence of the Parties and Witnesses.........................................................................................13

               2. Availability of Compulsory Process for Attendance of Unwilling, and the Cost of Obtaining Evidence of Willing, Witnesses ........................14

               3. The Possibility of View of Premises, if View Would be Appropriate to the Action................................................................................................16

               4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive ................................................................17

           b. Public interest factors favor litigation in Mexico .........................................17

               1. Administrative Difficulties Flowing from Court Congestion and Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty.........................................................................................................17

               2. Local Interest in Having Localized Controversies Decided at Home.....19

i

3.  Interest in Having the Trial of a Diversity Case in a Forum That is at Home with the Law That Must Govern the Action and, Relatedly, the Avoidance of Unnecessary Problems in Conflict of Laws, or in the Application of Foreign Law.................................................................20

C.  Summary ............................................................................................................21

V.  MOTION TO DISMISS FOR FAILURE TO JOIN NECESSARY AND INDISPENSABLE PARTIES ...........................................................................................22

A.  Legal Standard ...................................................................................................22

B.  Argument ...........................................................................................................24

1.  SAA and RFS are Necessary Parties to the Adjudication of this Action...............27

2.  SAA and RFS are Foreign Companies that Cannot be Joined Under the Jurisdiction of this Court.......................................................................................28

3.  SAA and RFS are Indispensable to the Resolution of this Matter........................28

C.  Summary ............................................................................................................30

VI.  CONCLUSION..............................................................................................................30

## TABLE OF AUTHORITIES

### CASES

*Acosta v. JP Morgan Chase & Co.,*
219 Fed. Appx. 83 (2d Cir. 2007)................................................................................6, 10

*Barrett v. Ambient Pressure Diving, Ltd.,*
235 F.R.D. 263 (E.D. Pa. 2006)....................................................................................23

*Behrens v. Arconic, Inc.,*
487 F. Supp.3d 283, 2020 WL 5542387 (E.D. Pa. Sept. 16, 2020)........... 6, 7, 9, 10, 12-15

*Bloch v. Sun Oil Corp.,*
335 F. Supp. 190 (W.D. Okla. 1971)..............................................................................26

*Clerides v. Boeing Co.,*
534 F.3d 623 (7th Cir. 2008) ........................................................................................19

*Dahl v. United Technologies Corp.,*
632 F.2d 1027 (3d Cir. 1980)...................................................................................13, 16

*DaRocha v. Bell Helicopter Textron, Inc.,*
451 F. Supp. 2d 1318 (S.D. Fla. 2006) .................................................................7, 13, 21

*Dominguez v. v. Gulf Coast Marine & Assocs.,*
2011 U.S. Dist. LEXIS 42703 (E.D. Tex. Apr. 20, 2011)...............................................7, 8

*Dtex, LLC v. BBVA Bancomer, S.A.,*
512 F. Supp.2d 1012 (S.D. Tex.), *aff'd,*508 F.3d 785 (5th Cir. 2007) ..............................17

*Fitzgerald v. Texaco Inc.,*
521 F.2d 448 (2d Cir. 1974), *cert. den.*, 423 U.S. 1052 (1976)........................................16

*General Refractories Co. v. First State Ins. Co.,*
500 F.3d 306 (3d Cir. 2007).........................................................................................23

*Gonzalez v. Chrysler Corp.,*
301 F.3d 377 (5th Cir. 2002), *cert. den.*, 538 U.S. 1012 (2003).........................................8

*Gulf Oil Corp. v. Gilbert,*
330 U.S. 501 (1947)....................................................................................5, 12, 14, 19

*Helog AG v. Kaman Aerospace Corp.,*
    228 F. Supp. 2d 91 (D. Conn. 2002)......................................................................16

*In Re Air Crash Near Peixoto De Azeveda, Brazil, on September 29, 2006,*
    574 F. Supp.2d 272 (E.D.N.Y. 2008), *aff'd*, 354 Fed. Appx. 585 (2d Cir. 2009) ............16

*In Re Air Crash Over The Mid-Atlantic on June 1, 2009,*
    760 F. Supp.2d 832 (N.D. Cal. 2010) ..............................................................19

*In Re Air Crash Over The Taiwan Strait on May 25, 2002,*
    331 F. Supp. 2d 1176 (C.D. Cal. 2004) ...........................................................20

*In Re Ford Motor,*
    591 F.3d 406 (5th Cir. 2009), *cert. den.*, 561 U.S. 1006 (2010)......................7-8

*Incubadora Mexicana, SA de CV v. Zoetis, Inc.,*
    116 F. Supp.3d 519 (E.D. Pa. 2015) .................................................................7

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,*
    11 F.3d 399 (3d Cir. 1993).............................................................................23

*Jones v. FC USA, Inc.,*
    2017 WL 5453497 (E.D. Pa. Nov. 14, 2017) ..................................................14

*Jurimex Kommerz Transit G.M.B.H. v. Case Corp.,*
    201 F.R.D. 337 (D. Del. 2001), *aff'd*, 65 Fed. Appx. 803 (3d Cir. 2003) ........................23

*Kickapoo Tribe v. Babbitt,*
    43 F.3d 1491 (D.C. Cir. 1995)........................................................................28

*Leon v. Million Air, Inc.,*
    251 F.3d 1305 (11th Cir. 2001) .....................................................................7

*Loeffler Thomas P.C. v. Fishman*,
    2016 U.S. Dist. LEXIS 49475 (E.D. Pa. Apr. 12, 2016) ...................................24

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.,*
    583 F.3d 656 (9th Cir. 2009), *cert. den.*, 562 U.S. 1062 (2010).........................8

*Lueck v. Sundstrand Corp.,*
    236 F.3d 1137 (9th Cir. 2001) ......................................................................20

*Melbourn v. Wal-Mart Stores, Inc.*,
　　2020 WL 1470850 (E.D. Pa. Mar. 26, 2020) ............................................................5, 6

*Melgares v. Sikorsky Aircraft Corp.*,
　　613 F. Supp.2d 231 (D. Conn. 2009) ...........................................................................10

*Nai-Chao v. Boeing Co.*,
　　555 F. Supp. 9 (N.D. Cal. 1982), *aff'd*, 708 F.2d 1406 (9th Cir. 1983) ..........................17

*Pain v. United Technologies Corp.*,
　　637 F.2d 775 (D.C. Cir. 1980), *cert. den.*, 454 U.S. 1128 (1981) ..............................26, 29

*Piper Aircraft Co. v. Reyno*,
　　454 U.S. 235 (1981) ......................................................... 5, 6, 9-10, 13, 16, 26, 29

*Pollux Holding Ltd. v. The Chase Manhattan Bank*,
　　329 F.3d 64 (2d Cir. 2003), *cert. den.*, 540 U.S. 1149 (2004) ....................................10, 11

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
　　390 U.S. 102 (1968) ....................................................................................................23

*Rajet Aeroservicios S.A. de C.V. v. Cervantes*,
　　2019 U.S. Dist. LEXIS 227274 (S.D. Tex. May 20, 2019) .............................................22

*Saqui v. Pride Cent. America, LLC*,
　　595 F.3d 206 (5th Cir. 2010) ........................................................................................8

*Satz v. McDonnell Douglas Corp.*,
　　244 F.3d 1279 (11th Cir. 2001) .........................................................................7, 13, 20

*Scottsdale Ins. Co. v. RSE Inc.*,
　　303 F.R.D. 234 (E.D. Pa. 2014) ..................................................................................23

*Sigalas v. Lido Mar., Inc.*,
　　776 F.2d 1512 (11th Cir. 1985) ...................................................................................12

*Sinochem Int'l. Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
　　549 U.S. 422 (2007) .......................................................................................................9

*Torreblanca de Aguilar v. Boeing Co.*,
　　806 F. Supp. 139 (E.D. Tex. 1992) .......................................................................8, 18, 20

*U.S. v. Rose,*
    34 F.3d 901 (9th Cir. 1994) ...........................................................................22

*Wilmot v. Marriott Hurghada Mgmt., Inc.,*
    712 Fed. Appx. 200 (3d Cir. 2017)............................................................5, 6

*Windt v. Qwest Communications Intern., Inc.,*
    529 F.3d 183 (3d Cir. 2008), *cert. den.*, 555 U.S. 1098 (2009)...............6, 9, 10

*Whyham v. Piper Aircraft Corp.,*
    96 F.R.D. 557 (M.D. Pa. 1982)...............................................................24-29

## **OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(7)............................................................................................1, 22

Fed. R. Civ. P. 19 ....................................................................................1, 22-25, 27-30

## I.     <u>PRELIMINARY STATEMENT</u>

The defendants, AgustaWestland Philadelphia Corporation ("AWPC") and Leonardo S.p.A. ("Leonardo") (collectively, "Defendants"), file the present Memorandum of Law in support of their motion to dismiss pursuant to the doctrine of *forum non conveniens* and for failure to join necessary and indispensable parties (the "Motion").   As discussed further below, Defendants' Motion should be granted pursuant to the doctrine of *forum non conveniens* because: (i) the Plaintiffs -- all of whom are citizens and residents of Mexico and represent decedents who were citizens of Mexico (including both the Governor and Assistant Governor of the Mexican State of Puebla) -- are entitled to limited, if any, deference in their choice of forum; (ii) an adequate and available alternative forum exists in Mexico; and (iii) the interests of Mexico in adjudicating this matter outweigh the Plaintiffs' interests in the United States as their choice of forum.  Mexico has jurisdiction over this dispute and is a more appropriate forum for resolving it.

Defendants also move pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure, because the Plaintiffs have failed to, but apparently cannot, join Rotor Flight Services S.A. de R.L. de C.V. ("RFS") and Servicios Aéreos de Altiplano, S.A. de C.V. ("SAA") as defendants in this lawsuit.  SAA is a Mexican company that owned and operated the helicopter at issue in this case, an Agusta A109S model helicopter which was assigned Mexican Registration No. XA-BON and Serial No. 22174 (the "Subject Helicopter").  *See* Affidavit of John M. Socolow sworn to on March 24, 2021 ("Socolow Aff."), Exhibit A, Complaint at ¶ 7; Socolow Aff., Exhibit B, true and correct copy of a certified Spanish to English language translation of the final report regarding the Subject Accident issued by the Mexican Federal Civil Aviation Agency ("Agencia Federal de Aviación Civil" or "AFAC"), Report No. ACCDTARA004/2018MMPB (the "AFAC Report") at Page 5 of 87.  RFS is a Mexican limited liability company which maintained the Subject Helicopter.  *See*

Socolow Aff., AFAC Report, Exhibit B at Page 7 of 87.  Defendants submit that, pursuant to Fed. R. Civ. P. 19: (i) SAA and RFS are necessary parties to this litigation; (ii) neither SAA nor RFS can be joined under the jurisdiction of this Court; and (iii) SAA and RFS therefore are indispensable parties to the resolution of this dispute.

## II.   FACTUAL BACKGROUND

Plaintiffs commenced this lawsuit by way of a Complaint filed on December 21, 2020.  *See* Socolow Aff., Exhibit A.  According to the Complaint, on December 24, 2018, the Plaintiffs' decedents were on board the Subject Helicopter when it crashed in Santa Maria Coronango, Puebla, Mexico (the "Subject Accident").  *Id*. at ¶ 7.

Plaintiffs are all citizens and residents of Mexico.  *Id*. at ¶ 12.  In addition, and upon information and belief, Plaintiffs' decedents who were on board the Subject Helicopter, including Martha Erika Alonso Hidalgo, who had recently been elected as Governor of the State of Puebla, Mexico, and Hector Baltazar Mendoza, the Assistant Governor of the State of Puebla, Mexico, also were citizens and residents of Mexico.[1]   At the time of the Subject Accident, the Subject Helicopter was flying entirely within Mexico, from Puebla, Mexico to Mexico City.  *Id*. at ¶ 27.

The Plaintiffs allege that "[d]uring the flight, one or both the SAS1 and SAS2 roll actuators malfunctioned, extended, and caused the helicopter to roll left and exit controlled flight."  *Id*. at ¶ 29.  Plaintiffs further allege that "[p]rior to the Subject Flight on or about December 13, 2018, the roll actuator in the Subject Helicopter's SAS2 was found to be not functioning properly and in need of repair."  *Id*. at ¶ 31.[2]

---

[1] Ms. Hidalgo's husband, Rafael Moreno Valle, was the former Governor of the State of Puebla, Mexico and at the time of the Subject Accident he was a Senator in Mexico.  He also was killed in the accident, but his Estate is not a party to this lawsuit.

[2] The allegations of the Complaint are provided generally as background for the Defendants' Motion.  Reference to those allegations does not constitute an admission of same as to any issue relating to liability.

III.    **THE SUBJECT HELICOPTER**

Leonardo S.p.A. designed and manufactured the Subject Helicopter in Italy.[3]   *See* Declaration of Emilio Dalmasso, sworn to on March 12, 2021, a true and correct copy of which is annexed to the Socolow Aff. as Exhibit E ("Dalmasso Decl.").  Leonardo S.p.A. sold the Subject Helicopter to its initial purchaser, EOLO PLUS S.A. de C.V. ("EOLO") on or About April 9, 2010. *See Id*. at ¶ 5, and contract for initial sale of the Subject Helicopter, a true and correct copy of which is annexed to the Dalmasso Decl. as Exhibit A.  Leonardo did not export or ship the Subject Helicopter to AWPC, and it did not export or ship the Subject Helicopter into Pennsylvania or anywhere else in the United States of America.  *Id*. at ¶¶ 6-7.

AWPC did not design, manufacture, sell or maintain the Subject Helicopter.  *See* ¶¶ 6-8 of the Affidavit of James Helkey, sworn to on March 23, 2021, a true and correct copy of which is annexed to the Socolow Aff. as Exhibit F ("Helkey Aff.").  The Subject Helicopter was never taken to an Agusta (or Leonardo) FAA-certified repair station in Pennsylvania for maintenance. *Id*. at ¶ 9.  There is no evidence that the Subject Helicopter's components at issue were repaired by AWPC in Philadelphia, or anywhere else in Pennsylvania for that matter.  *Id*.  In fact, contrary to Plaintiffs' allegations, and as further demonstrated by Federal Aviation Administration ("FAA") registration records applicable to the Subject Helicopter, AWPC never had any involvement in the sale of the Subject Helicopter, and certainly never imported it into the State of Pennsylvania.  *See Id*. at ¶¶ 7-8; *see* FAA registration records applicable to the Subject Helicopter, true and correct copies of which are collectively attached as Exhibit D to the Socolow Aff.[4]

As the FAA's registration records reveal, an entity in Utah known as TVPX ARS Inc. purchased the Subject Helicopter from Bicentennial Air Ltd. Co. on or about June 27, 2016.  *See*

---

[3] Leonardo S.p.A. was formerly known as Agusta S.p.A.
[4] The FAA registration records have been Bates-stamped FAA-0001 – FAA-0020 for identification purposes.

Socolow Aff., Exhibit D at FAA-0015.   An FAA memorandum to the file notes that when the Subject Helicopter was assigned FAA Registration No. N42JG, there were no prior records for an Agusta SpA A109S model helicopter bearing Serial No. 22174, which is the Subject Helicopter. *See* Socolow Aff., Exhibit D at FAA-0019.

The FAA's records further reveal that on or about July 1, 2016, TVPX ARS, Inc., sold the Subject Helicopter to Bicentennial Air Ltd. Co.   *Id.* at FAA-0007.   That same day, Bicentennial Air Ltd. Co. sold the Subject Helicopter to SAA, in Mexico, and the Subject Helicopter was then de-registered in the United States.   *Id.* at FAA-0005.   In sum, there is absolutely nothing in the FAA's registration records that even remotely suggests that the Subject Helicopter passed through the Commonwealth of Pennsylvania, or that AWPC was involved in any transaction relating to the Subject Helicopter.

At the time of, and prior to, the Subject Accident, the Subject Helicopter was maintained in Mexico by RFS, a Mexican corporation which, upon information and belief, does not do business in the United States.   *See* AFAC Report, Socolow Aff., Exhibit B.

According to the AFAC Report, on December 13, 2018 -- less than two weeks before the Subject Accident -- RFS personnel noted that they observed damage to the linear roll actuator, which required replacement.   *See* AFAC Report, Socolow Aff., Exhibit B at Page 7 of 87.   More recently, the Mexican authorities have arrested five RFS employees, who are under investigation for homicide and making false statements.   The arrests were made in Mexico City, in the State of Mexico, and in the State of Puebla.   *See* various news articles, true and correct copies of which are collectively attached to the Socolow Aff. as Exhibit C.

The AFAC Report's "Contributing Factors" section makes clear that evidence relating to the acts or omissions of both RFS and SAA must be considered, not only in connection with the

instant motion but also at trial with respect to apportionment of liability.  *See* AFAC Report, Socolow Aff., Exhibit B at Page 83 of 87.[5]

As discussed further below, Defendants respectfully request that this Court dismiss the Complaint pursuant to the doctrine of *forum non conveniens,* and because the Plaintiffs have failed to join SAA and RFS, both of which are necessary and indispensable parties to this lawsuit.

## IV.   **MOTION TO DISMISS PURSUANT TO *FORUM NON CONVENIENS***

### A.   **Legal Standard**

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute," based on the convenience of the parties and interests of justice. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507 (1947).  *See also Melbourn v. Wal-Mart Stores, Inc.*, 2020 WL 1470850 at *1 (E.D. Pa. Mar. 26, 2020) ("The doctrine of *forum non conveniens* places within a district court's discretion the option of resist[ing] imposition upon its jurisdiction when trial would 'establish …oppressiveness and vexation to a defendant…out of all proportion to plaintiff's convenience.'") (quoting *Wilmot v. Marriott Hurghada Mgmt., Inc.*, 712 Fed. Appx. 200, 202 (3d Cir. 2017)

The United States Supreme Court articulated the modern standard for *forum non conveniens* in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235 (1981) ("*Piper*"). Under the doctrine of *forum non conveniens,* "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Id.* at 249.  "The *forum non*

---

[5] Defendants emphasize that they do not refer to the "Contributing Factors" section of the AFAC Report to try to establish liability, and they expressly recognize that if this matter is tried in the United States, the "Contributing Factors section, as well as the AFAC Report's finding of probable cause, may not be admissible.  Rather, they refer to that section because it highlights the critical role SAA and RFS appear to have played in this matter and provides further evidence that SAA and RFS are necessary and indispensable parties to the full and fair resolution of this matter.

*conveniens* determination is committed to the sound discretion of the trial court." *Melbourn*, 2020 WL 1470850 at *2, *citing Wilmot*, 712 Fed. Appx. at 202 (quoting *Piper*, 454 U.S. at 257). "The district court's determination 'may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.'" *Windt v. Qwest Communications Intern., Inc.*, 529 F.3d 183, 189 (3d Cir. 2008) *cert. den.*, 555 U.S. 1098 (2009). In reviewing a motion to dismiss pursuant to the doctrine of *forum non conveniens*, "the court may consider affidavits submitted by the moving and opposing parties ... and make findings of fact." *Acosta v. JP Morgan Chase & Co.,* 219 Fed. Appx. 83, 85 (2d Cir. 2007).

The Third Circuit has established a three-step procedural framework in deciding a motion to dismiss for *forum non conveniens.  Behrens v. Arconic, Inc.,* 487 F. Supp.3d 283, 2020 WL 5542387 at *17 (E.D. Pa. Sept. 16, 2020). <u>First</u>, the Court must "determine whether an adequate alternative forum can entertain the case." *Windt*, 529 F.3d at 189-190. <u>Second</u>, if such a forum (here, Mexico) exists, the court must "determine the appropriate amount of deference to be given the plaintiff's choice of forum." *Id*. at 190. <u>Third</u>, the court "must balance the relevant public and private interest factors." *Id*.

**B.** <u>**Argument**</u>

In the present case, Defendants' Motion to Dismiss for *forum non conveniens* should be granted because, in considering the three-prong analysis set forth in *Windt*: (i) an adequate alternative forum exists in Mexico; (ii) the Plaintiffs herein, all of whom are Mexican citizens and residents, are entitled to limited, if any, deference in their choice of Pennsylvania as the forum; and (iii) the interests of Mexico in adjudicating this matter outweigh the Plaintiffs' choice of forum in the United States.

1.      __An Adequate Alternative Forum Exists in Mexico__

"An alternative forum will usually be deemed adequate for purposes of *forum non conveniens* if the 'defendants are amenable to process and [the] plaintiffs' claims are cognizable' in the other jurisdiction." *Behrens*, 2020 WL 5542387 at *18. "An adequate forum need not be a perfect forum." *Satz v. McDonnell Douglas Corp.,* 244 F.3d 1279, 1283 (11th Cir. 2001). Moreover, an "alternative forum is presumed adequate unless the plaintiff makes some showing to the contrary." *DaRocha v. Bell Helicopter Textron, Inc.,* 451 F. Supp. 2d 1318, 1323 (S.D. Fla. 2006) (quoting *Leon v. Million Air, Inc.,* 251 F.3d 1305, 1310-11 (11th Cir. 2001)) (internal citations omitted).  Here, there is no question that Mexico is an adequate alternative forum to adjudicate this lawsuit for several reasons.

First, by filing this motion, Defendants hereby represent that should this Court grant their motion to dismiss, as a condition of dismissal Defendants will be amenable to service of process, and they will not raise statute of limitations or jurisdictional defenses, should this matter be filed in Mexico.  Generally, a defendant's agreement to submit to the jurisdiction of the foreign forum will satisfy the requirement that the defendant be amenable to service of process. *Id.*

Second, as the Affidavit of Javier Alegre Rabiela ("Alegre Aff.") makes clear, Plaintiffs' claims are cognizable in the Mexican judicial system.  *See* Alegre Aff. at ¶¶ 18-20, 50.[6]

Third, the Eastern District of Pennsylvania has previously concluded that Mexico is an adequate and available alternative forum.  *Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, 116 F. Supp.3d 519, 524 (E.D. Pa. 2015).  Other federal courts have done so as well.  For example, the district court in *Dominguez v. Gulf Coast Marine & Assocs.*, 2011 U.S. Dist. LEXIS 42703 at *19-20, n. 5 (E.D. Tex. Apr. 20, 2011), citing *In re Ford Motor Co.*, 591 F.3d 406, 412 (5th Cir. 2009)

---

[6] A true and correct copy of the Alegre Aff., sworn to on March 18, 2021, is annexed to the Socolow Aff. as Exhibit G.

*cert. den.*, 561 U.S. 1006 (2010), noted that "[t]he Fifth Circuit has repeatedly held that Mexico is an available and adequate alternative forum for Mexican residents to pursue claims against American companies for injuries arising from accidents in Mexico." The Fifth Circuit, in *In re Ford Motor Co.*, noted that "[w]e have held in numerous cases that Mexico is an available forum for tort suits against a defendant that is willing to submit to jurisdiction there." *Id.* at 412. That Court went on to note that "[t]hese many decisions create a nearly airtight presumption that Mexico is an available forum. *Id.* at 413. *See also Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656 (9th Cir. 2009), *cert. den.*, 562 U.S. 1062 (2010) (affirming district court, which found that Mexico was an adequate forum because, *inter alia*, plaintiff could bring a tort-based suit there, and Mexican courts would afford some remedy, even though less than available in the United States); *Gonzalez v. Chrysler Corp.*, 301 F.3d 377 (5th Cir. 2002), *cert. den.*, 538 U.S. 1012 (2003) (holding that Mexico's cap on wrongful death damages does not render the remedy available in the Mexican forum clearly unsatisfactory). *Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139, 143 (E.D. Tex. 1992) (finding that a Mexican forum for lawsuit arising out of the crash in Mexico of an airliner owned and regulated by the Mexican government would not be "so inadequate or unsatisfactory that it would be no remedy at all.")

Defendants anticipate that Plaintiffs will argue that if liability is found, their measure of recovery would be less in Mexico than in Philadelphia, thereby rendering the Mexican forum inadequate. As noted above, the alternative forum need not be perfect to be adequate, and the "mere fact that the amount of damages would be more limited under Mexican as opposed to American law, does not provide a basis for finding Mexican courts an inadequate alternative forum." *Saqui v. Pride Cent. America, LLC*, 595 F.3d 206, 212 (5th Cir. 2010) (internal citations omitted). *Dominguez*, 2011 U.S. Dist. LEXIS 42703 at * 17 (citing *Saqui* and *Piper*, and noting

8

that the United States Supreme Court "has made it clear that the Court may not give substantial weight to the fact that trial in a foreign forum will result in a change in law unfavorable to the plaintiff or the fact that the defendants may be motivated by a desire to obtain a more favorable forum in bringing the motion to dismiss for *forum non conveniens*.")

The Courts of Mexico are fully capable of providing fair and substantial justice to the parties in this litigation. Under Mexican law, actions may be brought for harm caused by defective products against manufacturers and/or designers. *See* Alegre Aff. at ¶¶ 18-20. Moreover, Mexican law provides a remedy for wrongful death claims. *See* Alegre Aff., Section IV, "Recoverable Damages in the Event of Death."

In this case, because the Defendants agree to: (i) submit to jurisdiction before the appropriate Court in Mexico; (ii) not raise a statute of limitations defense; and (iii) make all relevant evidence and witnesses under their control available to the Plaintiffs in Mexico, there can be no question that Mexico is an available forum. Furthermore, the Defendants agree to pay any final, post-appeal judgment awarded against them by a Mexican court. In sum, the Republic of Mexico provides an adequate and alternative forum for the claims brought by Plaintiffs herein.

**2.      The Plaintiffs' Choice of Forum is Entitled to Limited - If Any - Deference**

"When the plaintiff is a domestic resident or citizen, 'a strong presumption of convenience exists' in favor of the chosen forum." *Behrens*, 2020 WL 5542387 at *23, citing *Windt*, 529 F.3d at 190. However, such as here, "[w]hen the plaintiff is foreign, this presumption 'applies with less force,' because the 'assumption that the chosen forum is appropriate is in such cases less reasonable." *Behrens*, *Id*. at *23, citing *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). As the United States Supreme Court held in *Piper,* "[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff

is foreign, however, the assumption is much less reasonable." 454 U.S. at 256. In addition, any deference to a plaintiff's choice to sue in a defendant's home forum "is available only to the extent that plaintiffs or the case possess a bona fide connection to this forum." *Acosta,* 219 Fed. Appx. 83, 85 (2d Cir. 2007), citing *Pollux Holding Ltd. v. The Chase Manhattan Bank,* 329 F.3d 64, 74 (2d Cir. 2003), *cert. den.*, 540 U.S. 1149 (2004)

Here, all of the Plaintiffs are admittedly citizens and residents of Mexico.  As such, their choice of forum is entitled to a lesser amount of deference absent a strong showing of convenience. *Behrens*, Id. at *23, citing *Windt*, 529 F.3d at 190.  Defendants nonetheless anticipate that Plaintiffs will argue that their chosen forum is convenient, because AWPC's headquarters are in Philadelphia, and should therefore be given deference.  However, "such deference is not automatically given."  *Melgares v. Sikorsky Aircraft Corp.*, 613 F. Supp.2d 231, 244 (D. Conn. 2009).

While it is true that AWPC's headquarters are in Philadelphia, basing a convenience argument on that fact is a red herring because, as noted in the Dalmasso Decl. and the Helkey Aff., AWPC did not design, manufacture, test, distribute or sell the Subject Helicopter.  *See* Dalmasso Decl. at ¶¶ 4-5, 8 (Socolow Aff., Exhibit E); Helkey Aff. at ¶¶ 5-6, 8 (Socolow Aff., Exhibit F). Furthermore, there is no record that the Subject Helicopter has ever even been owned or operated in the Commonwealth of Pennsylvania.  *See* FAA registration records applicable to the Subject Helicopter, Dalmasso Decl, at ¶¶ 6-8 and Helkey Aff. at ¶¶ 7-9 (Socolow Aff., Exhibits D, E and F, respectively).

The Second Circuit's decision in *Pollux* is instructive.  Finding that the foreign plaintiffs' choice of forum did not deserve the same substantial deference that would be given to a suit initiated in their home forum, the Court noted as follows:

> Bearing in mind that litigants are rarely concerned with promoting their adversary's convenience at their own expense, a plaintiff's choice of the defendant's home forum over other fora where defendant is amenable to suit and to which the plaintiff and the circumstances of the case are much more closely connected suggests the possibility that plaintiff's choice was made for reasons of trial strategy. Accordingly, a plaintiff's choice to initiate suit in the defendant's home forum – as opposed to any other where defendant is also amenable to suit – only merits heightened deference to the extent that the plaintiff and the case possess *bona fide* connections to, and convenience factors favor, that forum.

*Pollux*, 329 F.3d at 74.

The same is true here.  The Plaintiffs are citizens of Mexico, as were Plaintiffs' decedents, two of whom were elected officials in Puebla state government.  Leonardo, an Italian company, designed and manufactured the Subject Helicopter in Italy, and sold it to the initial purchaser, EOLO, in Mexico.  At the time of the accident, the Subject Helicopter was: (i) being flown by two Mexican pilots; and (ii) was owned by SAA and maintained by RFS, both Mexican companies. The Subject Accident occurred, and was witnessed, in Mexico.   The Subject Accident was investigated by the Mexican AFAC.  Negligent maintenance will certainly be a critical aspect of the defenses that Defendants will raise, and much of the defense-related evidence, including witnesses and documents relating to the liability of potentially responsible third parties -- namely, SAA and RFS -- is in Mexico.  Certain employees of RFS are potentially facing criminal liability, in Mexico.  By contrast, AWPC was never even in the Subject Helicopter's chain of distribution. In sum, neither the Plaintiffs, their decedents nor this case in general have *bona fide* connections to this forum.  None of them are residents of the United States or have any known connections with Pennsylvania.  Clearly, convenience to the Plaintiffs' place of residence -- which is thousands of miles away, in Mexico -- played no role whatsoever in their decision to file suit in Pennsylvania.

Litigating this case in Pennsylvania, which will overwhelmingly involve and be decided on evidence located in Mexico, will impose significant hardships and costs on the Defendants.

Even assuming the Plaintiffs are willing to appear for depositions in Pennsylvania, obtaining information, documents, and testimony from various critical third parties (*i.e.*, SAA and RFS) will certainly be a difficult, expensive, and time-consuming exercise. Indeed, this Court lacks jurisdiction to compel third-party witnesses located in Mexico to appear for depositions either in Pennsylvania or Mexico, or to produce documents in discovery.

In sum, the Plaintiffs in the present case are the "archetypal foreign plaintiff[s] bringing [their] foreign tort claim[s] to American courts to secure relief more generous than [they] would get under the law of [their] homeland." *Sigalas v. Lido Mar., Inc.,* 776 F.2d 1512, 1520 (11th Cir. 1985). Under these circumstances, Plaintiffs' choice of forum should be given little, if any, deference.

### 3.     Private and Public Interest Factors Favor Litigation in Mexico.

In the final step of its three-prong analysis, the Court must consider the various private and public interest factors that have been articulated by the United States Supreme Court in *Gulf Oil*.

"The private interest factors to be considered include the following: (a) the relative ease of access to sources of proof; (b) the availability of compulsory process for attendance of unwilling, and the cost of obtaining evidence of willing, witnesses; (c) the possibility of view of premises, if view would be appropriate to the action; and (d) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Behrens*, 2020 WL 5542387 at *24 (citing *Gulf Oil,* 330 U.S. at 508.

"The public interest factors to be considered include the following: (e) the administrative difficulties flowing from court congestion; (f) the local interest in having localized controversies decided at home; (g) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action and, relatedly, the avoidance of unnecessary problems in

conflict of laws, or in the application of foreign law; and (h) the unfairness of burdening citizens in an unrelated forum with jury duty." *Behrens*, *Id*. at \*24, citing *Piper,* 454 U.S. at 241, n.6.  As set forth next, each of the private and public interest factors, considered separately and as a whole, favor litigation of this matter in Mexico.

**a.**     **Private interest factors favor litigation in Mexico**

1.     Relative Ease of Access to Sources of Proof and Residence of the Parties and Witnesses

It is well-established that when access to sources of proof is easier in a foreign forum, convenience dictates that litigation pending in a United States court be dismissed in favor of that foreign forum. This is especially true in aviation accidents that occur on foreign soil because the wreckage, the accident investigation, various witnesses, and important physical and documentary evidence are located in the country where the aircraft accident occurred. *See, e.g., Dahl* v. *United Technologies Corp.,* 632 F.2d 1027 (3d Cir. 1980); *Satz, supra; DaRocha, supra.*

In *Dahl,* the Court of Appeals for the Third Circuit, in affirming the dismissal of the underlying actions involving a helicopter crash in the North Sea based upon *forum non conveniens,* pointed out that:

> These actions arose out of a crash of a Norwegian owned and operated helicopter in the territorial waters of Norway. The recovered parts of the wreckage are located in Norway. The helicopter was based and maintained in Norway and its maintenance, flight and operational records are located there. The Norwegian Civil Aviation Administration is currently conducting an investigation into the probable cause of the accident ... Testimony from persons who knew the decedents will be relevant to the damages issue. Among the potential liability witnesses are employees … from other firms in Norway that serviced or made installations on the helicopter.

632 F.2d at 1030.

*Dahl's* analysis applies with equal force here. The Subject Accident occurred in Mexico, the investigative witnesses, including necessary Mexican government witnesses, are in Mexico,

and important documents and witnesses, including those related to maintenance performed by RFS, are all located in Mexico. Additionally, it is likely that all records produced from Mexico will need to be translated from Spanish for use in U.S. Courts, thereby adding to the burden of litigating this case in Pennsylvania.[7]

2.      Availability of Compulsory Process for Attendance of Unwilling, and
        the Cost of Obtaining Evidence of Willing, Witnesses

This Court lacks jurisdiction to compel the attendance of Mexican witnesses, or the production of documents located in Mexico. In order for the Plaintiffs to prove the various allegations in the Complaint, and for the Defendants to defend the allegations in the Complaint, the parties will require access, at a minimum, to the following: (1) the aircraft wreckage; (2) the location of the accident; (3) aircraft maintenance logs and records, including from non-party maintenance providers; and (4) testimony of various Mexican witnesses, including personnel from SAA and RFS, various Mexican governmental agencies, including air traffic controllers, accident investigators and employees of AFAC. These items, as well as personal damages records relating to the Plaintiffs and their decedents, are located in Mexico.

While the Defendants will consent to produce the necessary witnesses and documents in Mexico for pre-trial proceedings and any trial, unwilling witnesses in Mexico cannot be forced to testify in Pennsylvania. This factor alone mandates dismissal of this litigation. "To fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to Court, jury or most litigants." *Gulf Oil,* 330 U.S. at 511; *Behrens*, 2020 WL 5542387 at *28 ("To the extent Defendants seek to depose the UK witnesses through the Hague Convention, depositions are not an 'adequate substitute' for

---

[7] Defendants already have incurred substantial expense in having the AFAC Report translated from Spanish to English.

live testimony at trial."), citing *Jones v. FC USA, Inc.*, 2017 WL 5453497 at *4 (E.D. Pa. Nov. 14, 2017).

The inability to compel live testimony is especially prejudicial in a case such as the present one, involving complex technical issues relating to aircraft operation and maintenance, navigation, and air traffic control, among many others. If this case remains in the United States, the Defendants' right to a fair trial would be severely compromised by their inability to obtain live testimony from key third-party witnesses located in Mexico.

Moreover, as discussed more fully in Section V below, there is a good faith basis to believe that there are significant liability issues relating to the negligent and improper maintenance, repair, and/or utilization of the Subject Helicopter. Just eleven (11) days before the Subject Accident, RFS maintenance personnel noted that they observed damage to the linear roll actuator, which required replacement. *See* AFAC Report at Page 7 of 87 (Socolow Aff., Exhibit B). More recently, the Mexican authorities have arrested five RFS employees, who are under investigation for homicide and making false statements. The arrests were made in Mexico City, as well as in the State of Mexico, and the State of Puebla. *See* Socolow Aff., Exhibit C. Defendants intend to take the position that: (i) given the condition of the Subject Helicopter prior to the accident flight, it was not airworthy and should not even have been flown; and (ii) proper maintenance and service procedures, if followed, would have grounded the Subject Helicopter, but SAA nevertheless continued to fly it, knowing that it was not airworthy.

Evidence relating to SAA's and RFS's acts and omissions, including improper maintenance and the decision to keep the Subject Helicopter in service, are all to be found in Mexico. Courts have consistently held that the inability to implead other parties (here, SAA and RFS) who may be directly involved in the controversy is a factor which weighs against the

retention of jurisdiction. *See, e.g., Dahl,* 632 F.2d at 1031; *Fitzgerald v. Texaco Inc.,* 521 F.2d 448,453 (2d Cir. 1974), *cert. den.*, 423 U.S. 1052 (1976); *Helog AG v. Kaman Aerospace Corp.,* 228 F. Supp. 2d 91, 93 (D. Conn. 2002) (noting that the presence of maintenance issues is significant, and that "[e]vidence concerning maintenance and repair of the helicopter is in Germany, as are two third parties the defendants may need to implead.")

In fact, even assuming, *arguendo,* that all of the other private and public interest factors fell on both sides of the aisle, lack of jurisdiction over a potentially liable party, and lack of compulsory process over witnesses and evidence, are important factors that swing the balance toward dismissal for *forum non conveniens. In Re Air Crash Near Peixoto De Azeveda, Brazil, on September 29, 2006,* 574 F. Supp.2d 272 (E.D.N.Y. 2008), *aff'd*, 354 Fed. Appx. 585 (2d Cir. 2009) (holding that Brazil was significantly preferable as the forum for an action against a U.S. manufacturer arising out of the crash of a Brazilian owned airline in Brazil).

In the present case, Subject Helicopter was owned, operated, serviced, and maintained in Mexico. The Defendants would be significantly prejudiced if they were required to defend this lawsuit in the United States because of the inability to implead potential third-party defendants. This factor weighs against retention of jurisdiction and can be fully solved by dismissing the Complaint in favor of the forum where all potential tortfeasors would be amenable to suit. *See Piper,* 450 U.S. at 242-43.

3.     The Possibility of View of Premises, if View Would be Appropriate to the Action

While viewing the "premises" *per se* is not critical, the fact remains that this accident occurred in Puebla, Mexico, and the wreckage is located in Mexico.  To the extent that in person view of the accident site and wreckage are necessary, these considerations weigh in favor of a *forum non conveniens* dismissal to Mexico.

4.    <u>All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive</u>

In addition to the foregoing, Defendants note that English will not be the native language of the Plaintiffs or the overwhelming majority of nonparty witnesses, such as personnel from SAA and RFS, persons involved in the investigation of the Subject Accident, and persons involved in the criminal investigation of RFS.   Most of the relevant documents, including accident investigation reports, flight logs, maintenance logs, training records, other records relating to the Subject Helicopter and its crew as well as governmental regulatory oversight documents will have been originally drafted in Spanish, requiring official translation into English, at considerable expense, beyond that already incurred by Defendants.   If this litigation proceeds in Mexico, however, a relatively small percentage of liability documents, and essentially no damages documents, will need to be translated. The various complexities in litigating these claims in Pennsylvania will be "compounded by the presence of language barriers and the necessity for translation." *Nai-Chao v. Boeing Co.,* 555 F. Supp. 9, 18 (N.D. Cal. 1982), *aff'd,* 708 F.2d 1406 (9th Cir. 1983) This is another factor that weighs in favor of dismissal of the present case. "Litigating all the claims in Mexico avoids a scenario in which [Defendants] must pursue claims for contribution against a third party in Mexico while defending the action against [Plaintiffs] in the United States, without compulsory process to obtain key witnesses."   *Dtex, LLC v. BBVA Bancomer, S.A.*, 512 F. Supp.2d 1012, 1026 (S.D. Tex.), *aff'd,* 508 F.3d 785 (5th Cir. 2007).

**b.    <u>Public interest factors favor litigation in Mexico</u>**

As discussed below, the public interest factors also strongly and overwhelmingly weigh in favor of litigation of the present case in Mexico.

1.    Administrative Difficulties Flowing from Court Congestion and Unfairness
       of Burdening Citizens in an Unrelated Forum with Jury Duty

Litigation in this forum will almost certainly be inefficient, time-consuming, costly, and

an unnecessary burden on this Court's already busy docket. Although one of the Defendants (AWPC) is located in Pennsylvania, it did not design, manufacture, or sell the Subject Helicopter. By contrast, the overwhelming center of gravity of this case and virtually all significant contacts link this controversy with Mexico:

- All of the Plaintiffs reside in Mexico, as did their decedents;

- The Subject Accident occurred in Puebla, Mexico;

- The owner of the Subject Helicopter (SAA) and the entity which maintained it (RFS) are Mexican companies which do no business in the United States;

- The wreckage, service records and maintenance records are located in Mexico;

- The two pilots were Mexican, and records pertaining to their training and qualifications are located in Mexico;

- Mexico's AFAC conducted an extensive and detailed investigation of the accident, and its investigators are located in Mexico; and

- Witnesses to the crash itself are located in Mexico.

Clearly, litigation of this case in the United States would necessitate the extensive use of letters rogatory and require that the majority of the documentary and testimonial evidence to be translated into English.

Given the tenuous connection this case has to Pennsylvania, especially when compared to the strong and close connection it has to Mexico, it would be grossly unfair to charge this Court and the citizens of Pennsylvania who will be jurors with the responsibility for the burden and costs associated with what will undoubtedly be a complicated, highly technical, and lengthy trial. *See*, *e.g.*, *Torreblanca,* 806 F. Supp. at 144 (finding that Texas jurors should not have to sit through weeks of testimony in an action bearing little relation to the interests or concerns of their community).

18

2.     Local Interest in Having Localized Controversies Decided at Home

As the Supreme Court stated in *Gulf Oil* "there is a local interest in having localized controversies decided at home."  330 U.S. at 509.  The same factors which render this matter unduly burdensome to this Court and the citizens of Pennsylvania strongly suggest the absence of a significant local public interest in this dispute.

On the other hand, Mexico has a significant and compelling local interest in having this litigation result not only in full and fair compensation to the families of its citizens who were on board the Subject Helicopter (including the Governor and Assistant Governor of the State of Puebla), but just as importantly, in having all parties who are potentially at fault participate and held accountable. For example, it is in Mexico, not the United States or Pennsylvania, where authorities have conducted an extensive investigation of the Subject Accident and have also initiated a criminal investigation into the conduct of RFS.  *See* Socolow Aff., Exhibits B and C.

Pilots employed by SAA operated the Subject Helicopter at the time of the Subject Accident, the flight took place entirely within Mexico, and the Plaintiffs are (and their decedents were), all exclusively citizens of Mexico.  Simply stated, the issue of the safety of Mexican citizens flying in an aircraft owned, operated, and maintained by Mexican companies is one of compelling interest and of paramount importance to Mexico, and far outweighs any interest that Pennsylvania may have.  *See*, *e.g.*, *In re Air Crash over the Mid-Atlantic on June 1, 2009*, 760 F.Supp.2d 832, 846 (N.D. Cal. 2010) (finding that "France's interest [in litigation involving crash of an Air France passenger flight] is especially obvious here because it is also conducting the official civil investigation and an official criminal investigation."); *Clerides v. Boeing Co.*, 534 F.3d 623, 630 (7th Cir. 2008) (affirming district court's *forum non conveniens* dismissal, and finding that Greece and Cypress have demonstrated interest in the case through their respective criminal investigations,

and through Greece's official investigation, into the crash of a Boeing 737 near Athens, Greece); *Torreblanca*, 806 F. Supp. at 144 (finding that Mexico had the "paramount interest" in lawsuit arising out of the crash of an airliner owned and regulated by the Mexican government, where "accident investigation was conducted by the Mexican government at considerable expenditure of resources" and where "[a]lmost all of the passengers and all of the crew were Mexican citizens."); *Satz*, 244 F.3d at 1284 (affirming *forum non conveniens* dismissal and finding that Argentina's interest in deciding the dispute is stronger than the United States' interest where almost all passengers accident flight were Argentine citizens, none were U.S. citizens, and the airline in question did not operate in the United States.)

This Court should find that Mexico has an overwhelming interest in this matter, especially when compared to the interests of Pennsylvania.

3.    Interest in Having the Trial of a Diversity Case in a Forum That is at Home with the Law That Must Govern the Action and, Relatedly, the Avoidance of Unnecessary Problems in <u>Conflict of Laws, or in the Application of Foreign Law</u>

A determination that U.S. law applies to a case does not bar a *forum non conveniens* dismissal, nor does the finding that foreign law applies mandate a dismissal. Nevertheless, which law will apply is a proper factor to consider. *In re: Air Crash Over the Taiwan Strait on May 25, 2002,* 331 F. Supp. 2d 1176, 1206-1212 (C.D. Cal. 2004). Even if this litigation proceeds in Pennsylvania, the law of Mexico should apply to this controversy, a factor which weighs in favor of dismissal. *See Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1148, n. 6 (9th Cir. 2001); *Satz, supra* (agreeing that foreign law would need to be applied where all of the passengers of the accident flight were foreign citizens, the airline at issue was foreign owned and did not operate in the United States, and where the accident occurred overseas).

Defendants submit that Mexican law must govern Plaintiffs' claims, since Mexico is unmistakably the place having the most interest in this dispute. Plaintiffs are all Mexican citizens, the Subject Helicopter was owned, operated, and maintained by Mexican entities, the accident occurred in Mexico, three elected Mexican governmental officials (two of whom are Plaintiffs' decedents) were on board the Subject Helicopter, and any damages Plaintiffs suffered occurred in Mexico. It simply makes sense that Mexico would be most the country concerned with the outcome of this matter, and that its law should apply. Similarly, it makes no sense to ask a Pennsylvania jury to decide a case brought by Mexican plaintiffs arising out of a crash in Mexico of a helicopter that was designed and manufactured in Italy, and sold to its initial purchaser, which was located in Mexico.

These factors to be considered in determining which law to apply will weigh heavily in favor of the application of Mexican law to Plaintiffs' claims. Because Defendants respectfully submit that the law of Mexico will inevitably apply to this action, this Court should not be burdened with the application of Mexican law, especially when the Courts of Mexico provide an adequate alternative forum and are best equipped to adjudicate those claims. Given the complexities associated with the application of a foreign sovereign's substantive law, which are less familiar to an American Court, the application of Mexican law to this case weighs in favor of dismissal. *See DaRocha,* 451 F. Supp. 2d at 1326.

## C.   <u>Summary</u>

The Plaintiffs, all citizens of Mexico, are entitled to limited, if any, deference in their choice of Pennsylvania as the forum for resolution of their claims. An adequate and available alternative forum exists in Mexico. The interests of Mexico far outweigh the Plaintiffs' choice of forum in

the United States. For all of the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss for *forum non conveniens.*

## V.   MOTION TO DISMISS FOR FAILURE TO JOIN NECESSARY AND INDISPENSABLE PARTIES

### A.   Legal Standard

A defendant may move to dismiss a case under Fed. R. Civ. P. 12(b)(7) for failure to join an indispensable party under Fed. R. Civ. P. 19.  *Rajet Aeroservicios S.A. de C.V. v. Cervantes*, 2019 U.S. Dist. LEXIS 227274 at *6 (S.D. Tex. May 20, 2019).  The purpose of Rule 19 "is to protect the legitimate interests of absent parties, as well as to discourage multiplicitous litigation." *U.S. v. Rose,* 34 F.3d 901, 908 (9th Cir. 1994).

Fed. R. Civ. P. Rule 19, "Required Joinder of Parties," provides in pertinent part as follows:

**(a) Persons Required to Be Joined if Feasible.**

(1) ***Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

> \*\*\*

**(b) When Joinder Is Not Feasible.**  If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
(2) the extent to which any prejudice could be lessened or avoided by:
> (A)  protective provisions in the judgment;
> (B)  shaping the relief; or
> (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and
(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(a)-(b).

An analysis of Rule 19 consists of two parts.  First, the Court must determine whether the absent parties (here, SAA and RFS) are "necessary" under Fed. R. Civ. P. Rule 19(a).  *General Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007).  Second, if those parties are necessary but their joinder is not feasible because -- as is the case here -- the Court lacks jurisdiction over them, then Court must determine whether those parties are "indispensable."  *Id*. If they are indispensable, then "the action cannot go forward."  *Id*., citing *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993).

In *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 109 (1968), the United States Supreme Court examined Rule 19(b) and identified the following four interests that must be examined in each case to determine whether a party is indispensable: (i) plaintiff's interest in having a forum; (ii) defendant's interest in avoiding multiple litigation, inconsistent relief or sole responsibility for liability shared with another; (iii) the interest of the outsider; and (iv) the interests of the court and the public in efficiency.  *Barrett v. Ambient Pressure Diving, Ltd.*, 235 F.R.D. 263, 272 (E.D. Pa. 2006), citing *Provident*, 390 U.S. at 109-110.

In ruling on a motion to dismiss for failure to join an indispensable party, the Court is permitted to go outside the pleadings and look to extrinsic evidence.  *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 201 F.R.D. 337, 340 (D. Del. 2001), *aff'd*, 65 Fed. Appx. 803 (3d Cir. 2003); *Scottsdale Ins. Co. v. RSE Inc.*, 303 F.R.D. 234, 236 (E.D. Pa. 2014) (when making a Rule 19 determination, the Court may also consider evidence outside the pleadings).

## B.     Argument

"A party is 'necessary' if, 'in that person's absence, the court cannot accord complete relief among existing parties.'" *Loeffler Thomas P.C. v. Fishman*, 2016 U.S. Dist. LEXIS 49475 at \*18 (E.D. Pa. Apr. 12, 2016).  In the present case, the defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(7) should be granted because both SAA and RFS, the owner/operator and maintainer of the Subject Helicopter, respectively, are necessary and indispensable parties to the adjudication of this action that cannot be joined under the jurisdiction of this Court.  According to the AFAC Report, RFS improperly performed maintenance on the Subject Helicopter, and its personnel are now subject to criminal investigation, while SAA continued to operate the Subject Helicopter despite knowing that it was not in an airworthy condition.

The precise issues and similar facts now facing this Court were analyzed by the Middle District of Pennsylvania in *Whyham v. Piper Aircraft Corp.,* 96 F.R.D. 557 (M.D. Pa. 1982), wherein the defendant's motion to dismiss for failure to join an indispensable party was granted. In *Whyham,* the foreign plaintiff brought an action sounding in products liability and negligence against the manufacturer of an airplane arising out of a crash off the coast of Scotland. The aircraft manufacturer, Piper, had no dealings or contact with the plane for years before the accident. Two separate foreign corporations owned, maintained and/or inspected the plane after sale.  Because the plaintiff sued only Piper in federal district court, the defendant moved to dismiss the action for failure to join indispensable parties under Rule 19.  In considering the defendant's motion, the court noted that "Rule 19 is divided fundamentally into two parts. Subdivision (a) categorizes those people whose joinder is necessary or desirable from the standpoint of complete adjudication and elimination of relitigation.  If there are no procedural or jurisdictional bars, Rule 19 requires that he be joined." 96 F.R.D. at 560 (citation omitted). Second, "[s]ubdivision (b) addresses the more

difficult question of whether to dismiss a lawsuit when the absent person's joinder is impossible, that person thus being regarded as indispensable." *Id.*

The *Whyham* Court first considered whether joinder of the owner and maintenance companies for the aircraft, Air Navigation and Aero, would be required. The court reasoned that "there can be no dispute that Air Navigation and Aero are necessary parties under Rule 19(a)(2)(i) [now Rule 19(a)(l)(B)] [since] [t]heir presence is crucial to determining the important issue of liability. They are more than key witnesses; rather, they are active participants." *Id.* at 561. Moreover, the court found them to be necessary parties under Rule 19(a)(2)(ii) [now Rule 19(a)(l)(B)(ii)] because if the plaintiff were to receive a favorable judgment, "defendant may be subject to a substantial risk of incurring multiple or inconsistent obligations." *Id.* The court explained that the defendant-manufacturer "would have the right to seek indemnification or contribution from the two Scottish companies in an action in Scotland, result[ing] in an unnecessary second suit." *Id.* Thus, the court concluded that the Scottish companies were necessary parties under the first prong of Rule 19(a).

The *Whyham* Court next analyzed the four interests enunciated in *Provident* to determine whether the owner and maintenance companies were deemed indispensable parties under the second prong of Rule 19(b). The court noted that "[t]he optimum solution is to have one adjudication that is binding on all interested persons," and explained that "a judgment entered absent Air Navigation's and Aero's presence subjects Defendant to being judged solely responsible for a liability it possibly shares." *Id.* at 562. The Court further reasoned that the defendant "has a clear interest in having the liability issue decided consistently as to all supposed wrongdoers." *Id.* Without those parties present, the court explained that "Piper cannot present its defense adequately," thus forcing it to "assume full responsibility for a liability shared with the

Scottish companies or to pursue a second action against the companies for indemnity or contribution." *Id.* Pursuit of a second action "subjects Defendant to the unnecessary waste of time, efforts, and costs of a second proceeding. It also subjects Defendant to the possibility of inconsistent verdicts." *Id.*

In support of its analysis, the *Whyham* court analogized its facts to *Piper Aircraft Co. v. Reyno, supra,* stating that the "presence of the companies that owned and operated the plane would be crucial to the defendant's defense" and further recognized that "if the defendant could establish that the accident was not caused by a design defect but, rather, by the negligence of the other companies, the defendant would be relieved of all liability." *Id.* (citing *Piper*, 454 U.S. at 259). The *Whyham* Court also cited *Pain v. United Technologies Corp.,* 637 F.2d 775 (D.C. Cir. 1980), *cert. den.*, 454 U.S. 1128 (1981), in explaining the additional prejudice suffered by the defendant as a result of its inability to present its defense in the first case and also in being required to seek indemnity in a foreign court that "could possibly limit the amount the defendant could recover in a separate proceeding abroad." *Id.* at 563.

In addition, *Whyham* reasoned that the Scottish companies would be prejudiced as absent parties "in the effect the case might have as precedent." *Id.* (citing *Bloch v. Sun Oil Corp.,* 335 F. Supp. 190 (W.D. Okla. 1971)). The court recognized that "a determination in this action that Air Navigation and Aero were liable for the crash of the aircraft would, as a practical effect, prejudice any further actions taken against the two companies." *Id.* The court went on to note that, "it could not conceive of "any modification of a judgment which would reasonably or adequately protect defendant, Air Navigation, or Aero from the prejudice such a judgment could generate." *Id.* It further explained that "one dispositive action in Scotland will eliminate multiple suits concerning liability and will serve judicial economy." *Id.* Finally, the *Whyham* Court found that the "plaintiff

has an alternative remedy in Scotland, his home country." *Id.* For all of these reasons, the *Whyham* Court concluded that the owner and maintenance companies were "necessary and indispensable parties" and because "these Scottish companies cannot be joined, we are compelled to dismiss the present action." *Id.* at 564.

In the present case, this same analysis supplied by the *Whyham* Court should be applied by this Court in granting the Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(7). As set forth more fully below: (1) SAA and RFS are necessary parties to the adjudication of this action; (2) SAA and RFS are Mexican companies that cannot be joined under the jurisdiction of this Court; and (3) SAA and RFS are indispensable to the resolution of this matter.

1.   <u>SAA and RFS are Necessary Parties to the Adjudication of this Action.</u>

SAA and RFS are "necessary parties" to the adjudication of this action under Fed. R. Civ. P. Rule 19(a) for several reasons. The presence of both SAA and RFS is crucial in determining the issue of liability in the present case. The Plaintiffs allege that the Subject Helicopter crashed due to alleged defects in the automated flight control system.  Specifically, the Mexican AFAC has focused on the damaged condition of one of the linear actuators, RFS's failure to replace it, and SAA's insistence that the Subject Helicopter nonetheless continue to be flown despite being in an unairworthy condition.  If proper maintenance and service procedures had been followed, the Subject Helicopter would have been grounded.  Based on these facts, SAA and RFS are more than mere witnesses and potential sources of discovery.  Instead, they were active participants in the events leading to the Subject Accident.  Their acts and omissions go to the heart of the liability issue in this matter, and their presence as parties to this the litigation is crucial to the determination of the important issue of liability. *See Whyham,* 96 F.R.D. at 561; Fed. R. Civ. P. 19.  If the trier

of fact accepts the argument that SAA and RFS improperly used and/or maintained the Subject Helicopter, they will be at least partly, if not wholly, liable for Plaintiffs' damages.

Furthermore, if the Plaintiffs receive a favorable judgment, the Defendants may be subject to substantial risk of incurring multiple or inconsistent obligations without SAA and RFS as party defendants. The Defendants would be unable to present their liability defense adequately and might be forced to assume a liability that should be shared with, or may belong entirely to, SAA and/or RFS. The Defendants may be able to seek indemnification or contribution from SAA and/or RFS in Mexico. However, that would result in an unnecessary second suit, and could further potentially create inconsistent findings of fact or proportioning of liability between the two lawsuits. *Id;* Fed. R. Civ. P. l9.

Accordingly, pursuant to the criteria set forth in Fed. R. Civ. P. Rule 19(a), this Court should conclude that SAA and RFS are necessary parties to the adjudication of this matter.

2.     SAA and RFS are Foreign Companies that Cannot be Joined
        <u>Under the Jurisdiction of this Court.</u>

It is well established that if an absent party cannot be served, then it cannot be joined in the action. *See, e.g., Kickapoo Tribe v. Babbitt,* 43 F.3d 1491, 1494-95 (D.C. Cir. 1995). Because SAA and RFS are Mexican companies that do no business in the United States that would permit service, it follows that their joinder is impossible to obtain. Accordingly, it must be determined whether SAA and RFS are indispensable parties to this matter such that this action should be dismissed in equity and good conscience under Rule 19(b).

3.     <u>SAA and RFS are Indispensable to the Resolution of this Matter.</u>

SAA and RFS are indispensable parties to the resolution of this matter in light of the four criteria enunciated in Rule 19(b). Under the first factor, a judgment entered absent SAA and RFS subjects Defendants "to being judged solely responsible for a liability [they] possibly share."

*Whyham,* 96 F.R.D. at 562. Defendants have a clear interest in the liability issue being decided consistently as to all alleged wrongdoers. Without SAA's and RFS's presence, Defendants cannot adequately present their defense. Moreover, without SAA's and RFS's presence, the Defendants must either forego the right to seek apportionment of liability or contribution from SAA and RFS or pursue a separate action against them in Mexico for indemnity or contribution. As discussed above, a second action would not serve judicial economy and may also subject the Defendants to the possibility of inconsistent verdicts. Similar to the situation in *Pain, Piper,* and *Whyham,* the potential prejudice recognized by those courts also exists in the case at bar if SAA and RFS are not joined as defendants. *Whyham*, *Id.* at 563.

In addition, under the second factor of Rule 19(b), the prejudice that the Defendants will suffer cannot be lessened or avoided by the addition of protective provisions in any potential judgment, the shaping of relief, or any other measure available to the court. As the court concluded in *Whyham,* it is difficult to conceive of "any modification of a judgment which would reasonably or adequately protect" the Defendants "from the prejudice such a judgment could generate." *Id.*

Likewise, under the third factor of Rule 19(b), a judgment rendered in SAA's and RFS's absence will not be adequate because this dispute cannot be settled as a whole in the Eastern District of Pennsylvania. On the other hand, one dispositive action in Mexico "will eliminate multiple suits concerning liability and will serve judicial economy." *Whyham,* 96 F.R.D. at 563.

Finally, under the fourth factor of Rule 19(b), the Plaintiffs have an adequate remedy if this action is dismissed for nonjoinder. As discussed more fully above in connection with Defendants' motion to dismiss pursuant to the doctrine of *forum non conveniens,* the Plaintiffs have an adequate and alternative forum in their home country of Mexico.

Because all four of the criteria enunciated in Rule 19(b) are met in this instance, SAA and RFS are missing and indispensable parties to this action.  Therefore, this case should be dismissed.

**C.**     **Summary**

SAA, the owner and operator of the Subject Helicopter, and RFS, the maintainer of the Subject Helicopter, are necessary and indispensable parties to the adjudication of this action that cannot be joined under the jurisdiction of this Court.  For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss for failure to join necessary and indispensable parties.

**VI.**     **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that their Motion to Dismiss be granted.

Dated:  March 24, 2021

Respectfully submitted,

**FITZPATRICK & HUNT, PAGANO, AUBERT LLP**
By: */s/ John M. Socolow*
John M. Socolow, Esquire (admitted *pro hac vice*)
1 Landmark Square – 21st Floor
Stamford, CT 06901
(203) 580-4445 (Phone)
(203) 580-4350 (Fax)
john.socolow@fitzhunt.com

**SALMON, RICCHEZZA, SINGER & TURCHI LLP**
John E. Salmon, Esquire
Zachary J. Ballard, Esquire
1601 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 606-6600 (Phone)
(215) 606-6601 (Fax)
jsalmon@srstlaw.com
zballard@srstlaw.com
*Attorneys for Defendants*
*AgustaWestland Philadelphia Corporation and*
*Leonardo S.p.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have filed the foregoing via the Court's CM/ECF system on March

24, 2021, which automatically generates notification of the filing to all counsel of record.


<u>/s/ John M. Socolow</u>
John M. Socolow