# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTHA JULIA HIDALGO VILLAFANE, Individually, As Executor and as Personal Representative of the Estate of Martha Erika Alonso Hidalgo, | : : : : : | Civil Action No.: 2:20-cv-06393-RBS |
| MA. GUADALUPE NANCY CANALES ELIZALDE, Individually, as Executor and as Personal Representative of the Estate of Marco Antonio Tavera Romero, | : : : : : | |
| LOURDES FRANCISCA MENDOZA HERNANDEZ, Individually, as Executor and as Personal Representative of the Estate of Hector Baltazar Mendoza, | : : : : | |
| v. | : | |
| AGUSTAWESTLAND PHILDELPHIA CORPORATION | : : : | |
| and | : : | |
| LEONARDO S.p.A. | : | |

**DECLARATION OF EMILIO DALMASSO**

I, Emilio Dalmasso, under penalty of perjury, make this declaration in support of Leonardo S.p.A.'s motion to dismiss pursuant to the doctrine of *forum non conveniens* and for failure to join a necessary and indispensable party.

1.     I have been employed by defendant Leonardo S.p.A., one of the defendants herein, since 2002 and I am currently Leonardo S.p.A.'s Senior Vice President Global Sales.

2.     I obtained such knowledge from records regularly kept by Leonardo S.p.A.

3.     I understand that the accident which gives rise to this lawsuit involves the crash of an Agusta A109S model helicopter, bearing Mexican Registration No. XA-BON and Serial Number 22174 (the "Subject Helicopter").

4.     Leonardo S.p.A. designed and manufactured the Agusta A109S model helicopter, including the Subject Helicopter, in Italy.

5.     After manufacturing the Subject Helicopter, Leonardo S.p.A. sold it to its initial purchaser, EOLO PLUS S.A. DE C.V., which is located in CAlle 7 Lote 62 Zona de Aviacion General – Aeropuerto Internacional de Toluca CP 50200 Mexico. A true and correct copy of the contract for the initial sale of the Subject Helicopter is annexed hereto as Exhibit A.

6.     Leonardo did not export or ship the Subject Helicopter to AgustaWestland Philadelphia Corporation ("AWPC").

7.     Leonardo did not export or ship the Subject Helicopter into Pennsylvania or anywhere else in the United States of America.

8.     Leonardo understands that AWPC never had possession of, and did not sell or distribute, the Subject Helicopter from Pennsylvania, or from anywhere else in the United States of America.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of March, 2021 in  Cascina Costa di Samarate (VA), Italy.

**Emilio Dalmasso**

# EXHIBIT A



AgustaWestland

PROT   N°   AW-10-003

**Prot. n.° AW-10-003**

*EOLO PLUS S.A. DE C.V.*



*Sale Contract*

*Grand*



Prot. n.° AW-10-003

# CONTRACT

# BETWEEN

## EOLO PLUS S.A. DE CV

## AND

# AGUSTA S.p.A.

Prot. n.° AW-10-003

## INDEX

1.   SUPPLIES .................................................................1
2.   PRICE ...................................................................2
3.   PAYMENT ............................................................ 2
4.   DELIVERY ...........................................................3
5.   SPECIAL CONDITIONS ......................................3
6.   COUNTRY OF DESTINATION ..........................3
7.   NOTICES ..............................................................4
8.   SIGNATURE .........................................................4

### GENERAL TERMS

1.    TAXES ..................................................................5
2.    INSPECTION, ACCEPTANCE AND TITLE ..........5
3.    CERTIFICATION ..................................................5
4.    PAINTING SCHEME .............................................6
5.    CHANGES ..............................................................6
6.    LIABILITY .............................................................6
7.    WARRANTY ...........................................................6
8.    EXCUSABLE DELAYS ..........................................7
9.    LIQUIDATED DAMAGES ......................................7
10.   TERMINATION ......................................................7
11.   WAIVER .................................................................8
12.   APPLICABLE LAW AND DISPUTES ....................8
13.   EFFECTIVE DATE .................................................8
14.   ASSIGNMENT ........................................................8
15.   ENTIRE UNDERSTANDING ..................................8

## LIST OF ENCLOSURES

**ENCLOSURE 1:        HELICOPTER CONFIGURATION**
**ENCLOSURE 2:        TRAINING**
**ENCLOSURE 3:        TECHNICAL PUBLICATIONS**
**ENCLOSURE 4:        SERVICES**
**ENCLOSURE 5:        WARRANTY POLICY OPTIONS**

 AgustaWestland

| CONTRACT |
|---|

By and between:

**AGUSTA S.p.A.**, an Italian company, with a sole shareholder, having a registered office in Samarate, Cascina Costa (VA), Via Giovanni Agusta n. 520, Italy, stock capital Euro 702.537.000,00 fully paid up, number of registration at the Chamber of Commerce of Varese and Fiscal Code 02512010121, subject to the direction and coordination of AgustaWestland N.V. (herein referred to as "**SELLER**")and

**EOLO PLUS S.A. DE C.V.**, Calle 7 Lote 62 Zona de Aviacion General- Aeropuerto Internacional de Toluca C.P. 50200 Mexico, represented by Mr. Juan Armando Hinojosa G. (hereinafter referred to as "**BUYER**"),

collectively referred to as "Parties",

Whereas the BUYER wishes to purchase and the SELLER is willing to sell the under listed products and services at the terms and conditions set out in this CONTRACT.

This CONTRACT consists of the Contract terms, the General terms, Enclosure 1, Enclosure 2, Enclosure 3, Enclosure 4 and Enclosure 5. In case of any conflict, the following order of precedence shall apply in descending order: the Contract terms, the General terms, Enclosure 1, Enclosure 2, Enclosure 3, Enclosure 4 and Enclosure 5.

Now therefore the Parties agree as follows:

## 1. SUPPLIES

BUYER agrees to buy and SELLER agrees to sell the following products and services (hereinafter referred to as "SUPPLIES"):

- Quantity 1 helicopter(s) model Agusta Grand
  in the configuration as specified in Enclosure 1- Helicopter Configuration (hereinafter referred to as the "HELICOPTER(S)").

- TRAINING as per Enclosure 2.

- TECHNICAL PUBLICATIONS as per Enclosure 3.

- SERVICES as per Enclosure 4.

*Grand*

- 1 -

Seller     Buyer

**Prot. n.° AW-10-003**

AgustaWestland

## 2. **PRICE**

The total CONTRACT value corresponding to the price of the SUPPLIES as per Article 1. is
USD          + VAT as applicable (                                          ) as
follows:

- HELICOPTER(S)                    USD as detailed in Enclosure 1

- TRAINING                        No additional charge

- TECHNICAL PUBLICATIONS           No additional charge

- SERVICES                        Not applicable

## 3. **PAYMENT**

3.1.   Payment of the total CONTRACT value shall be made through direct bank transfer to the
       Bank designated by SELLER, against SELLER's commercial invoices as follows:

       a) Not Refundable Deposit of USD              (                    ) has been
          already paid to Agusta S.p.A.

       b) Intermediate payment of USD               (       ), shall be made within March
          2010.

       c) Balance payment shall be made as follows.

          i. The HELICOPTER balance payment shall be made upon acceptance of the
             HELICOPTER in accordance with Article 2 of the General terms hereto.

       All banking costs and expenses shall be at BUYER's charge.

*Grand*

- 2 -

Seller        Buyer


AgustaWestland

## 4.  DELIVERY

4.1.  HELICOPTER(S), equipped as provided in Enclosure 1- Helicopter Configuration, shall be scheduled for acceptance and delivery ex SELLER's factory in Italy , within July 2010.

4.2.  TRAINING shall be provided as per Enclosure 2- TRAINING.

4.3.  TECHNICAL PUBLICATIONS shall be delivered together with the HELICOPTER, as per Enclosure 3- TECHNICAL PUBLICATIONS.

4.4.  SERVICES shall be provided as per Enclosure 4- SERVICES.

## 5.  SPECIAL CONDITIONS

The Parties agree to the following special condition:

5.1.  Notwithstanding art. 13 of the General Terms hereto, this Contract shall become valid and effective from the date of signature by both Parties.

## 6.  COUNTRY OF DESTINATION AND END USER CERTIFICATE

6.1  BUYER declares and SELLER acknowledges that the HELICOPTER(S) shall be exported to and registered in Mexico as its country of destination.

6.2  If required by the relevant export regulations the BUYER shall within 15 (fifteen) days from the signature of this CONTRACT provide the SELLER with the original End User Certificate, as per model given by the SELLER, duly filled in and signed by the relevant authorities in order for the Seller to make all necessary actions to obtain the licenses for the export of the HELICOPTERS. The BUYER shall, subject to the form of such End User Certificate having been provided in a timely manner by the SELLER, be solely responsible for any consequences deriving from any delay in return of any signed End User certificate and such delay shall therefore result in:

a)  a corresponding postponement of the acceptance dates, and

b)  should the delay exceed thirty (30) days, the SELLER's entitlement to terminate this CONTRACT and in such event SELLER shall have no further obligation towards the BUYER and all sums previously paid by BUYER shall be retained by SELLER without prejudice to SELLER's right to recover further damages SELLER may have suffered.

*Grand*

Seller_____  Buyer_____

Prot. n.° AW-10-003

⇟ AgustaWestland

## 7.   NOTICES

All notices under this CONTRACT shall be in writing and either delivered by hand or sent by
facsimile (to be confirmed by registered mail), or by registered mail or by courier to the
following addresses

For the SELLER:                          AGUSTA S.p.A. – Via G. Agusta 520
                                         21017 Cascina Costa di Samarate (Varese) – ITALY
                                         Attn: Contracts Management
                                         Fax +39 0331  229 930

For the BUYER:                           EOLO PLUS S.A. DE C.V:

                                         Attn. Mr. Juan Armando Hinojosa G
                                         Tel +52(722) 273 33 91

## 8.   SIGNATURE

This CONTRACT is signed in two originals by the Parties, each one retaining an original
thereof.

For BUYER                                For SELLER

name    Juan Armando Hinojosa G.         name    Emilio Dalmasso

title   _____          title   Senior Vice President
                                                 Commercial Business Unit

signature _____          signature _____

date  16/Marzo/10                        date  09/04/2010

In accordance with the Italian law (art. 1341 and art. 1342 of the Italian Civil Code) BUYER
specifically accepts with his signature here below Articles of the General terms : 2 –
INSPECTION, ACCEPTANCE AND TITLE; 5 – CHANGES; 6 – LIABILITY ; 7–
WARRANTY (including Enclosure 5); 8 – EXCUSABLE DELAYS; 9 – LIQUIDATED
DAMAGES;10 – TERMINATION; 12 – APPLICABLE LAW AND DISPUTES; and  14 –
ASSIGNMENT,  of this CONTRACT

For BUYER

Signature   ................JAHG..   Date

*Grand*

- 4 -

Seller ____   Buyer ____



## GENERAL TERMS

### 1.   TAXES

Local taxes, custom duties, levies or other fiscal charges, due in SELLER's country related to the performance of this CONTRACT, shall be borne by SELLER.

Local taxes, custom duties, levies or other fiscal charges, due outside of the SELLER's country for the performance of this CONTRACT, shall be borne by BUYER.

Value added tax, wherever due, shall be borne by BUYER.

### 2.   INSPECTION, ACCEPTANCE AND TITLE

2.1.   SELLER shall give BUYER 15 (fifteen) days written notice of the date on which the HELICOPTER shall be scheduled to be ready for inspection, acceptance and delivery.

BUYER shall start the acceptance process at the SELLER's designated factory within the aforementioned 15 (fifteen) day period, arranging at its own expense and risk, for its authorised and qualified representative, to perform the inspection and acceptance of the HELICOPTER(S).

Upon successful completion of the inspection, BUYER or its representative shall sign an acceptance certificate prepared by the SELLER in respect of the HELICOPTER, confirming that it is in accordance with the CONTRACT, and accepted by BUYER and is ready for delivery.

2.2.   Should BUYER fail to attend the inspection within the 15 (fifteen) day period referred to in Article 2.1 of the General terms, the HELICOPTER(S) shall be deemed as accepted by BUYER based on the SELLER's inspection and the certificate of conformity issued by SELLER's Quality Control Service shall replace in full the acceptance certificate.

2.3.   Upon acceptance, in accordance with this Article 2 of the General terms and provided that the obligations for payment in accordance with Article 3 of the Contract terms have been fulfilled by BUYER, title to the HELICOPTER(S) and other SUPPLIES delivered hereunder shall be transferred to and vest in BUYER free and clear of any encumbrances, liens, privileges, claims and rights of others.

BUYER shall bear, from the time of acceptance, all risks, costs and expenses relating to the HELICOPTER(S) and other SUPPLIES delivered, such as but not limited to storage charges, loss or damage, transportation, insurance, maintenance.

2.4.   Should BUYER reject the HELICOPTER(S) on inspection and test due to demonstrated discrepancies which cannot be corrected during the acceptance process, then the SELLER shall take the necessary corrective action and shall notify to the BUYER, in the shortest possible time, a new date on which the HELICOPTER(S) shall be ready for acceptance.

The Buyer shall not be entitled to reject the HELICOPTER purely on account of minor deficiencies and in the event of there being any such minor deficiencies the extent of these and remedial action for their removal by the SELLER shall be jointly agreed between the BUYER and the SELLER during the inspection and acceptance process.

2.5.   BUYER agrees to keep indemnified the SELLER against all costs, expenses, claims and liabilities whatsoever arising out of the BUYER and/or its representative's participation in the acceptance of the HELICOPTER and against all liability whatsoever for their death or injury or the loss of or damage to their belongings, except where the same resulted directly from the fault of the SELLER.

### 3.   CERTIFICATION

The HELICOPTER(S) shall be delivered with an Airworthiness Certificate for Export (Certificato di Aeronavigabilità per l'Esportazione) to the country of destination released by either European Aviation Safety Agency (EASA) or Federal Aviation Authority (FAA), as the case may be.

In the event that the HELICOPTER type is not certificated in the country of destination, SELLER shall make available the technical documentation as reasonably required by the local aviation authority and will support the BUYER to this effect.

Seller          Buyer



## 4.    PAINTING SCHEME – INTERIOR FINISHING

4.1.    As soon as possible after the CONTRACT Effective Date, BUYER shall confirm to SELLER in writing the final choice of the painting scheme and interior finishing details for the HELICOPTER, in accordance with Enclosure 1- HELICOPTER Configuration

4.2.    In case the BUYER fails to provide confirmation of the painting scheme and details by the later of: either (i) the 15th day after the signature date of this CONTRACT, or (ii) the 180th day before the scheduled delivery date for the HELICOPTER, then the SELLER shall have the right to proceed without delay in the preparation of the HELICOPTER and to deliver it to the BUYER in the following conditions, i.e.:

   a) airframe painted in white;
   b) seats covered with fabric and interior finished at Seller's choice.

   No compensation whatsoever shall be due from the SELLER to the BUYER in such a case on account of the un-finished HELICOPTER condition.

## 5.    CHANGES

5.1.    Engineering changes and improvements, which result in modifications, changes or replacements in the SUPPLIES, but do not affect price, schedule, installation or interchangeability of major assemblies thereof, may be made at any time at SELLER's option.

5.2.    SELLER shall, without BUYER's consent, incorporate in any of the SUPPLIES any change, which in SELLER's judgment is as a result of a compulsory modification required by the EASA, and must necessarily be carried out for reasons of flight safety.

5.3.    SELLER may propose to BUYER modifications which SELLER deems desirable and which may cause changes to the price and/or to the scheduled acceptance and delivery date. When proposing such modification to BUYER, SELLER shall indicate the resulting change in price and/or scheduled acceptance and delivery date. Should BUYER accept the proposed modification, BUYER shall give written confirmation to SELLER within 15 (fifteen) days from the date of SELLER's notice. If no reply is received by SELLER within the said period, the proposed modification shall be considered as unaccepted by BUYER.

5.4.    BUYER may ask for modifications to be incorporated in any of the SUPPLIES. Such requests shall be made in writing at least four (4) months prior to the delivery date and no less than 12 months for major changes. In case the BUYER fails to provide the written request within the above mentioned period then request shall be considered as not presented. The SELLER shall indicate the resulting change in price and/or scheduled acceptance and delivery date.

## 6.    LIABILITY

Except in case of SELLER's fraud or gross negligence, SELLER shall not be liable for and BUYER hereby assumes liability for any and all losses, damages or complaints of whatsoever nature, as regards both personal injury and property, arising out of or in any way connected with handling, possession, operation or use of the HELICOPTER(S) and relevant parts after acceptance thereof in accordance with Article 2 of the General terms.

BUYER hereby agrees to release SELLER from and fully indemnify SELLER in respect of any proceedings, actions, claims and suits, which may be instituted by any third party against SELLER in respect to the foregoing.

## 7.    WARRANTY

The warranty provisions granted by the SELLER under Enclosure 5- Warranty, are applicable for civil operation use only in accordance with the civil flight manual and maintenance manual and accepted by the BUYER in place of any other warranty, express or implied, including but not limited to any warranty of merchantability and fitness for purpose.

Upon acceptance of the HELICOPTER, BUYER shall provide by notice its selection of the warranty option from those provided for in Enclosure 5 - Warranty Policy Options.

It is understood between the Parties that this CONTRACT is not for any distributorship purpose and therefore the warranty will be granted only to the benefit of the BUYER or any of its authorized assignee(s).

Seller          Buyer



## 8. EXCUSABLE DELAYS

8.1. The scheduled acceptance and delivery date provided at Article 4 of the Contract terms represents the best estimate and is based on: (1) timely receipt by SELLER of all information necessary to permit SELLER to proceed with work without delay and without interruption, (2) BUYER's compliance with the payment terms.

8.2 Whilst SELLER shall exercise its reasonable effort to achieve the scheduled acceptance and delivery date, SELLER shall not be liable or responsible for delays or non-compliance resulting from any event beyond the reasonable control of SELLER, including, but not limited to compliance with any applicable regulation of civil or military authority, technical changes due to flight safety reasons, acts of any Government or on behalf of them, war declared or undeclared, insurrection, riot or other acts of civil disobedience, embargo or trade restriction, delays or shortages in transportation, fuel, vendors' and/or subcontractors' delays, strikes, lockouts, slowdowns, labour disputes, fire, accident, explosion, epidemic, unusually severe weather, flood, earthquake, delay to certification, failure in performance of a subcontractor or other acts of God.

SELLER shall give written notice to BUYER of the events causing the excusable delay. Any such event shall extend the delivery date to the extent of the delay so incurred.

8.3. In the event of an excusable delay exceeding 180 days, either Party may cancel the undelivered portion of this CONTRACT, by giving the other Party written notice and the sole liability of SELLER shall be for the return of any payment received on such undelivered portions. No interest shall be paid by SELLER to BUYER on such amounts.

8.4. Delays deriving from changes as per Article 5.2 of the General terms shall be considered "excusable" and ruled by the provisions of this Article 8. In such circumstances, Article 8.3 of General terms shall not be applicable.

8.5. Any delay in payments will entitle SELLER to postpone the delivery date as a consequence of such delay, without prejudice to SELLER's rights under Article 10.2 and 10.3 of General terms hereinafter.

## 9. LIQUIDATED DAMAGES

9.1. In case of a delay to the scheduled acceptance and delivery date due to SELLER's failure, and where such delay shall exceed 90 (ninety) working days beyond the scheduled acceptance and delivery date for the HELICOPTER concerned, BUYER shall have the right to claim , as liquidated damages as its sole remedy, an amount of 0.15% (zero point fifteen percent) of the price of each delayed HELICOPTER for each complete week following the said 90 (ninety) working day period for a maximum period of 20 (twenty) weeks.

9.2. In respect of any liability arising out or in connection with this CONTRACT, including the case of delivery delays, the maximum cumulative amount for all costs, expenses and damages due from SELLER shall not exceed 3% (three percent) of the undelivered portion of the CONTRACT. Such amount shall include, if due to the BUYER, the return to BUYER of any Not Refundable Deposit received by SELLER, on the undelivered portion of the CONTRACT and shall be BUYER's sole remedy under this Contract in lieu of any other rights and will fully indemnify BUYER for any damages suffered.

9.3 In no event SELLER shall be liable for any indirect, special, incidental or punitive damages.

## 10. TERMINATION

10.1. In case of SELLER's failure, for any cause other than that caused by an event described in Article 8 of the General terms, to deliver SUPPLIES in accordance with this CONTRACT and where the failure has remained unresolved at the date of reaching the maximum amount of the liquidated damages, as provided for under Article 9 of General terms, BUYER may terminate this CONTRACT by giving written notification to SELLER of the termination, such notice shall be effective from the 16th day of its receipt by SELLER. In such event the sole liability of SELLER, in addition to the return to BUYER of any Not Refundable Deposit received by SELLER, on the undelivered portion of the CONTRACT, shall be for the payment of the liquidated damages in accordance with Article 9 of General terms, for the amount corresponding to the undelivered SUPPLIES.

10.2. In case the Not Refundable Deposit has not been received by the SELLER within 15 days from its due date, the SELLER shall have the right to terminate this CONTRACT with immediate effect by giving written notice to the BUYER. In such event the SELLER shall have no further obligation towards the BUYER and all sums (if any) previously paid by the BUYER shall be retained by SELLER without prejudice to SELLER's right to recover further damages SELLER may have suffered.

Seller_____  Buyer_____



**Prot. n.° AW-10-003**

10.3.  In case of BUYER's failure to comply with any payment terms other than the Not Refundable Deposit, where such payment remains unpaid beyond 15 (fifteen ) days from its due date, SELLER shall have the right to terminate this CONTRACT with immediate effect by giving written notice of the termination to BUYER.. In such event SELLER shall have no further obligation towards the BUYER and all payments previously made by BUYER shall be retained by SELLER without prejudice to SELLER's right to recover further damages SELLER may have suffered.

## 11.  WAIVER

Any failure of either Party to exercise any right, power, or remedy hereunder shall not act as a waiver thereof, nor shall any single or partial exercise thereof preclude any further exercise of any such right, power or remedy.

## 12.  APPLICABLE LAW AND DISPUTES

The construction, interpretation, validity and performance of this CONTRACT shall be governed by the laws of the Republic of Italy.

The Court (Tribunale) of Busto Arsizio (Italy) shall have exclusive jurisdiction.

## 13.  EFFECTIVE DATE

This CONTRACT shall be valid from the date of signature by both Parties and shall become effective ("CONTRACT Effective Date") on the date when the last of the following conditions has been fulfilled:
(i)  receipt by the SELLER of  the Not Refundable Deposit to be made by BUYER pursuant to Article 3.1.a. of the Contract terms;
(ii)  (when applicable) receipt by the SELLER of the Export License from the relevant Governmental Authorities.

## 14.  ASSIGNMENT

This CONTRACT or its benefits and obligations shall not be assignable or transferable by BUYER without the SELLER's prior written consent (which may be withheld in the SELLER's absolute discretion). The BUYER shall inform SELLER in writing and  require his consent at least 60 (sixty) days in advance.
SELLER has the right to assign or transfer this CONTRACT or its rights and obligations to its controlling, controlled or participated companies.

## 15.  ENTIRE UNDERSTANDING

15.1.  This CONTRACT inclusive of its Enclosures constitutes the entire understanding between the Parties in respect of the subject hereof and supersedes all prior representations, arrangements, undertakings or agreements, whether written or oral, between the Parties.

15.2.  Any amendment to this CONTRACT shall be valid only when made in writing and signed by the Parties.

- 8 -

Seller _____   Buyer _____

Prot. n.° AW-10-003

# ENCLOSURE 1

# HELICOPTER CONFIGURATION



**Prot. n.° AW-10-003**

**GRAND HELICOPTER (EASA/FAA) SINGLE/DUAL PILOT IFR STANDARD CONFIGURATION (1)**

The helicopter Standard configuration incorporates the following main subsystems described in detail in this section:

      Basic aircraft
      Standard equipment
      Single pilot IFR (EASA/FAA) avionic package (Garmin – Bendix/King)
      Additional avionic equipment
      Additional equipment
      Interior
      Painting
      Miscellaneous/ground equipment

(1) The standard configuration does not include interior completion/mission equipment

**1   BASIC AIRCRAFT**
Basic aircraft, as listed in Annex A

**2   STANDARD EQUIPMENT**
Active Noise Reduction (ANR) headsets (pilot and co-pilot)
Airframe hours meter
Baggage compartment lights
Crew open door actuators
First aid kit
Fuel drain electrical valves
Internal structural provisions for utility equipment (emergency floats, rescue hoist, cargo hook, weather radar, engine fire extinguisher, flight director, AFCS)
Portable fire extinguisher
Quick disconnecting chip detectors
Shoulder harness with inertial reels (pilot and co-pilot)
Tail boom strake

**3   SINGLE PILOT IFR (EASA/FAA) AVIONIC PACKAGE (Garmin – Bendix/King)**
AC power supply system (2 inverters)
ADF KR-87 Bendix/King
AFCS 3-axis duplex SP-711 Honeywell
DME KDM-706A Bendix/King
Gyrocompass C14A Honeywell
ICS pilot and co-pilot AA-95 NAT
Marker beacon KMR-675 Bendix/King
Pilot navigation instruments (including LCD EADI & EHSI, standby ADI)
Transponder (mode S) KT-73 Bendix/King
Vertical gyro (no. 1) 46060-11 Flightline System
Vertical gyro (no. 2) VG-208 JET Electronics
VHF (no. 1) COM/NAV/GPS GNS 530 Garmin
VHF (no. 2) COM/NAV/GPS GNS 430 Garmin

*Grand* (Enclosure 1)

Seller _____   Buyer_____


AgustaWestland

**4   ADDITIONAL AVIONIC EQUIPMENT**
Co-pilot flight/navigation instruments (including LCD EADI and EHSI, barometric altimeter, airspeed indicator, VSI)
EFIS pilot and co-pilot in command switch
ELT C406-2 HM Artex
Flight director FZ-702 Honeywell with autotrim
Moving map KMD-550 Bendix/King
Radio altimeter AA-300 Honeywell

**5   ADDITIONAL EQUIPMENT**
450 W retractable/rotating landing light
Baggage compartment extension (1.9 m)
Dual controls
Engine compartment fire extinguishers (2)
Rotor brake
Windshield wipers (pilot and co-pilot) with wiper switch on cyclic grips

**6   INTERIOR**
Air conditioning ECU (Environment Control Unit)
Passive vibration absorber
Primer finished cabin walls

**7   PAINTING**
Standard colour scheme from Company paint selection, solid colour

**8   MISCELLANEOUS/GROUND EQUIPMENT**
Air intake/exhaust covers
Ground tools kit (including tow bar, lifting tool, wheel chocks)
Pitot tubes covers
Rotorcraft Flight Manual (RFM) and technical publications
Tie-down fittings provisions

**CUSTOMER REQUIRED CONFIGURATION**

**VIP Interior - 6 places, composed by:**

- Super Silent soundproofing
- Leatherette covered liners
- Cabin double layer acrylic windows
- All seats crash-resistant covered with leather or fabric/leather
- 3 aft facing seats (central bench) with see-through modification
- 3 fwd facing seats (aft bench) with foldable armrest and glass holder
- 4-point shoulder harness with inertial reels and safety belts for all passenger seats
- Seat covers
- Reading lights, advisory lights, floor courtesy lights
- Leather bellows on flight controls
- Cabin loudspeakers
- Headset ANR type (Qty 6)
- Floor carpeting
- Carpeting protection

*Grand* (Enclosure 1)

- 2 -

Seller ___  Buyer ___

AgustaWestland

- Customized finishing from VIP available selections

**Additional Installed Equipments**

Customized painting scheme, metallic colours from Company selection
213 USG crash-resistant fuel system (in lieu of 152 USG)
Electrically operated passenger steps (RH)
Fuel cap with key-lock
Pulsed chip detectors
TAS SkyWatch 497 L3/Goodrich
Weather radar RDR 2000 Bendix/King
Mast Vibration Absorber

*Grand* (Enclosure 1)

Seller    Buyer_____


AgustaWestland

### ANNEX A
### GRAND HELICOPTER BASIC CONFIGURATION DESCRIPTION

#### a. Airframe
Aluminium alloy and bonded panel fuselage
Semi-monocoque aluminium alloy tail boom
Three-wheeled retractable landing gear
Two hinged jettisonable crew doors (LH and RH)
Two sliding passenger doors (LH and RH), 1.40 m opening, with jettisonable windows
Acrylic windshield and side windows
Acrylic overhead windows
Quick removable tail rotor drive shaft cover
Separate baggage compartment with hinged door
Three jacking points
Removable fairing and cowlings, for complete accessibility to the controls and drive
components
Swivelling front wheel with tow bar attachment
Quick opening hinged inspection doors, to allow visual check of engine oil levels and
maintenance inspection points
Grounding points

#### b. Rotors and controls
Titanium main rotor hub, corrosion protected, fully articulated with four composite grips,
four elastomeric bearings, four individually interchangeable composite material blades, swept
tips, and dampers
Steel tail rotor hub, corrosion protected, semi-rigid delta hinged type, with two composite
blades, individually interchangeable
Cyclic and collective controls powered by two hydraulic systems
Hydraulically powered anti-torque system
Adjustable friction devices on cyclic and collective system
Force trim and artificial feel system
Adjustable directional control pedals
Flapping and droop restraint mechanism

#### c. Power plant and fuel system
Two Pratt & Whitney Canada PW207C turboshaft engines
Full Authority Digital Electronic Control (FADEC)
Engine mounted fuel pump and filter assembly
Engine mounted oil pump and filter assembly
Engine mounted fuel control and governor
Lubrication and cooling system
Engine oil chip detectors (2)
Engine control panel
Airframe mounted easy access fuel filter
Fuel systems control panel
3-cell crash-resistant fuel system (575 l – 152 USG)
Submerged fuel boost pump (2)
RH refuelling point
Ground fuel drains
Locking fuel cap

*Grand* (Enclosure 1)

- 4 -

Seller _____ Buyer _____



Prot. n.° AW-10-003

**d. Transmission drive system and hydraulic system**
960 shp for take off and 900 shp continuous operation main transmission
Three-stage transmission
Free wheeling units (2)
Transmission mounted hydraulic pumps (2) with separate reservoir
Internal dry sump transmission lubrication with pressure and scavenge pump and oil filter
Transmission oil chip detectors (2)
Single stage, bevel gear T/R 90° gear box including oil level sight glass and chip detector
Transmission cooling and lubrication system
Transmission shafts

**e. Electrical system**
24 V DC 27 Ah nickel-cadmium battery with temperature probe
160 A self-cooled starter generators (2)
Voltage regulators (2)
Battery relay
Interconnecting bus relays (2)
External power relay
Distribution buses (1 battery, 2 essential, 2 emergency, 2 main)
External power receptacle
Position lights
Taxing lights (2) and landing lights (2) on landing gear sponsons
Anti collision lights (2)
Cockpit utility lights (2)
Instrument lights with dimming switch
Radio master switch with ground function

**f. Flight instruments – pilot**
Airspeed indicator
Barometric encoding altimeter
Second barometric altimeter (pilot)
Instantaneous vertical speed indicator
Magnetic compass indicators (2)
Clock, 8 days and elapsed time
LCD Integrated Display System (IDS)

**g. Instrumentation (on IDS display)**
Dual gas generator speed indicator (N1%)
Dual turbine outlet temperature indicator (TOT°C)
Dual torque meter indicator (TQ%)
Dual power turbine speed indicator (N2%)
Rotor speed indicator (NR %)
Transmission oil pressure (PSI) and temperature (°C) indicator
Two engine oil pressure (PSI) and temperature (°C) indicators
Two fuel pressure indicators (PSI)
Two fuel quantity indicators (kg)
Two fuel flow indicators (kg/hr)
Two flight controls hydraulic system pressure indicators (PSI)
Two utility hydraulic system pressure indicators (PSI)

*Grand* (Enclosure 1)

Seller          Buyer


AgustaWestland

Outside air temperature indicator (°C)
Two AC voltmeters (VAC)
Two DC voltmeters (VDC)
Two DC ammeters (Amp)

h. **Central warning system and usage monitoring system**
Master warning lights
Master caution lights
Warning, caution and advisory messages (on IDS display)
Aural warning generator system
Engine fire detection system
Usage monitoring system (on IDS display)

i. **Interior arrangement**
Reclined rear cabin bulkhead
Two individual crash-resistant pilot seats, fore and aft adjustable, with lap belts and headrests
Aluminium alloy honeycomb reinforced floor with anti-skid finishing
Ventilation ram air inlets
Anti reflection instrument panel

j. **Exterior finishing**
Finishing in accordance with manufacturer specification (NTA 893 A)
Primer exterior painting

Prot. n.° AW-10-003

# ENCLOSURE 2

# TRAINING

 AgustaWestland

## STANDARD TRAINING

Training will be conducted either at SELLER'S facility in Italy or in USA.

### 1. INTRODUCTION

SELLER is a Type Rating Training Organisation and a Maintenance Training Organization certified by the competent Aviation Authority as applicable in Italy or USA.
The training program developed has been designed to provide the aircrew and the technical personnel with the knowledge and skills that are required to safely operate and maintain the AW109S GRAND HELICOPTER in accordance with the applicable manuals.
The training program will be harmonized with the delivery of the HELICOPTER so that training delivered at the appropriate time might ensure the most updated skill.

### 2. STUDENT CERTIFICATION

At the end of each course the instructor(s) will conduct academic and practical examinations in accordance with the course programs. The Training School will release to the students a Certificate and a Log of the activities performed. It will be the BUYER responsibility to qualify the students as per the applicable rules in BUYER'S country.

### 3. TRAINING PROGRAM

Syllabus and detailed contents of the training courses shall be as applicable at the time of their performance in accordance with the applicable JAR directives.

#### 3.1 PILOT TRAINING

Pilot Training consists of Ground training and Flight training. Ground training will include traditional classroom instruction while Flight training will consist of briefing/debriefings, instructor demonstrations as necessary and student practice of flying skills and procedures.
At the Italian Training facilities, Flight training activity will be conducted on helicopter and/or simulator.

SELLER shall provide the following pilot training:

##### 3.1.1 AW109S GRAND TYPE RATING GROUND SCHOOL

- Number of students:                    1

##### 3.1.2 AW109S GRAND VFR TYPE RATING FLYING TRAINING

- Number of students:                    1

AgustaWestland

## 3.2  TECHNICIAN TRAINING

Maintenance courses cover the HELICOPTER and/or system maintenance procedure as described in the related maintenance manuals.

### 3.2.1   AW109S GRAND AIRFRAME TYPE TRAINIG COURSE

- Number of students:                    2

*Grand* (Enclosure 2)

Seller      Buyer



**Prot. n.° AW-10-003**

---

## GENERAL CONDITIONS RULING TRAINING AT THE TRAINING SCHOOL

a)    The courses shall be conducted at AgustaWestland facilities

b)    The courses shall be utilized within a period of one year from date of contract.

c)    Contents of this Enclosure are not transferable in total or in part to a third party upon sale of the aircraft by BUYER.

d)    Pilots shall possess a current Helicopter Pilot Licence issued by a civil or military Aviation Authority, be instrument rated, and hold a current flying medical category

e)    Technicians shall possess a current Aircraft Maintenance Licence issued by a civil or military regulatory agency, and shall have at least a 2.5-year experience in turbine powered helicopter maintenance.

f)    Pilot flying training will require the use of the BUYER's HELICOPTER, which will need to be made available for this purpose, after acceptance and delivery within the Contract. Daily inspections and normal servicing of HELICOPTER during flying training conducted at SELLER facilities will be performed free of charge. BUYER's HELICOPTER, systems, special tools and GSE, will be utilized, if necessary, for maintenance training.

g)    Course Planning. Courses shall be planned with the SELLER Training School Manager at least two months before the course starting date.

h)    Course Group Leader. BUYER will appoint one group-leader for each course, who will be responsible for the students and for all communications with the SELLER School staff. To this extent SELLER's liability is limited to the accomplishment of the instruction required.

i)    Board, lodging and local transportation. All students' expenses for travel, transportation to school location, boarding and lodging, insurance coverage and medical assistance will be borne by the Buyer.

j)    Language. The courses and the classroom texts are in English. Therefore students shall have a good command of the English language, both written and spoken. If translation is required, the BUYER will supply a translator for each course. In such case, the course duration has to be reconsidered.

k)    Helicopter Insurance during the training. Buyer at its sole expenses shall procure and maintain in full force for the entire duration of the training activities a policies of insurance as below:

- HELICOPTER Liability (including Trainees and other Passenger Liability and Public Liability) in respect of the BUYER-owned HELICOPTER on board of which the training is carried out in the minimum amounts of USD 20.000.000 or equivalent in other currencies any one occurrence/ HELICOPTER.

  The BUYER shall cause SELLER, its officers, directors, employees, agents, the pilot and SELLER's training services suppliers to be named as Additional Insured's in the policy.

- HELICOPTER Hull All Risks (ground and in flight) including War risks in respect of the BUYER-owned HELICOPTER on board of which the training is carried out. Limit: The BUYER-owned HELICOPTER value.

  The BUYER shall furthermore cause the Insurers of the policies to waive their rights of subrogation against SELLER, its officers, directors, employees, agents, the pilot and SELLER's training services suppliers.

---

*Grand* (Enclosure 2)

- 1 -

Seller _____    Buyer _____



An insurance certificate evidencing compliance with the present clause shall be submitted to SELLER at least 7 (seven) days before to start the training activity.

BUYER will also undertake to relieve SELLER, its officers, directors, employees, agents, the pilot and SELLER's training services suppliers from any damage or claims that may arise from the activity connected with training, including any accident to the HELICOPTER body and/or to a third party.

Seller_____   Buyer_____

Prot. n.° AW-10-003

# ENCLOSURE 3

# TECHNICAL PUBBLICATIONS

 AgustaWestland

**Prot. n.° AW-10-003**

---

## TECHNICAL PUBBLICATIONS

---

Agusta will deliver, free of charge, one set of the following Technical Publications in the English language:

- Airframe, plus updates for 5 years from helicopter delivery:

  - Flight Manual
  - Maintenance Manual
  - Overhaul Manual
  - Illustrated Parts Breakdown
  - Set Of Technical Bulletins
  - Set Of Information Letters

- Engine, plus updates as and when issued by the engine supplier, Pratt & Whitney:

  - Maintenance Manual
  - Spare Parts Catalogue
  - Service Bulletins
  - Service Letters

- Vendor Items, as received from the vendor, plus updates as and when issued by the vendors.

*Grand* (Enclosure 3)

- 1 -

Seller_____  Buyer_____

Prot. n.° AW-10-003

# ENCLOSURE 4

# SERVICES

AgustaWestland

Prot. n.° AW-10-003

## <u>SERVICES</u>

**Not Applicable**

*Grand* (Enclosure 4)

Seller_____ Buyer_____


Prot. n.° AW-10-003

# ENCLOSURE 5

## WARRANTY  POLICY  OPTIONS



---

| **WARRANTY** |
| --- |

### TRIPLE 3 WARRANTY FOR NEW HELICOPTER MODELS

### - AW109S *GRAND* -

### 36 MONTHS - 3000 HRS  PRO- RATA

Seller warrants that, at the time of delivery, each new helicopter and part thereof (hereinafter collectively referred to as the "warranted item") will be free from defects in material and workmanship under normal use and service. The limited warranted coverage on "warranted item" is set forth below.

1    Seller Manufactured "Warranted Item"

In the event any "warranted item" manufactured by Seller are demonstrated to Seller's satisfaction to have been defective at the time of delivery, Seller's sole liability and Customer's sole remedy shall be limited to the repair or, at Seller's option, the replacement of the "warranted item" at Seller's place of business. This limited warranty shall apply only in those instances where the defect in Seller's manufactured "warranted item" appears within 36 months from the date of delivery or within 3000 hours of use of the "warranted item" whichever occurs first.

2    Vendor Manufactured "Warranted Item"

In the event any "warranted item" manufactured by a Vendor, rather than Seller, are demonstrated to Seller's satisfaction to have been defective at the time of delivery, Seller's sole liability and Customer's sole remedy shall be limited to the repair or, at Seller's option, the replacement of the "warranted item" at Seller's place of business. For Vendor items Seller shall warrant the parts to the extent of the original warranty as released by the relevant Manufacturer but however not less than 12 months or 1000 hours whichever occurs first.

The following terms shall apply to all "warranted item" on a new helicopter:

During the first 300 hours of use or 12 months from delivery, whichever occurs first, Seller shall reimburse Customer for labour charges related to warranty issues.

Reimbursement for freight charges will be recognised in those situations where the limited warranty described above is accepted.

Spare  parts installed as warranty replacement will be warranted for the balance of the original helicopter warranty or for the spare parts warranty of 12 months or 1000 hours whichever is the greater.

Customer  will  be charged for any "warranted item" repaired or replaced by Seller after 300 hours of use. The charges will be assessed on the pro-rated basis of hours of total use of the  "warranted item"  against either the then applicable life  of  the  part  or 3000 hours, whichever is less.

*Grand* (Enclosure 5)

Seller       Buyer_____

 AgustaWestland

## TRIPLE 3 WARRANTY FOR NEW HELICOPTER MODELS

### - AW109S *GRAND* -

### 36 MONTHS - 2000 HRS NON PRO- RATA

Seller warrants that, at the time of delivery, each new helicopter and part thereof (hereinafter collectively referred to as "the warranted item") will be free from defects in material and workmanship under normal use and service. The limited warranted coverage on "warranted item" is set forth below.

1    Seller Manufactured "Warranted Item"

In the event any "warranted item" manufactured by Seller are demonstrated to Seller's satisfaction to have been defective at the time of delivery, Seller's sole liability and Customer's sole remedy, shall be limited to the repair or, at Seller's option, the replacement of the warranted item at Seller's place of business. This limited warranty shall apply only in those instances where the defect in Seller's manufactured "warranted item" appears within 36 months from the date of delivery or within 2000 hours of use of the "warranted item" whichever occurs first.

2    Vendor Manufactured "Warranted Item"

In the event any "warranted item" manufactured by a Vendor, rather than Seller, are demonstrated to Seller's satisfaction to have been defective at the time of delivery, Seller's sole liability and Customer's sole remedy, shall be limited to the repair or, at Seller's option, the replacement of the "warranted item" at Seller's place of business. For Vendor items Seller shall warrant the parts to the extent of the original warranty as released by the relevant Manufacturer but however not less than 12 months or 1000 hours whichever occurs first.

The following terms shall apply to all "warranted item" on a new helicopter:

During the first 300 hours of use or 12 months from delivery, whichever occurs first, Seller shall reimburse Customer for labour charges related to warranty issues.

Reimbursement for freight charges will be recognised in those situations where the limited warranty described above is accepted.

Spare parts installed as warranty replacement will be warranted for the balance of the original helicopter warranty.

*Grand* (Enclosure 5)

Seller          Buyer


AgustaWestland

Prot. n.° AW-10-003

| **WARRANTY EXCLUSIONS** |
| --- |

Under no circumstances shall the limited warranty described herein be applicable to any helicopter or part repaired or altered outside Seller's factory without Seller's prior approval. The limited warranty described herein shall not apply to helicopters or parts which have been repaired or altered by a party other than Seller where, in Seller's sole judgment, the repairs or alterations have resulted in items not having their initial integrity, stability or reliability, nor shall this limited warranty apply to helicopters or parts which have been subjected to misuse or negligence or have been used again after being involved in an accident.

Seller will have no liability whatsoever for Customer furnished equipment and for which no warranty shall be released by Seller.

Seller neither assumes nor authorises any other person or entity to assume on its behalf any other liability in connection with the sale of any helicopters or parts.

The limited warranty described herein will not apply to:

consumable
standard hardware
normal wear
costs for scheduled changes in retirement life
changes for overhaul period
unauthorised changes
mandatory or optional modifications
consequential damages
costs for commercial losses or lost profit due to loss of use of the helicopter

THE WARRANTY DESCRIBED HEREIN IS GIVEN AND ACCEPTED IN PLACE OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

This limited warranty is the only warranty made by Seller. The obligations of Seller under this warranty are limited to the repair or replacement of warranted helicopters and parts as provided herein and liability is excluded for incidental or consequential damages, including but not limited to damage to the helicopter, parts or other properties; costs and expenses incurred for commercial losses or lost profit due to the loss of use or grounding of the helicopter or otherwise; costs and expenses resulting from required changes or modifications to the helicopter or parts; costs or expenses resulting from changes in retirement lives or overhaul periods.

*Grand* (Enclosure 5)

- 3 -

Seller          Buyer

## AGREEMENT OF ASSIGNMENT OF CONTRACT

This Agreement of Assignment of Contract (hereinafter referred to as "Agreement") is made among **EOLO PLUS S.A. DE C.V.**, Calle 7 Lote 62 Zona de Aviacion General-Aeropuerto Internacional de Toluca C.P. 50200, Mexico (hereinafter referred to as "Assignor") and **BICENTENNIAL AIR LTD.** Co.333 Clay St Suite 4700 Houston TX 77002, U.S.A. (hereinafter referred to as Assignee), and *AGUSTA S.p.A.* an Italian company with a Sole Shareholder, having a place of business in Cascina Costa di Samarate (VA), Italy, stock capital Euro 702.537.000,00 fully paid up, number of registration at the Chamber of Commerce of Varese, and fiscal code 02512010121 subjected to the direction and coordination of AgustaWestland N.V. (hereinafter referred to as "Seller").

Whereas,

A.  Seller and Assignor have entered into a contract dated 9th April 2010 (hereinafter referred to as the "Contract") for the purchase of one helicopter A 109 S; and

B.  Assignor has already paid to the seller the down payment and the second deposit for the total amount of US$          ; and

C.  The Assignor has requested the Seller to accept the assignment of the Contract and consequently of the relevant obligations and rights to the Assignee; and

D.  Seller has no objection to the above assignment of Contract to Assignee.

Now therefore, the Parties agree as follows:

1.  The above recitals are integral to and a substantial part of this Agreement.

2.  The Contract is assigned from Assignor to Assignee, who hereby accepts such transfer, with effect from the date of signature of this Agreement by the Parties.

3.  Seller shall retain the amount of US$          already paid by Assignor pursuant to the Contract considering it as the not refundable deposit and the amount of US$          already paid by Assignor pursuant to the Contract considering it as the intermediate payment.

4.  Through the Contract Assignment, Assignee becomes responsible for the fulfillment of all the contractual obligations. However, the Assignor shall remain jointly and severally liable for the fulfillment of the contractual obligations under the Contract in case the Assignee will not fulfill such obligations.

5.  This Agreement shall be governed by the laws of the Republic of Italy and under the exclusive jurisdiction of the Court (Tribunale) of Busto Arsizio (Italy).



This Agreement is signed in three originals, each Party retaining one of them,

*EOLO PLUS S.A. DE C.V.*

Signature ------------------- JAHG -----------------

Title ------------------------------------------------

Date -----21/ Julio /10-------------------------

*BICENTENNIAL AIR LTD.*

Signature ----------------------------- JAHG

Title --------------------------------------------

Date -----21/ Julio /10--------------------------

**AGUSTA S.p.A.**

Signature ------------------------------------------

Title --------------------------------------------

Date -----10/6/10--------------------------------

Prot. n.° AW-10-003-A

**AMENDMENT ONE**
**to the CONTRACT**
**dated April 9, 2010**

This Amendment is made between **Agusta S.p.A.** an Italian company with a Sole Shareholder, having a place of business in Cascina Costa di Samarate (VA), Italy, stock capital Euro 702.537.000,00 fully paid up, number of registration at the Chamber of Commerce of Varese, and fiscal code 02512010121 subjected to the direction and coordination of AgustaWestland N.V. (hereinafter referred to as "Agusta") and **BICENTENNIAL AIR LTD** an American company with its registered office at Co.333, Clay St Suite 4700, Houston TX, 77002, U.S.A. (hereinafter referred to as "Buyer") both also to be hereinafter referred to as "Party" and collectively as "Parties".

**Whereas** Agusta" and EOLO PLUS S.A. DE C.V entered into a Contract dated April 9 2010 (the "Contract") for the purchase of one helicopter model A109S "Grand" (the "Helicopter") at the terms and conditions as set out therein;

**Whereas** EOLO PLUS S.A. DE C.V by an Agreement of Assignment of Contract dated June 21st, 2010 assigned the all its rights and obligations of the Contract to the Buyer and Agusta has accepted such assignment;

**Whereas** Buyer has requested to Agusta to amend such Contract in order to include additional services and Agusta is willing to accept such request;

**Now therefore the Parties hereto agree as follows**

A)   The above recitals are integral to and a substantial part of this Amendment and, unless the context otherwise requires, the words and expressions contained in this Amendment shall have the same meaning adopted within the Contract.

B)   Agusta and Buyer have agreed to amend the Contract in accordance with the following:

   1.   Enclosure 4 "SERVICES" is entirely replaced by "ANNEX A to Amendment One", hereto.

   2.   Article 1 "SUPPLIES" of the Contract is hereby amended as follows:

   "BUYER agrees to buy and SELLER agrees to sell the following products and services (hereinafter referred to as "SUPPLIES"):



   –   Quantity 1 helicopter(s) model Agusta Grand in the configuration as specified in Enclosure 1- Helicopter Configuration (hereinafter referred to as the "HELICOPTER(S)").
   –   TRAINING as per Enclosure 2.
   –   TECHNICAL PUBLICATIONS as per Enclosure 3.
   –   SERVICES as per Annex A to Amendment One".

3. Article 2 "PRICE" of the Contract is hereby amended as follows:

"The total CONTRACT value corresponding to the price of the SUPPLIES as per Article 1,
is USD            (                                                                ) as
follows:

- HELICOPTER(S)                          USD as detailed in Enclosure 1
- TRAINING                    No additional charge
- TECHNICAL PUBLICATIONS      No additional charge
- SERVICES                    USD as detailed in ANNEX A to
                              Amendment 1"

4. Article 3 "PAYMENT" Paragraph 3.1.c of the Contract, related to the payment of the
   balance for the Helicopter for and the services shall be amended as follows:

"Balance payment of USD            (
              ) shall be made upon acceptance of the Helicopter in accordance with Article
2 of the General terms hereto.

All banking costs and expenses shall be at Buyer's charge."

C) Except as specifically amended by this Amendment One, all existing provisions of
   the Contract shall remain in full force and effect.

D) This Amendment shall become legally binding and effective on the date of signing of
   the Amendment by Agusta and Buyer.

In witness whereof the Parties have caused this Amendment One to be executed by their
authorized representatives.

AGUSTA S.p.A.                                 BICENTENNIAL AIR LTD

date   08/07/2010                             date   JUNE 23  2010

**ANNEX A to Amendment 1**
**(Revision to Enclosure 4)**

– **Helicopter Disassembly;**
– **Helicopter preservation and packing for air shipment;**
– **Helicopter Air shipment.**