**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARTHA JULIA HIDALGO VILLAFANE,** | § | |
| **Individually, As Executor and as Personal** | § | |
| **Representative of the Estate of Martha Erika** | § | |
| **Alonso Hidalgo,** *et al.***,** | § | |
| | § | |
| **Plaintiffs,** | § | **Civil Action No. 2:20-cv-06393-RBS** |
| **v.** | § | |
| | § | |
| **AGUSTA WESTLAND PHILADELPHIA** | § | |
| **CORPORATION,** *et al.***,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS ON THE BASIS OF *FORUM NON CONVENIENS* AND RULE
12(b)(7) FAILURE TO JOIN NECESSARY AND INDISPENSABLE PARTIES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

I. PRELIMINARY STATEMENT ..................................................................... 1

II. FACTUAL BACKGROUND ......................................................................... 3

   A. The Mexican Investigation and Significant National Transportation Safety Board Involvement ....................................................................................................... 3

   B. Rotor Flight Services, Servicios Aèreos del Altiplano, and the Actuator in Need of Repair (SAS2)................................................................................................ 5

   C. The U.S. Origins of the Defective Roll Actuator Installed by Defendants........................ 7

   D. Defendants Leonardo and AWPC Were Fully Aware of Prior Similar Crashes in the United States. ........................................................................................................ 8

III. DEFENDANTS FAIL TO MEET THEIR BURDEN OF DEMONSTRATING THE PUBLIC AND PRIVATE INTEREST FACTORS TIP DECIDEDLY IN FAVOR OF MEXICO AND THOSE FACTORS DO NOT WARRANT DISMISSAL UNDER THE *FORUM NON CONVENIENS* DOCTRINE ........................................................................................ 9

   A. Legal Standard ....................................................................................................... 9

   B. Argument .............................................................................................................. 11

      1. Plaintiffs' Choice of a Convenient Forum is Entitled to Deference ........................... 11

      2. *Gulf Oil* Interest Factors ...................................................................................... 16

        a. Private Interest Factors Favor the United States.................................................... 16

          i. Relative Ease of Access to Sources of Proof and Witnesses Most Important to Plaintiffs' Claims is More Convenient in the United States ......................................... 16

          ii. Availability of Compulsory Process and Cost of Obtaining Evidence Also Favors the United States ..................................................................................................... 19

          iii. The Possibility of View of Premises is Unnecessary in this Action and Does Not Favor Mexico ....................................................................................................... 22

          iv. All Other Practical Considerations Also Favor the Convenience of the United States ................................................................................................................... 23

        b. The Public Interest Factors Do Not Decidedly Favor Mexico As the More Convenient Forum ................................................................................................ 25

          i. 1. Court Congestion ............................................................................................ 25

          ii. 2. The Local Interest Factor Does Not Decidedly Favor Dismissal ...................... 26

          iii. 3. Pennsylvania Compensatory and Substantive Law Will Apply to This Case. ... 32

   C. Summary .............................................................................................................. 34

i

IV.  THE NON-PARTIES IDENTIFIED BY DEFENDANTS ARE NEITHER NECESSARY, NOR INDISPENSABLE ......................................................................................... 35

   A.  Legal Standard ........................................................................................ 35

   B.  Argument ................................................................................................ 37

      1.  Neither the Operator (SAA), Nor the Maintenance Company (RFS) Are Necessary Parties for This Action ............................................................................ 38

      2.  Even if SAA or RFS Were Necessary (Which They Are Not), They Are Not Indispensable ......................................................................................... 42

   C.  Summary .................................................................................................. 44

V.  CONCLUSION ............................................................................................... 45

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acker v. Ray Angelini, Inc.*,
259 F. Supp. 3d 305 (E.D. Pa. 2016) ................................................................... 52

*American Guarantee v. Weinberg*,
2021 WL 915425 (E.D. Pa., March 9, 2021) ........................................................ 49

*Angst v. Royal Maccabees Life Ins. Co.*,
77 F.3d 701 (3d Cir.1996) ...................................................................................... 64

*Barrett v. Ambient Pressure Diving, Ltd.*,
235 F.R.D. 263 (E.D. Pa. 2006) ............................................................................ 57

*Beam v. Thiele Mfg., LLC*,
2018 WL 2049135 (Pa. Super. Ct., May 2, 2018) ................................................ 43

*Behrens v. Arconic, Inc.*,
487 F. Supp. 3d 283 (E.D. Pa. 2020) ............................................................. passim

*Broome v. Antlers' Hunting Club*,
595 F.2d 921 (3d Cir. 1979) ................................................................................... 52

*Clarke v. Marriot International. Inc.*,
2013 WL 4758199 (D.V.I., Sept. 4, 2013) ........................................................... 39

*Dahl v. United Technologies Corp.*,
632 F.2d 1027 (3d Cir. 1980) ........................................................................... 24, 25

*Diaz Contracting, Inc. v. Lisbon Contractors, Inc.*,
No. 88–9203, 1991 WL 53663 (E.D. Pa. Apr. 2, 1991) ...................................... 62

*Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*,
635 F.3d 87 (3d Cir. 2011) ..................................................................................... 54

*Dtex LLC v. BBVA Bancomer, S.A.*,
512 F. Supp. 2d 1012 (S.D. Tex. 2007) ........................................................... 34, 36

*Freedom Int'l Trucks, Inc. v. Eagle Enters., Inc.*,
No. 97–4237, 1998 WL 695397 (E.D. Pa. Oct. 5, 1998)...................................... 65

*Gardiner v. V.I. Water & Power Auth.*,
145 F.3d 635 (3d Cir. 1998) ............................................................................. 57, 69

*Gen. Refractories Co. v. First State Ins. Co.*,
500 F.3d 306 (3d Cir. 2007) ........................................................................... passim

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) ................................................................................. 12, 13, 22

*Hoffman v. Rosewood Hotels and Resorts, LLC,*
    2013 WL 3974098 (D.V.I., July 31, 2013) ........................................................... 37

*Huber v. Taylor,*
    532 F.3d 237 (3d Cir. 2008) .......................................................................... 61, 66, 72

*ICIPA, S.R.I. v. Learjet, Inc.,*
    1997 WL 539714 (E.D. Pa., Aug. 7, 1997) ............................................................ 42

*In re Air Crash Disaster at Mannheim, Germany: on Sept. 11,*
    *1982*, 575 F. Supp. 521 (E.D. Pa. 1983) ................................................... 50, 51, 52

*In re Air Crash Near Peixoto De Azeveda, Brazil, on Sept. 29,*
    *2006*, 574 F. Supp. 2d 272 (E.D.N.Y. 2008) ....................................................... 29

*In re Asbestos Prods. Liability Litigation,*
    921 F.3d 98 (3d Cir. 2010) ..................................................................................... 39

*Incubadora Mexicana, SA de CV v. Zoetis, Inc.,*
    310 F.R.D. 166 (E.D. Pa. 2015) ..................................................................... passim

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,*
    11 F.3d 399(3d Cir. 1993) ................................................................................. 63, 64

*Kisano Trade & Invest Ltd. v. Lemster,*
    737 F.3d 869 (3d Cir. 2013) .............................................................................. 15, 19

*Lacey v. Cessna Aircraft Co.,*
    862 F.2d 38 (3d Cir. 1988) ............................................................................. passim

*Lacey v. Cessna Aircraft Co.,*
    932 F.2d 170 (3d Cir. 1991) ........................................................................... passim

*Lewis v. Lycoming,*
    917 F. Supp. 2d 366 (E.D. Pa. 2013) .............................................................. passim

*Lony v. E.I. Du Pont de Nemours & Co.,*
    886 F.2d 628 (3d Cir. 1989) ........................................................................ 16, 19, 22

*Lony v. E.I. Du Pont de Nemours & Co.,*
    935 F.2d 604 (3d. Cir. 1991) ........................................................................... 11, 34

*Manu Int'l., S.A. v. Avon Prods., Inc.,*
    641 F.2d 62 (2d Cir.1981) ....................................................................................... 45

*Martinez v. Triad Controls, Inc.,*
    593 F. Supp. 2d 741 (E.D. Pa. 2009) .................................................................... 23

*McCafferty v. Raytheon, Inc.,*
    2004 WL 1858080 (E.D. Pa., Aug. 19, 2004) ......................................... 42, 46, 47

*Micheel v. Haralson,*
    586 F. Supp. 169 (E.D. Pa. 1983) ................................................................... 59, 63

*Miller v. Boston Scientific Corp.,*
    380 F. Supp. 2d 443 (D.N.J. 2005) ................................................................. 45, 46

*Myers v. Am. Dental Ass'n*,
  695 F.2d 716 (3d Cir. 1982)............................................................................ 14

*PaineWebber, Inc. v. Cohen*,
  276 F.3d 197 (6th Cir. 2001) .......................................................................... 66

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)........................................................................................ 13

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
  329 F.3d 64, 74 (2d Cir. 2003)....................................................................... 20

*Provident Tradesman Bank & Trust Co. v. Patterson*,
  390 U.S. 102 (1968)............................................................................. 57, 69, 70

*Riley v. Warren Mfg., Inc.*,
  455 Pa. Super. 384, 688 A.2d 221 (1997)...................................................... 23

*Roe v. Wyndham Worldwide, Inc.*,
  2020 WL 707371 (D. Del., Feb.2, 2020) ....................................................... 38

*Temple Univ. Hosp. Inc. v. Grp. Health, Inc.*,
  413 F. Supp. 2d 420 (E.D. Pa. 2005) ............................................................. 65

*Temple v. Synthes Corp., Ltd.*,
  498 U.S. 5 (1990)............................................................................................ 66

*Tysenn v. Johns–Manville Corp.*,
  517 F. Supp. 1290 (E.D. Pa. 1981) ................................................................ 43

*Van Cauwenberghe v. Biard*,
  486 U.S. 517 (1988)........................................................................................ 22

*Whyham v. Piper Aircraft Corp.*,
  96 F.R.D. 557 (M.D. Pa. 1982)........................................................ 58, 59, 60, 64

*Wilson v. The Canada Life Assur. Co.*,
  2009 WL 532830 (M.D. Pa. March 3, 2009) ................................................. 71

*Windt v. Qwest Commc'ns Int'l, Inc.*,
  529 F.3d 183 (3d Cir. 2008).................................................................... passim

*Zelinko v. Real Arenas de Cancun, S.A.*,
  2005 WL 8175763 (W.D. Pa., Aug. 24, 2005) .............................................. 38

## **Other Authorities**

14 C.F.R. Part 21......................................................................................... 28

14 C.F.R. § 21.3 ............................................................................................. 8

42 Pa. C.S.A., § 7102(a.2) .......................................................................... 28

I.    **PRELIMINARY STATEMENT**

Plaintiffs submit this Memorandum of Law in opposition to Defendants', AgustaWestland Philadelphia Corporation's ("AWPC") and Leonardo S.p.A.'s ("Leonardo") motion to dismiss on the basis of *forum non conveniens* and failure to join necessary and indispensable parties. Defendants' motion is based upon a recitation of largely irrelevant and misstated facts, and a misapplication of Third Circuit law regarding *forum non conveniens* and failure to join necessary or indispensable parties under Rule 19.

This products liability case arises out of the crash of an Agusta A109S helicopter ("the subject helicopter") in Mexico that killed five people, including Plaintiffs' decedents: (1) Martha Erika Alonso Hidalgo; (2) Marco Antonio Tavera Romero; and (3) Hector Baltazar Mendoza.[1] After an exhaustive investigation by the Mexican civil aviation authorities, with substantial assistance from the U.S. National Transportation Safety Board ("NTSB") and U.S. component manufacturers, the cause of the crash was determined to be a defective actuator associated with the subject helicopter's Stability Augmentation System ("SAS").   The SAS is part of the helicopter's autopilot or "helipilot" system and intended to reduce pilot workload by stabilizing the helicopter based on gyroscopes and other information without input from the pilots.  Here, however, the SAS's roll actuator malfunctioned, suddenly rolling the helicopter out of control.

This defective actuator was designed, manufactured and inspected in the United States by a third party component manufacturer before Defendant Leonardo, S.p.A. ("Leonardo") installed it in their helicopter during its assembly.  This is why the Mexican investigators turned to the

---

[1] Defendants' memorandum of law misstates the facts from page 1 by referring to Mr. Baltazar as an "Assistant Governor of the Mexican State of Puebla[.]" *See* Defs.' Memo., ECF No. 14-2, at 1.  Mr. Baltazar was not an elected official – he was an assistant to Senator Rafael Moreno Valle Rosas, who also died in this crash.  Mrs. Alonso was the recently elected Governor of the State of Puebla, but as discussed *infra*, this has no bearing whatsoever on the instant motion.

NTSB, conducted all the relevant component inspections in the United States, and why virtually all the relevant evidence and information is located in the United States.

For these reasons, Defendants fail to meet their burden on a motion to dismiss for *forum non conveniens*. The interests of Mexico in adjudicating this products liability case do not outweigh the United States interest in adjudicating these claims in the Plaintiffs' chosen United States forum where: (1) the case involves defective parts designed and manufactured in the United States pursuant to approvals from the United States Federal Aviation Administration ("FAA"); (2) the U.S. made defective parts were incorporated in a European made helicopter that has a Type Certificate issued by the FAA;[2] (3) the defective condition of the actuator was identified by the United States National Transportation Safety Board ("NTSB") in the U.S.; (4) the causal relationship between the defect and the helicopter's loss of control was documented by testing performed under the direction of the NTSB in the U.S. component manufacturer's facility in the U.S.; and (5) Defendant AWPC is Defendant Leonardo's corporate affiliate that operates as Leonardo's helicopter distribution arm in the United States and provides service, product support and training for customers in North America. This is especially true when proper deference is granted to Plaintiffs' choice of this convenient and interested forum, where Defendants have submitted to the Court's personal jurisdiction.

Defendants' Rule 19 argument that this case should be dismissed for failing to join certain parties is similarly deficient. The Mexican parties that Defendants claim should be joined, Rotor Flight Services S.A. de R.L. de C.V. ("RFS") and Servicios Aèreos del Altiplano, S.A. de C.V.

---

[2] There are some 18 Agusta A109 helicopters registered in the United States. Holders of FAA Type Certificates are required to monitor their products for continued operational safety and airworthiness and to report defects and discrepancies to the FAA in furtherance of this obligation. *See* discussion, *infra*. Prosecution of this case in the U.S courts will further promote critically important oversight of the continued airworthiness of the Agusta A109 by ensuring the availability of evidence related to the failed SAS actuator and the resources and expertise necessary for analysis using scientifically accepted standards.

("SAA"), are not necessary for this case, let alone indispensable.  Complete relief can be granted for Plaintiffs' claims amongst the present parties and the potential of a later contribution action does not alter the legal reality that joint tortfeasors such RFS and SAA are permissively joined parties; not necessary ones.  Current Third Circuit standards make it clear that neither RFS nor SAA are indispensable parties—contrary to Defendants' argument based on a single outdated precedent.

For these reasons, more fully set forth below, Plaintiffs respectfully submit Defendants' motion to dismiss should be denied in its entirety.

## II.   <u>FACTUAL BACKGROUND</u>

Plaintiffs provide the following factual summary to correct and supplement the irrelevant and sometimes incorrect "factual background" contained in sections II and III of the Defendants' Memorandum of Law.

### A.  <u>The Mexican Investigation and Significant National Transportation Safety Board Involvement</u>

After the crash, the Mexican civil aviation authorities immediately brought in the NTSB to assist with the investigation, as were representatives of Leonardo and the U.S. manufacturer of the defective actuators, Honeywell International, Inc. ("Honeywell").  (*See* Mexican AFAC Report, Exhibit B to Socolow Aff., ECF No. 14-5 (hereinafter "AFAC Report") at p. 10 of 87).

Although Mexican civil aviation authorities nominally led the investigation, the NTSB, Leonardo and Honeywell provided substantial investigative and technical support.  Numerous components of the subject helicopter's wreckage were sent to different countries, like Canada and Italy, for forensic analysis.  What ended up being the key components, however, were sent to the United States. (*See id.* at p. 47-48 of 87).  The two roll actuators from the subject helicopter's SAS

system were turned over the NTSB to be CT scanned at Varex in Chicago, Illinois. (*See id.* at 48 of 87).[3]

The NTSB produced extensive reports analyzing the results of these tests, which are heavily referenced and relied upon in the Mexican AFAC Report in forming conclusion. (*See id.* at 48 of 87; Declaration of Vincent C. Lesch ("Lesch Decl."), Exhibit Q, Annex E to AFAC Report (hereinafter "Annex E").[4]   Plaintiffs recently received some of these reports via Freedom of Information requests to the NTSB. (*See* Lesch Decl., Exhibits A-F, NTSB FOIA Response Excerpts).[5]   These NTSB tests found that one roll actuator (hereinafter "the SAS1 actuator") contained two loose screws that were floating freely within the case of the actuator. (*See id.* at p. 69 of 87).

The actuators were then sent to Honeywell's facility in Boyne City, Michigan for further disassembly and inspection. (*See id.* at 48 of 87 and Annex E at 3 of 19).  When the actuators were opened by Honeywell, with the NTSB in attendance, the loose screws in the SAS1 actuator were confirmed. (*See* Annex E at 5 of 19).  The loose screws and actuator body of the SAS1 actuator were then sent to the NTSB Materials Lab for further analysis of screws and threads where they should have been installed. (*See* Annex E at p. 17 of 19).

The Mexican investigators also requested the actuator's manufacturer, Honeywell, to analyze what effect these loose screws would have on the actuator's function.  (*See* Lesch Decl. at Exhibit E, Investigation Correspondence from Honeywell).  Honeywell's analysis determined that

---

[3] Other important components from the subject helicopter, including the hydraulic pump and master caution and master warning lights, were also sent to the NTSB materials lab and other U.S. based facilities. *See* AFAC Report at p. 48 of 87 and Exhibit C at p. 8.

[4] The AFAC Report translation attached to Defendants' motion refers to "Annex E" in the body of the main report, but the attached "anexos" the main report is referring to were translated as "Exhibits".  Therefore, the Report's references to "Annex E" correspond to "Exhibit E" of the AFAC Report translation provided by Defendants.  This Memorandum will refer to this attachment as "Annex E" for consistency.

[5] The NTSB also withheld approximately 2,600 pages of additional records concerning this crash within their possession, which Plaintiffs will seek via appeal. (*See* Lesch Decl., Exhibit A, NTSB FOIA Response Letter).

the screws could contact different terminals on the actuator's internal circuitry, conduct electrical current, and cause the actuator to fully extend within less than 1 second. (*See id.* at p. 70 of 87). The resulting unintended control input to the helicopter would cause precisely the same kind of abrupt hard roll that inverted the subject helicopter and caused the crash.

While the SAS system contains a second roll actuator that is supposed to be redundant, investigators determined that this second actuator (hereinafter "the SAS2 actuator") was also defective and found to be in need of repair before the crash by the helicopter's maintainer, RFS. (*See* Complaint at ¶¶ 26, 29, and 31; AFAC Report at p. 68 of 87).  Honeywell and the NTSB also examined the SAS2 actuator in the United States. (*See id.* at p. 47-48 of 87).

Using these extensive U.S. analyses, the Mexican investigators ultimately concluded that the probable cause of the crash was: "Loss of control of the helicopter due to a sudden roll to the left, which was not recovered by the pilot in command, causing the helicopter to invert its position during flight and impact with that configuration against the terrain." (*See id.* at 83 of 87).  The investigators further concluded that "based upon the available evidence, it could be determined that the sudden roll to the left was possibly due to both roll linear actuators extending simultaneously, without being commanded." (*Id.*)

## B. Rotor Flight Services, Servicios Aèreos del Altiplano, and the Actuator in Need of Repair (SAS2)

Defendants' focus on the conduct of RFS and SAA is an effort to deflect from their own tortious conduct and the involvement of U.S. investigators and manufacturers that are central to this lawsuit.  While the investigation found that the SAS2 roll actuator (i.e. not the one with the loose screws) was in need of repair before the crash and the helicopter's maintainer, RFS, noted this in the logbook, (s*ee* AFAC Report at p. 68 of 87), RFS was allowed to let the helicopter to continue flying.  This decision comports with the subject helicopter's Minimum Equipment List

("MEL") for this helicopter that identifies the systems that must be functioning for the helicopter to operate safely. The MEL allowed the subject helicopter to continue flying despite only having only one SAS roll actuator properly functioning. (*See id.* at p. 22-23 of 87). The helicopter's operator, SAA, developed the subject helicopter's MEL based on the Master MEL for this model helicopter produced by Defendants and published by the European Aviation Safety Agency. (*See id.* at 22 of 87; *see also* Lesch Decl., Exhibit F, SAA MEL).[6]

RFS never repaired either defective SAS roll actuator, nor was it responsible for or capable of doing so. In fact, there are no maintenance workshops anywhere in Mexico that have the authorization or capacity to perform work on this type of actuator—only the manufacturer, Honeywell, or a U.S. maintenance facility authorized by the Federal Aviation Administration ("FAA") could service or repair these actuators. (*See* AFAC Report at p. 71 of 87). This was precisely what happened here.

The SAS2 roll actuator that RFS identified as in need of repair before the crash was previously sent to Georgia for repair and/or overhaul by Precision Aviation Group, Inc. ("Precision") multiple times.[7] (*See id.* at p. 68 & 71 of 87). As part of their examination and analysis of this actuator, the NTSB was tasked with gathering information and documents from Precision concerning their repairs to this actuator, and whether Precision was aware of any prior loose screws in this type of actuator. (*See* Annex E at p. 12 of 19.).

There are allegations that SAA's MEL was out of date at the time of the crash, but the more recent revision of the Master MEL published by Defendants still allows this helicopter type to

---

[6] The SAA MEL is entirely in English and already in the parties' possession from the recent NTSB FOIA response. (*See* Lesch Decl., Exhibit F).

[7] Precision is the holder of an FAA Repair Station Certificates for its Georgia facility as well as other FAA authorizations that provide the legal authority necessary for it to perform maintenance of the Honeywell SAS actuator that is a component part of the Agusta A109 helicopter. (*See* Lesch Decl., Exhibit Q, Precision Website Excerpts).

operate with only one of the two actuators properly functioning. (*See* AFAC Report at p. 23 of 87). In fact, the updated Master MEL published by Defendants allows the helicopter to fly with only 1 SAS roll actuator *for even longer* before any repair was required. (*See id.* at p. 76 of 87). Plaintiffs allege that operating with only one properly functioning SAS roll actuator rendered the subject helicopter incapable of meeting the minimum safety standards for controllability, (*see* Complaint at ¶ 40), and even the updated Master MEL continues to allow this defective condition to persist. Plaintiffs further allege that the Defendants did not properly inform and warn operators and crew of the potential consequences of actuator failure such as occurred here. (*See, e.g.*, *id.* at ¶¶ 46-47, 57(o)).

**C.  The U.S. Origins of the Defective Roll Actuator Installed by Defendants**

The defective actuator with the loose screws had never been repaired or removed from the subject helicopter after it was installed (in a defective condition) at manufacture by Defendants. (*See id.*; *see also* Complaint at ¶ 35).  This model actuator, including this particular actuator with the loose screws installed on the subject helicopter in SAS1, is manufactured at Honeywell's facility in Boyne City, Michigan. (*See* Lesch Decl., Exhibit B, Honeywell Records).  Not only are they manufactured in the United States, they are produced, inspected and signed off pursuant to the Technical Standard Order ("TSO") issued by the Federal Aviation Administration ("FAA") and held by Honeywell's aerospace division located in Phoenix, Arizona. (*See* Lesch Decl., Exhibit N, Declaration of Colin A. Sommer, at ¶ 9 (hereinafter "Sommer Decl."); *see also* Lesch Decl., Exhibit D, Honeywell Manufacturing Records).  These actuators are then incorporated into the subject helicopter by Defendants pursuant to the type certificated design approved by the FAA. (*See* Sommer Decl. at ¶ 10).  Holders of FAA Type Certificates are required to report defects and

discrepancies to the FAA and to monitor reports of defects or issues with their products for continued operational safety and airworthiness. (*See id.* at ¶¶ 17-19; *see also* 14 C.F.R. § 21.3).

D. **Defendants Leonardo and AWPC Were Fully Aware of Prior Similar Crashes in the United States.**

Defendants were on notice of this unsafe condition in their product from prior similar crashes of A109 helicopters in the United States, but continue to bury this issue with only slight changes to the Master MEL rather than actual warnings or bulletins that could properly alert pilots, mechanics and operators of this model helicopter of the danger. (*See* Complaint at ¶¶ 38-39). Defendants were aware that SAA owned/operated the subject helicopter and provided SAA with access to the latest manuals and instructions. (*See* AFAC Report at p. 53 & 79 of 87).  They did not, however, issue a service bulletin to operators like SAA, or notify aviation regulators like the FAA of this known danger. (*See* Complaint at ¶¶ 38-39).

The responsibility for tracking service difficulties, like the subject defect, lies not only with the manufacturer of the subject helicopter, Defendant Leonardo, but with their wholly owned subsidiary, Defendant AWPC. (*See id.* at ¶¶ 13-14).   AWPC is admittedly headquartered in Philadelphia (*see* Defs.' Memo. at 10; Complaint at ¶ 8), and serves as the base of operations for Leonardo's North American commercial business unit and all customer support, services, training, and procurement for North America. (*See* Lesch Decl., Exhibit G, Press Release).  Leonardo's own website lists the AWPC headquarters as its primary contact for "Leonardo USA[,]" touts that "We deliver the entire Leonardo Helicopters product portfolio from our Philadelphia facility" and that AWPC's  "Part 145 maintenance center deliver[s] top-rated customer support across North and South America[.]" (*See* Lesch Decl. Exhibit H, Leonardo USA Website).

Additionally, certain units of the subject A109 model helicopter that will ultimately be distributed to Mexico undergo final assembly at AWPC's facilities in Philadelphia. (*See* Lesch

Decl., Exhibit i, News Coverage of Mexican Government's Purchase of A109 Helicopters). AWPC is continuing to expand its facilities in Philadelphia and numerous A109 helicopters are registered in the United States, including in Pennsylvania. (*See* Lesch Decl., Exhibits J-L, FAA Registration Data and News Coverage).

Defendants publish all of their manuals and MEL documents, including those for the subject helicopter, in the English language.   Leonardo sold this helicopter with entirely English language manuals and warnings, and provided all training for operation and maintenance of the helicopter in English. (*See* Sale Contract attached as Exhibit A to the Declaration of Emilio Dalmasso, in turn attached as Exhibit E to the Socolow Aff., ECF No. 14-8 at p. 26 & 29 of 40 (hereinafter "Dalmasso Decl.").

## III.   DEFENDANTS FAIL TO MEET THEIR BURDEN OF DEMONSTRATING THE PUBLIC AND PRIVATE INTEREST FACTORS TIP DECIDEDLY IN FAVOR OF MEXICO AND THOSE FACTORS DO NOT WARRANT DISMISSAL UNDER THE *FORUM NON CONVENIENS* DOCTRINE

### A. Legal Standard

"The Third Circuit has articulated a three-part test for analyzing *forum non conveniens* motions." *Behrens v. Arconic, Inc.*, 487 F. Supp. 3d 283, 309 (E.D. Pa. 2020).  First, the court must "determine whether an adequate alternative forum can entertain the case." *Id.* (citing *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189-190 (3d Cir. 2008)).   Second, "if such a forum exists, the district court must determine the appropriate amount of deference to be given the plaintiff's choice of forum." *Id.* (citing *Windt*, 529 F.3d at 190).   Third, "the district court must balance the relevant public and private interest factors." *Id.*

Defendants bear the burden of persuasion and proof on each of these elements. *Id.* at 309-10 (citing *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d. Cir. 1991)); and *Lewis v. Lycoming*, 917 F. Supp. 2d 366, 377 (E.D. Pa. 2013) (citing *Windt*, 529 F.3d at 192).  Defendants

must "meet their *heavy burden* [of] establish[ing] that the 'balance of these [private and public interest] factors tip decidedly in favor of a trial in a foreign forum.'" *Lewis v. Lycoming*, 917 F. Supp. 2d at 377 (emphasis added).  The court must "supply specific reasons and develop adequate facts to support its decision." *Behrens*, 487 F. Supp. 3d at 310 (citing *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988) (hereinafter "*Lacey I*").

The private interest factors for the third element include: (i) the relative ease of access to sources of proof; (ii) the availability of compulsory process for attendance of unwilling, and the cost of obtaining evidence of willing, witnesses; (iii) the possibility of view of premises, if view would be appropriate to the action; and (iv) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

The public interest factors for the third element include: (i) administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies decided at home; (iii) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action and, relatedly, the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (iv) the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981) (referencing *Gulf Oil*, 330 U.S. at 509).  The court does not simply count the number of factors favoring or disfavoring dismissal.  The analysis is qualitative, not quantitative.  *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 182 (3d Cir. 1991) (hereinafter "*Lacey II*").

Also relevant is that Defendants' motion is based solely on *forum non conveniens* and Federal Rule of Civil Procedure 12(b)(7). *See* Defs.' Memo. at p. 1-2.  Defenses listed in Rule 12(b)(2)-(5), including lack of personal jurisdiction, are waived if not included in a Rule 12 motion and a party that has previously moved pursuant to Rule 12 may not make another motion under

Rule 12 to raise lack of personal jurisdiction. *See* F.R.C.P. 12(g)(2) & h(1)(A); *see also Myers v. Am. Dental Ass'n*, 695 F.2d 716, 720-21 (3d Cir. 1982).  Accordingly, since both Leonardo and AWPC have appeared and made a motion pursuant to Rule 12, but failed to raise personal jurisdiction, this defense has been waived and both defendants have submitted to the jurisdiction of this court.

### B.  Argument

Plaintiffs do not dispute that Mexico is an available alternative forum,[8] but Defendants cannot meet their *"heavy burden"* of demonstrating that the balance of the interest factors first identified in *Gulf Oil* tips decidedly in favor of Mexico. *See Lewis v. Lycoming*, 917 F. Supp. 2d at 377.  Instead, proper consideration and balancing of the public and private interest factors, in light of the more relevant products liability facts, clearly favors the United States.  Defendants simply have not met their burden of proving anything close to a sufficient basis for the Court to develop specific reasoning, supported by adequate facts, warranting dismissal.  Nor have Defendants shown that Mexico is a decidedly more interested or convenient forum.

### 1.  Plaintiffs' Choice of a Convenient Forum is Entitled to Deference

Plaintiffs' choice of forum is entitled to the same deference granted to a U.S. plaintiff because of the clear convenience of litigating these claims in the Eastern District of Pennsylvania. While foreign plaintiffs, like the Mexican Plaintiffs here, are not entitled to the same automatic deference to their choice of forum as domestic or forum residents, they are entitled to such deference upon a "strong showing of convenience." *See Behrens*, 487 F. Supp. 3d at 317 (*citing Windt*, 529 F.3d at 190).  "In performing its *forum non conveniens* inquiry, a district court 'must assess [and articulate] whether the considerable evidence of convenience has . . . overcome any

---

[8] Plaintiffs do not, however, concede or admit any of the descriptions of Mexican law or the Mexican judicial system in Defendants' Memorandum of Law or in the Affidavit of Mr. Alegre, many of which are inaccurate.

reason to refrain from extending full deference to the foreign plaintiff's choice." *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 875-76 (3d Cir. 2013) (citing *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989)).  Here, all the relevant evidence and witnesses for litigating the defective condition of the failed actuators is located in the United States, AWPC is headquartered in this district, and Defendants have waived their personal jurisdiction defense, all of which supports just such a "strong showing of convenience" for granting Plaintiffs' choice of forum deference.

Defendants' arguments that AWPC being headquartered in this forum is a "red herring" misses the relevant convenience facts of this case. *See* Defs.' Memo. at 10.  Whether the subject helicopter was designed, manufactured, tested, distributed by AWPC in Philadelphia, or owned and operated in Pennsylvania, is irrelevant to whether litigating these claims in the forum of AWPC's headquarters is convenient going forward. *See id.*  Since Defendants have waived any personal jurisdiction defense and are not contesting jurisdiction, these facts bear little relevance. Instead, it is well recognized in this Circuit "that if the *defendant* is headquartered in the country and/or forum where the case is brought, the plaintiffs' choice of forum is entitled to deference – *even if* the plaintiffs are foreign." *Behrens*, 487 F. Supp. 3d at 317 (collecting numerous Third Circuit and E.D. Pa. cases supporting this proposition).  The fact that AWPC is headquartered here in the Eastern District will undoubtedly make litigating here more convenient for all parties. AWPC and Leonardo are closely connected, and employees of Leonardo who designed, manufactured, tested, distributed and sold the subject helicopter are much more likely travel to and/or interact with the headquarters of AWPC, Leonardo's base of operations for North America, than they are with Mexico.

Defendants' motion is also mistaken in asserting that litigating this products liability case will be "overwhelmingly involved and [] decided on evidence located in Mexico[.]" Defs.' Memo. at 11. The vast majority, if not all, the evidence concerning the SAS roll actuator defects that caused this crash is located in the United States, where the actuators in question were manufactured in Michigan pursuant to FAA approved designs from Arizona. This is why all the key investigation activities in this crash took place in the United States, and why the same inquiries in litigating these claims will be focused in this country as well. The key witnesses and evidence concerning these actuators being located in the United States is another key reason litigating these claims in Plaintiffs' chosen forum is convenient and another basis supporting the normal heightened deference to Plaintiffs' choice of forum. *See Behrens*, 487 F. Supp. 3d at 318.

It is notable that the Mexican investigative authorities immediately enlisted the NTSB to assist in the investigation, and the suspected defective components were shipped to the United States for analysis. The defective condition of the SAS1 actuator, with two loose screws, was identified via CT Scanning conducted in the U.S, and the subsequent disassembly, inspection and analysis of the defective unit all occurred in the United States. The people who performed this investigative work are all located in the United States and are essential fact witnesses. So too are the persons who were involved in the U.S. manufacture and quality control of the failed component that was part of the FAA certificated type design for the subject helicopter. Likewise, the condition of the SAS2 actuator was investigated in the United States, and this unit had undergone recent repair in the United States. The people involved in the repair and inspection of SAS2 are also likely fact witnesses located in the United States.

The "red herring" on convenience here is Defendants' focus on non-parties, SAA and RFS. This is not a negligent maintenance case, and neither the helicopter's owner (SAA) nor the

13

maintainer (RFS) ever repaired or altered the defective actuator with the loose screws that Defendants incorporated into their helicopter, nor the other actuator that was found not to be functioning properly before the crash.  No one in Mexico could have legally done so. (*See* AFAC Report at p. 71 of 87).

Defendants also fail to provide any meaningful detail concerning the criminal allegations against RFS and SAA in Mexico beyond vague references to "false statements" from Associated Press reports.  Nor can they explain how this relates to Plaintiffs' claims against Defendants. (*See* Defs.' Memo. at 4; Socolow Aff., Exhibit C).  These parties were not legally authorized to repair these actuators, and they were following defective instructions and warnings provided by the Defendants that allowed the helicopter to keep flying despite the issues with these systems.

Defendants' deference arguments also rely on the irrelevant (and incorrect)[9] fact that two of Plaintiffs' decedents were elected officials in the Mexican state of Puebla to somehow dispute the convenience of litigating this case here. (*See* Defs.' Memo. at 11).  This fact has no bearing on convenience whatsoever.  The Third Circuit has repeatedly held that the deference inquiry does not depend on the "citizenship or residence of the parties," *see Kisano*, 737 F.3d at 875. Defendants' focus on this irrelevant fact is the kind of xenophobia that courts have so painstakingly avoided as a reason to doubt the convenience of a foreign plaintiff's choice of forum. *See id.* (citing *Lony*, 886 F.2d at 634) ("[T]he reason for giving a foreign plaintiff's choice less deference is not xenophobia, but merely a reluctance to assume that the choice is a convenient one . . . .").

Defendants still bear the burden on every element, and a *forum non conveniens* challenge is "not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference

---

[9] As mentioned *supra*, decedent Hector Baltazar Mendoza was not an "Assistant Governor of Puebla" nor even an assistant to the Governor of Puebla, decedent Martha Erika Alonso Hidalgo.  He was an assistant to another passenger who died on the subject helicopter.

since dismissal for *forum non conveniens* is the exception rather than the rule." *See Lacey I*, 862 F.2d at 45-46.  When the relevant facts are considered, Plaintiffs have "bona fide" convenience reasons for bringing these claims in the United States, where these actuators were designed, certified, manufactured, and tested, and in the Eastern District of Pennsylvania, one of the only places personal jurisdiction could be secured over these defendants and where AWPC is headquartered. *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003). The Plaintiffs' residence and employment is not otherwise relevant.

Litigating these claims in Mexico would only present difficulties, as further detailed *infra*. Bringing all this U.S. evidence concerning the actuators, much of which is in the possession of third-parties like Honeywell and Precision, to Mexico would be onerous if not impossible for both Plaintiffs and Defendants.  The witnesses involved in the design and manufacture of the subject actuators and the witnesses involved in the investigation failure analysis of the components are all in the United States or Italy.  None are in Mexico.  Even if this evidence could be marshalled in Mexico, it is all in English, the international language of aviation, and would need to be time-consumingly and expensively translated.  Filing these lawsuits in Mexico would not have served either Plaintiffs or Defendants' convenience interests,

For all of the above mentioned reasons, Plaintiffs submit that the convenience in this /forum is sufficiently strong to merit the same level of deference to their choice of forum as a domestic plaintiff would receive.  At a minimum, Plaintiffs' choice of forum is entitled to a moderate amount of deference, such that "Defendants must establish 'a strong preponderance in favor of dismissal.'" *Behrens*, 487 F. Supp. 3d at 318 (citing *Lacey II*, 932 F.2d at 175); *see also Lewis v. Lycoming*, 917 F. Supp. 2d at 371.

**2.** *Gulf Oil* **Interest Factors**

**a.** **Private Interest Factors Favor the United States**

In considering each private interest factor, the district court must evaluate the substance of the dispute between the parties and determine how critical, or even relevant, certain pieces of evidence are to the claims in this action. *See Lony,* 886 F.2d at 635; *see also Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988) (quoting *Gulf Oil*, 330 U.S. at 508)).  Defendants' analysis selectively focuses on evidence located in Mexico, while ignoring the vast majority of much more relevant evidence concerning the design, manufacture and repair of the defective actuators at issue here in the United States.  When all of the evidence is considered qualitatively in the context of Plaintiffs' products liability claims, it is clear that the most relevant evidence is more easily accessible and trial is more convenient in the United States.

**i.** **Relative Ease of Access to Sources of Proof and Witnesses Most Important to Plaintiffs' Claims is More Convenient in the United States**

The primary evidence of Plaintiffs' products liability claims concerns the design, manufacture, testing and forensic investigation of the defective actuators in question.  The witnesses knowledgeable about these issues, and documents relating to them, are crucial to demonstrating the cause of the Subject Helicopter's sudden roll, its exit from controlled flight, and crash that resulted in Plaintiffs' decedents' deaths. *See Riley v. Warren Mfg., Inc.*, 455 Pa. Super. 384, 390, 688 A.2d 221, 224 (1997) (Under Pennsylvania law, plaintiff must as a threshold matter, establish a product defect before considering the issue of causation); *Martinez v. Triad Controls, Inc.*, 593 F. Supp. 2d 741, 756 (E.D. Pa. 2009) (accord).  Additionally, laboratory analysis of these components will need to take place in the United States. (*See* Sommer Decl. at ¶¶ 20-22). Examination of these U.S. witnesses and documents, and the easily shipped actuator components, in the U.S. will allow the parties to best confirm the nature of the defect responsible for this crash.

Defendants ignore the plain fact that all the critical evidence in this products liability case is in the United States.  Defendants' reliance on  "various witnesses" including "Mexican government witnesses" and "important" physical and documentary evidence concerning the helicopter's maintenance being located in Mexico (*See* Defs.' Memo. at 13-14), is largely irrelevant and misplaced given the nature of the product defect that caused the helicopter to lose control and crash.  The Mexican investigators quickly determined that the U.S. manufactured actuators were likely implicated based on how the helicopter departed from controlled flight and crashed.  This is why they sent the subject actuators to the United States for disassembly, analysis and testing to identify the defect and failure mode that caused the helicopter's sudden loss of control.  The Mexican investigators enlisted the U.S NTSB to assist in the investigation, all of the relevant investigative activity occurred in the United States, and was undertaken by knowledgeable investigators from the United States.  It cannot be seriously disputed that the most qualitatively relevant and important evidence concerning the cause of the crash and Plaintiffs' products liability claims is located in the United States.

Given these facts, Defendants' reliance on *Dahl v. United Technologies Corp.*, 632 F.2d 1027 (3d Cir. 1980), is misplaced.  Here, unlike in *Dahl*, the foreign investigative and maintenance witnesses are of minimal importance, because the Mexican investigators relied heavily on the conclusions of the American NTSB.  Additionally, unlike the foreign maintenance company in *Dahl* that "serviced or made installations on the helicopter," *see* 632 F.2d at 1030, it is irrefutable that RFS never removed or installed the relevant actuators, nor were they or anyone else in Mexico capable of or authorized to repair them.  Further, the AFAC final probable cause report attached to the Defendants' motion concluded the Mexican investigation and, therefore, the foreign civil aviation authority is not "currently conducting an investigation" as they were in *Dahl*. *See id*.

Lastly, and most importantly, unlike *Dahl,* the Defendants cannot consent to make available in Mexico the products liability evidence in this case. *Cf. id.* at 1031 ("UTC . . . has agreed to make witnesses and documents under its control available . . . in Norway . . . .  Thus, plaintiffs will have access to *all* records germane to their strict liability theory.") (emphasis added). Instead, the products liability evidence here is mostly, if not primarily, in the hands of third parties, including the NTSB, Honeywell and Precision, who investigated and manufactured, repaired, tested and inspected the defective roll actuators in question.  These crucial sources of evidence are not in Defendants' control to produce in Mexico.

The circumstances in this case are instead much more similar to those of *Lewis v. Lycoming*, 917 F. Supp. 2d 366 (E.D. Pa. 2013).  In that case, plaintiffs asserted products liability claims stemming from a helicopter crash in the UK, which involved a UK registered and maintained aircraft and all UK citizen decedents. *See Lewis*, 917 F. Supp. 2d at 368-69.  The defendant helicopter and component manufacturers moved to dismiss on the basis of *forum non conveniens*, arguing that UK witnesses to the crash, and UK based evidence concerning piloting and maintenance made the sources of proof more accessible in the UK. *See id.* at 371-72.  The court, however, found that "the contours of this action will involve witnesses and documents regarding the design, manufacture, assembly, and testing of the aircraft and its parts." *Id.* at 372. That evidence, combined with the testimony of experts who would examine it, would be "the heart of the case." *Id.*  Therefore, defendants did not establish that witnesses and documents located in the UK outweighed the importance of the evidence present in the United States, and this factor weighed in favor of the Plaintiffs' choice of forum.  The same is true here: all the relevant evidence and witnesses concerning the design, manufacture, testing, and investigation of the roll actuator components that failed and caused this helicopter crash are located in the United States.  Therefore,

as in *Lewis*, the relative ease of access to documents and witnesses in this case favors the United States and Plaintiffs.

ii.     **Availability of Compulsory Process and Cost of Obtaining Evidence Also Favors the United States**

Defendants argue that Mexico would be more convenient because they cannot compel live testimony of Mexican witnesses at trial in the U.S. (*See* Defs.' Memo. at 14-16), but again ignore the crucial U.S. based third party evidence concerning the original design, manufacture, assembly, testing and investigation of the roll actuators that can only be compelled in the United States. Plaintiffs' inability to compel the testimony of these witnesses or the associated evidence in Mexico by any means other than the Hague Convention makes this factor, at best, "a wash." (*See* Lesch Decl., Exhibit O, Declaration of Maria Teresa Cruz Abrego at ¶ 9 (hereinafter "Cruz Decl.")).  Accordingly, Defendants have not and cannot meet their burden of proof on this factor. *See Lewis v. Lycoming*, 917 F. Supp. 2d at 372-73.

To begin, Defendants focus extensively on the potential liability of the Mexican owner of the helicopter (SAA) and the maintenance facility (RFS), arguing that they are essential parties to this action.  Just because Defendants say so does not make it so.  It is settled law in this Circuit that a defendant seeking dismissal under the *forum non conveniens* doctrine must produce *evidence* showing that others in Mexico are potentially liable.  *Lacey I,* 862 F.2d at 45 (although defendants' contend that the foreign aircraft maintenance company may be liable for failing to properly maintain the aircraft and its component parts, they failed to provide evidence to the district court, in proper form, to support these allegations).  Defendants' failure to produce any evidence—and its reliance upon a conclusory allegation—is fatal to their argument that their inability to produce SAA or RFS in this Court weighs decidedly in favor of dismissal.

Even if the Defendants' focus on irrelevant sources of Mexican evidence was valid, their conclusory statement that "this factor alone mandates dismissal of this litigation" is legally unsupported. (*See* Defs.' Memo at 14).  Defendants' later assertion that "lack of compulsory process over witnesses and evidence, [is an] important factor[] that swing[s] the balance toward dismissal" is similarly unsupported by the case cited. *See id.* at 16 (citing *In re Air Crash Near Peixoto De Azeveda, Brazil, on Sept. 29, 2006*, 574 F. Supp. 2d 272 (E.D.N.Y. 2008)).  Instead, this factor is just one of those considered in the *forum non conveniens* analysis, and courts have consistently held that "each motion based on *forum non conveniens* must be taken on a case-by-base basis." *In re Air Crash Near Peixoto*, 574 F. Supp. 2d at 289.

Under the specific facts of this case, Defendants' claims that "[t]he inability to compel live testimony is especially prejudicial in a case such as the present one, involving complex technical issues" actually supports Plaintiffs' position that this factor favors the convenience of the United States. (*See* Defs.' Memo. at 15).  The Mexico based "operation and maintenance, navigation and air traffic control" issues that Defendants only vaguely recite and identify as "complex" are actually simple.  Whether the operations and maintenance personnel allowed the helicopter to fly longer with only one functioning SAS actuator than it was allowed can be answered simply by reviewing the aircraft's maintenance records and MEL then counting the days.  These maintenance records are already in Plaintiffs' possession, as discussed *infra*, and the AFAC Report also discusses the facts on this point at length. (*See, e.g.*, AFAC Report at p. 66-67 of 87).  Navigation and air traffic control issues are also irrelevant to the cause of the crash.  While these issues were investigated, nowhere in the AFAC report are these issues flagged as a probable cause or

20

contributing factor of this crash. (*See* AFAC Report at p. 8-11, 40, 64-65 & 83 of 87).[10]   And, Defendants have produced no evidence, or alleged, that air traffic controllers were at fault for the crash. *See Lacey I,* 862 F.2d at 45.

The essential live testimony on the actually complex technical issues in this case concern the design, manufacture, assembly, inspection and investigation issues surrounding the defective actuators in the United States.  It is Plaintiffs who would be particularly prejudiced by not being able to compel and present live testimony from the relevant witnesses from the NTSB who made some of the key determinations concerning the defect within this actuator and from Honeywell who participated in the destructive inspection and analysis of the actuators if this case were instead to proceed in Mexico.  Therefore, under Defendants' reasoning, the greater qualitative importance of the U.S. technical evidence should make this factor weigh in favor of Plaintiffs and the convenience of this case proceeding in the U.S.

Further, a key consideration for access and cost of obtaining witnesses is what portion of the witnesses in each jurisdiction are party witnesses. *See Behrens*, 487 F. Supp. 3d at 322-23. Unlike in *Behrens*, where most of the U.S. based witnesses were party witnesses that defendants could commit to make available abroad and most of the UK based witnesses were non-parties, *see id.*, most of the relevant U.S. based witnesses in this case are non-parties associated with the NTSB and Honeywell.  The Mexico based witnesses here are, at best, evenly split between party damages witnesses and the questionably relevant non-party maintenance and operations witnesses associated with SAA and RFS.  The fact that a higher proportion of witnesses located in the United

---

[10] To the extent that radar data, air traffic control audio or other navigational information can inform other inquiries like possible pilot error contributing to the crash, then it will need to be interpreted by experts.  The data and air traffic control recordings are easily obtained and submitted to such experts and no air traffic control or "navigation" witnesses from Mexico are relevant.

States are non-party witnesses supports the United States as the more convenient forum, or at a minimum leaves this factor "a wash."

Lastly, to the extent that evidence concerning the criminal proceedings against certain RFS individuals in Mexico is even relevant in this matter, the unique constitutional rights granted to victims of a crime in Mexico allow Plaintiffs to make this evidence available to Defendants in the United States.  The Mexican Constitution grants victims of alleged crimes, such as Plaintiffs in this instance, the right to access all the evidence in the case. *See* Decl. of Tere.  Plaintiffs have already been able to access these documents, including dozens of statements from the RFS individuals being prosecuted in Mexico and the maintenance records for the subject helicopter. (*See* Lesch Decl., Exhibit M, Certified Translations of RFS Witness Affidavits and Statements and Maintenance Records from the Subject Helicopter).  The ability of Plaintiffs to make any relevant evidence from these criminal investigations available in the U.S. further tilts this factor towards the convenience of the United States.

### iii.    The Possibility of View of Premises is Unnecessary in this Action and Does Not Favor Mexico

Defendants' admission that "viewing the 'premises' *per se* is not critical" in this case is an understatement.  (*See* Defs.' Memo. at 16).[11]  This crash was caused by a sudden departure from controlled flight that was unaffected by the rural, open field crash site the helicopter was fortuitously over when this occurred.  Mexican authorities arrived quickly at the crash site and long ago removed all wreckage from the site. (*See* AFAC Report at p. 10 of 87).  To the extent the accident site would be useful at all, photos of the scene, including those taken by the Mexican

---

[11] Defendants also addressed "the location of the accident" in the previous private interest factor concerning the availability of compulsory process and costs of obtaining witnesses and evidence. (*See* Defs.' Memo. at 14).  This discussion was misplaced and the location of the accident is irrelevant to that factor for the same reasons discussed in this section.

authorities and included in the AFAC Report, are easily made available in the United States. (*See, e.g.*, *id.*).  Therefore, access to the accident site will not provide any physical evidence that would be useful in adjudicating these claims, and when considered in light of the claims at issue, this factor is irrelevant and does not favor Mexico as a forum.

iv.   **All Other Practical Considerations Also Favor the Convenience of the United States**

Defendants (yet again) overstate the amount and significance of evidence located in Mexico when arguing that the "overwhelming majority of nonparty witnesses, such as personnel from SAA and RFS, persons involved in the investigation of the Subject Accident, and personal involved in the criminal investigation of RFS" will not speak English.  Many of the SAA records referred to by RFS, including the MEL, however, were kept in English and all the technical documents that RFS would have used to maintain the subject helicopter were published in English – not Spanish. (*See* Lesch Decl., Exhibit F, SAA MEL; Dalmasso Decl., Exhibit A, at p. 26 & 29 of 40).  Given that any English language documents would need to be translated into Spanish if this case were to proceed in Mexico, and even Mexico based aviation documents will likely be in English, proceeding in Mexico will not result in only "a relatively small percentage of liability documents" needing to be translated as Defendants claim. (*See* Defs.' Memo. at 17).  To the contrary, any language barriers and costs associated with this practical problem of proceeding in either jurisdiction favors the convenience of the United States.

The Defendants also fail to demonstrate that it would be any more convenient for them to pursue potential contribution claims against third parties in Mexico. *See id.* (citing *Dtex LLC v. BBVA Bancomer, S.A.*, 512 F. Supp. 2d 1012, 1026 (S.D. Tex. 2007)).  It is Defendants' burden to prove every element of their *forum non conveniens* argument, *see Behrens*, 487 F. Supp. 3d at 309-10 (citing *Lony*, 935 F.2d 604, 609 (3d. Cir. 1991)), yet they take for granted that such contribution

claims could be pursued in Mexico in this case.  Defendants' Mexican legal expert is silent on this issue. (*See generally* Socolow Aff., Exhibit G, Affidavit of Javier Alegre Rabiela, ECF No. 14-10 (hereinafter "Alegre Aff.")).  While a *forum non conveniens* motion does not call for a detailed development of the entire case, "defendants' failure to provide any record support for their contentions" can preclude the court from relying on such assertions to support dismissal. *See Lacey I*, 862 F.2d at 45 (3d Cir. 1988).  It would be highly inappropriate for any court to dismiss an action under the *forum non conveniens* doctrine based upon an unsupported allegation that Mexican law permits a contribution claim in these circumstances were this action to be adjudicated in Mexico.

It is perhaps notable that in this product liability action involving a failed component manufactured by a third-party in the United States, which appears to have a manufacturing, design and/or quality control defect (*see* Sommer Decl. at ¶ 8), Defendants have neglected to mention that the most probable contribution or indemnification claim would be directed at a U.S. based defendant—Honeywell.

In any event, Plaintiffs' Mexican legal expert states that any attempt to join or implead SAA or RFS in Mexico would be time barred. (*See* Cruz Decl. at ¶ 10).  Therefore, Defendants cannot meet their burden of demonstrating that the ability to implead potentially liable third parties or avoiding separate contribution actions makes Mexico a more convenient forum for these claims.

Even if Defendants could meet their burden on this contribution issue, which Plaintiffs submit they cannot, their only cited authority (which was notably from outside of the Third Circuit) suggests that this would only cause this factor to "weigh[] only slight toward dismissal, given the uncertainty that any impleader will be necessary." *See Dtex LLC*, 512 F. Supp. 2d at 1026.

In a similar vein, but even more fundamental, Defendants have failed to produce any evidence that Mexico would take jurisdiction over this action after the Mexican statute of

limitations has expired (as their expert has stated), despite their agreement not to raise that defense. Thus, this Court is left uninformed whether the dismissal of this action would forever and permanently terminate Plaintiffs' cause of action, and whether Mexico is actually an available forum in these circumstances.

### b. The Public Interest Factors Do Not Decidedly Favor Mexico As the More Convenient Forum

As it did with the private interest factors, the defendants fail to provide any factual support for their conclusory argument that the public interest factors favor dismissal. A court is not required to delve extensively into the facts underlying a claim to resolve an FNC motion. *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 181-182 (3d Cir. 1991) (*Lacey II*). A defendant cannot, however, satisfy its burden on any particular factor—private or public—based solely on legal argument detached from factual support. *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 44 (3d Cir. 1988) (*Lacey I*). Here, the defendants have failed either to provide the requisite factual basis or to demonstrate that the public interest factors decidedly favor dismissal.

### i. Court Congestion

In one sentence and without factual support, the defendants assert that "[l]itigation in this forum will almost certainly be inefficient, time-consuming, costly, and an unnecessary burden on this Court's already busy docket." (Defs.' Memo. at 17-18). This does not even come close to meeting the defendants' burden on this factor. *Hoffman v. Rosewood Hotels and Resorts, LLC,* 2013 WL 3974098, at *7 (D.V.I., July 31, 2013) (this factor is neutral when the defendant fails to offer evidence of congestion in either forum); *Roe v. Wyndham Worldwide, Inc.,* 2020 WL 707371, at *7 (D. Del., Feb.2, 2020)(same); *Zelinko v. Real Arenas de Cancun, S.A.,* 2005 WL 8175763, at *5 (W.D. Pa., Aug. 24, 2005)("The factor regarding relative court congestion has no effect on this litigation. All courts are busy"); *Lewis v. Lycoming,* 917 F.Supp.2d 366, 375 (E.D. Pa. 2013)

(court gave no weight to the court congestion factor). Therefore, the court congestion factor does not support dismissal.

**ii.    The Local Interest Factor Does Not Decidedly Favor Dismissal**

This case is not predominately localized in Mexico even though the crash occurred there and the plaintiffs and their decedents are Mexican citizens. Beginning with the domicile of the parties, AWPC is a wholly owned subsidiary of Leonardo and is a Pennsylvania corporation. Although Leonardo is an Italian corporation, it has not moved this Court for dismissal on the grounds that the Pennsylvania courts lack personal jurisdiction over it. Rather, Leonardo has submitted itself to the personal jurisdiction of the Pennsylvania courts by the very act of moving to dismiss under the FNC doctrine. *In re Asbestos Prods. Liability Litigation,* 921 F.3d 98, 105 (3d Cir. 2010)("where a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter"). Accordingly, Leonardo, through its own conduct, has admitted that it is not a stranger to Pennsylvania; but rather, has purposefully availed itself with the privilege of conducting business in Pennsylvania and its conduct in Pennsylvania has a sufficiently close connection to this Commonwealth and the crash. *Clarke v. Marriot International. Inc.,* 2013 WL 4758199, at *9 (D.V.I., Sept. 4, 2013) (ruling that the plaintiff's claim was not localized in the Virgin Islands where the plaintiff was from the Virgin Islands and the defendant was a United States corporation).

While the helicopter was assembled in Italy, the actuator that lies at the core of Plaintiffs' products liability claims was manufactured and designed in the United States. Thus, rather than being localized in any one location, this action has connections to Mexico, Italy, and the United States.

26

Of course, the localized factor goes beyond the mere domiciles of the parties: it calls for an assessment of the interests of the jurisdictions in adjudicating the plaintiff's cause of action. *Behrens,* 487 F. Supp. 3d at 332-332. On this factor, Mexico has a significant interest in this litigation as the location of the crash and home of the Plaintiffs and decedents.  Nevertheless, the Defendants have profoundly understated Pennsylvania's interest in this litigation and has completely ignored the interest of the United States.

When a wrongful death action has a significant connection to the United States and another country, the relevant interests for purposes of a FNC motion include those of the United States, not just the interests of the foreign country and an individual state. *Windt*, 529 F.3d at 191 (when the alternative forum is in a foreign country, "the relationship between the United States and a case generally should be considered" as well as "the relationship between the local federal district court...").   In the *forum non conveniens* context, "[n]umerous courts have acknowledged the national interest in deterring and punishing unlawful corporate behavior, regardless of the location of the injury or the citizenship of the victims." *Behrens v,* 487 F. Supp. 3d at 334; *see Lewis v. Lycoming*, 917 F. Supp. 2d at 375 ("The United States has an interest in ensuring that its corporations do not engage in tortious conduct which causes injury to anyone, regardless of where those individuals reside").

The fact that the plaintiffs' claims sound in products liability points this case away from Mexico.  *Lacey II,* 932 F.2d at 180-181.  Further, Plaintiffs have identified the roll actuator as the component that failed and caused the crash.  Therefore, this Court's evaluation of the public interest factors must consider "the locus of the alleged culpable conduct [concerning the roll actuator] … and the connection of that conduct to plaintiff's chosen forum."  *Lacey I*, 862 F.2d at 48; *see ICIPA, S.R.I. v. Learjet, Inc.,* 1997 WL 539714, at *3 (E.D. Pa., Aug. 7, 1997)(in a crash

occurring in Spain causing property damage to an aircraft owned by an Italian company, court ruled that "when the aircraft's design and manufacture are at issue, allegations which have far more relevance to the place of design and manufacture, i.e., the United States, than to Italy, the mere situs of registry and ownership"); *McCafferty v. Raytheon, Inc.,* 2004 WL 1858080, at *3 (E.D. Pa., Aug. 19, 2004)(dismissal under FNC not warranted where plaintiffs' claim that defendants manufactured and designed the allegedly defective aircraft engine in the United States and is not claiming pilot error because the operative facts occurred in the United States); *Lewis v. Lycoming,* 917 F. Supp. 2d at 375 (E.D. Pa. 2103)(in a helicopter crash occurring in England involving the death of English citizens, dismissal was not warranted where "[t]he United States likewise has an interest in this controversy.  All the defendants are located within the United States, and the aircraft and all its relevant parts were designed and manufactured here").[12]

Here, the roll actuator that Plaintiffs claim failed manufactured in the state of Michigan and most likely designed in Arizona, where the TSO holding office for this component is located. The interest of the United States, however, goes well-beyond where the actuator was manufactured or designed.  The subject model helicopter was federally authorized for use in the United States under a Type Certificate issued by the FAA.[13]  The defective actuator was likewise manufactured

---

[12] The Defendants mischaracterize the scope of this case as requiring the presence of the Mexican repair facility and the owner of the helicopter to fully adjudicate this wrongful death action.  If this case proceeds to trial in this Court, the alleged negligence of the Mexican owners and maintenance facility will not be an issue for the jury's consideration.  Under Pennsylvania law, the fault of non-parties is not considered by a jury unless that non-party settled with the plaintiff. 42 Pa. C.S.A., § 7102(a.2); *Beam v. Thiele Mfg., LLC,* 2018 WL 2049135, at *7 (Pa. Super. Ct., May 2, 2018) ("A jury is also not permitted to consider the conduct of non-parties in a comparative negligence cause of action. … [A]llowing the jury to consider 'the conduct of non-parties whom the plaintiff either cannot or does not seek to hold liable would introduce virtually unmanageable complexity to the determination of negligence'") (quoting *Tysen v. Johns–Manville Corp.,* 517 F. Supp. 1290, 1295 (E.D. Pa. 1981)).

[13] A type certificate is the overall design approval for an aircraft pursuant to 14 C.F.R. Part 21. *See* FAA, "Overall Design Approval Process," available at https://www.faa.gov/aircraft/air_cert/design_approvals/orig_des_approv_proc/; *see also* Sommer Decl. at ¶ 10.

and designed in Michigan under a Technical Standard Order issued by the FAA ensuring that the design of the actuator met federal airworthiness requirements.[14]  The NTSB investigated the crash, examined the certified actuator, and found the loose screw that the plaintiffs' claim caused the actuator to malfunction. These certification and investigation actions obviously reveal the substantial interest of the United States had prior to and after the crash in ensuring that the helicopter and the actuator met all type certificate airworthiness requirements.

The United States clearly has an interest in deterring foreign and domestic corporations that sell defective aircraft in the United States that could cause injury anywhere.  *See Behrens,* 487 F. Supp. 3d at 334 (the United States has an interest in addressing whether the conduct of United States corporations "contributed to the harm that resulted from the Grenfell Tower fire, regardless of the fact that the harm occurred in England").  Thus, the United States has a significant interest in addressing whether the defendants' conduct caused the crash, regardless of the fact that the harm occurred in Mexico.  *Id.*

As to AWPC, the United States—and particularly Pennsylvania—has an interest in regulating and deterring the harmful conduct of a Pennsylvania resident corporation that imports, exclusively distributes, and assembles Agusta helicopters in the United States.  As for Leonardo, the United States has a substantial interest in ensuring that an FAA type certified model aircraft, wherever manufactured, and aviation component parts certified by the FAA and manufactured in the United States meet FAA airworthiness requirements.  It makes no difference that the aircraft was assembled in Italy.  Contrary to the defendants' simplistic analysis of the competing interests of Mexico and the United States, it is altogether reasonable and fair that this action be resolved in a United States court.

---

[14]   For a further explanation of a Technical Standard Order, *see* https://www.faa.gov/aircraft/air_cert/design_approvals/tso/.

The fact that the actuator was manufactured in Michigan—and not in Pennsylvania—does not meaningfully diminish the interest of Pennsylvania when viewed apart from the interests of the United States.  Unlike personal jurisdiction that focuses upon a foreign manufacturer's production and/or distribution of the product in the forum state, "[a] defendant's contacts with the forum state 'are relevant to the forum non conveniens inquiry *only insofar as they relate to the ease and fairness of trying a case in particular jurisdiction.*'" *Miller v. Boston Scientific Corp.,* 380 F. Supp. 2d 443, 454-455 (D.N.J. 2005) (quoting *Manu Int'l., S.A. v. Avon Prods., Inc.,* 641 F.2d 62, 65 (2d Cir.1981)) (emphasis added).

*Miller* demonstrates this point.  There*,* Boston Scientific did not manufacture the allegedly defective colonic stent in New Jersey; but, rather, in Massachusetts.  It did, however, conduct clinical trials of its cardiac stents in New Jersey. *Id.* 454-455. Therefore, "[e]ven though Boston Scientific's connections to Delaware (its state of incorporation) and Massachusetts (the location of its principal place of business) are apparently stronger than its connections to New Jersey", the Court ruled that "Boston Scientific clearly has a presence in New Jersey and would not suffer significantly greater inconvenience litigating this case in New Jersey rather than in Delaware or Massachusetts."

The same is true here.  Although the actuator was made in Michigan and installed on the subject helicopter in Italy, AWPC clearly has a presence in Pennsylvania, the site of its principal place of business.  Although Leonardo's connection with Pennsylvania is not as direct as AWPC, Leonardo also has a significant connection to Pennsylvania.  Leonardo is the parent corporation of AWPC—its wholly owned subsidiary for the distribution and assembly of helicopters for the United States market.  Although Leonardo and AWPC are presumably separate corporations, they operate in tandem to deliver their products into the Unites States aviation market pursuant to FAA

type certificates for the helicopter and the subject actuator.  Therefore, just as AWPC, Leonard "would not suffer significantly greater inconvenience litigating this case" in Pennsylvania rather than Mexico.  *Miller, supra* at 455.

The Defendants argue that litigating this in Pennsylvania is highly unusual because it involves Mexican plaintiffs killed in a crash in Mexico.  This is an overwrought exaggeration.  In *McCafferty v. Raytheon, Inc.,* 2004 WL 1858080 (E.D. Pa., Aug. 19, 2004), a plane crash occurred in Indonesia that killed Indonesian citizens. The defendants asserted "that Indonesia is a more convenient forum because: all of the potential beneficiaries of the estates are Indonesian residents; the accident occurred in Indonesia; the plane wreckage is located in Indonesia; all accident investigators are located in Indonesia; and the aircraft was owned by an Indonesian aviation academy."  *Id.* at *2.  The plaintiff, a United States appointed personal representatives of the decedents' estates, brought a products liability action against Raytheon in Pennsylvania on behalf of the Indonesian beneficiaries.  In finding that the private and public interests factors did not warrant dismissal, the court reasoned that:

> Although Defendants point out that some of the connections to Indonesia include the site of the accident, the location of the beneficiaries of the estates, etc., the Court notes that the nature of Plaintiffs' claims primarily involve theories of liability based upon manufacturing and/or design defect of the aircraft or engine by Defendants. The bases of their claims are founded in American jurisprudence. These types of claims are the type of controversy regularly decided in federal courts of the United States.
>
> *Id.* at *3.[15]

---

[15] It follows that the last public interest factor—the unfairness of burdening citizens in an unrelated forum with jury duty—does not decidedly favor dismissal.  As argued above, because Pennsylvania is not unrelated to this litigation, it would not be unfair or a burden for citizens of Pennsylvania to serve on a jury in this case. *Lewis v. Lycoming,* 917 F. Supp. 2d at 376 (E.D. Pa. 2013).

iii.    **Pennsylvania Compensatory and Substantive Law Will Apply to This Case.**

This Court must also consider whether the forum's state law will govern the case so as to avoid "unnecessary problems in conflict of laws, or in the application of foreign law." *Windt*, 529 F.3d at 189.  In other words, a Pennsylvania court's need to apply foreign law favors dismissal. *Lacey II,* 932 F.2d at 187.  This factor does not favor dismissal.

This Court will not be obligated to apply Mexican law on damages or liability because it presents a false conflict, requiring the application of Pennsylvania law. *Lacey II*, 932 F.2d at 187. "A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law.  In such a situation, the court must apply the law of the state whose interests would be harmed if its law were not applied." *Id.  American Guarantee v. Weinberg,* 2021 WL 915425, at \*13 (E.D. Pa., March 9, 2021) ("Because Pennsylvania is the only jurisdiction whose governmental interests would be impaired by the application of the others' laws, there is a "false conflict," and we must apply the law of Pennsylvania, as the only interested jurisdiction").

Here, Pennsylvania recognizes strict products liability and Mexico does not. *See* Cruz Decl. at ¶ 5.  Further, Pennsylvania provides expansive wrongful death damages that, according to Defendants' own Mexican legal expert, substantially exceed the damages available under Mexican law.  Mexico's failure to adopt strict liability and its more restrictive damages law protect Mexican residents and corporations from expansive liability and damages.  The application of Pennsylvania law in this case, however, will not impair the interest of Mexico in protecting its citizens from expansive products liability, because Defendants are not Mexican.   Instead, application of Pennsylvania law will only further this Commonwealth's interest in deterring the manufacture and sale of defective products by its citizens, like AWPC.

In *Lacey II,* the Third Circuit Court of Appeals was presented with a similar situation in a FNC context.  *Lacey* involved a crash of an aircraft in Canada that resulted in serious injuries to four Canadian citizens and one Australian citizen.  The aircraft was designed and manufactured in Kansas.  What the *Lacey II* court held applies with equal force to this case.

> The conflict here appears to result primarily from the fact that Pennsylvania has adopted strict liability, whereas British Columbia has not. … [W]e believe that this is a false conflict. Applying Pennsylvania law of strict liability would further Pennsylvania's interest in deterring the manufacture of defective products and in shifting the costs of injuries onto producers, but would not impair British Columbia's interest in fostering industry within its borders. Conversely, applying British Columbia's negligence standard would not serve British Columbia's interest, but would harm Pennsylvania's interest. In view of this analysis, it appears that this case … presents a false conflict, and that the district court probably should apply the law of Pennsylvania—the jurisdiction whose interests would be damaged if its law were not applied.

> *Id.* at 187-188.

As for compensatory damages, the same false conflict exists.  *In re Air Crash Disaster at Mannheim, Germany: on Sept. 11, 1982*, 575 F. Supp. 521, 526 (E.D. Pa. 1983), *rev'd on other grounds*, 769 F.2d 115 (3d Cir. 1985), is instructive.  There, the court applied Pennsylvania wrongful death damages in a case that arose from a Boeing helicopter crash in Germany which killed 46 individuals, chiefly from the U.S. (specifically, U.S. Servicemen), Great Britain, and France.  Boeing conceded that Pennsylvania law could apply to the United States Servicemen who were killed in the crash, but it objected to the application of Pennsylvania law to the foreign decedents and urged the court to apply the less generous law of West Germany.  *Id*. at 522.

In rejecting the application of foreign damages law to the foreign decedents, the court found a false conflict.  The court observed that "Pennsylvania obviously has an interest in applying its liability law to a resident manufacturer acting within its home borders." *Id*. at 525. On the other

33

hand, Germany's restrictions probably sought to "protect[] resident defendants from excessive liability"—a policy which was not "furthered in this situation" because Boeing was neither headquartered nor based in Germany. *Id.* at 526. *See Broome v. Antlers' Hunting Club*, 595 F.2d 921, 925 (3d Cir. 1979)(where a plaintiff is from a state giving lower protection under its damages law than Pennsylvania the court will apply the higher Pennsylvania protection because "the interests of deterrence and retribution, as set out in Pennsylvania strict liability cases, would thereby be furthered without impairment to another state's interest"); *Acker v. Ray Angelini, Inc.*, 259 F. Supp. 3d 305 (E.D. Pa. 2016)(same).

Therefore, the defendants are simply wrong when arguing that this Court's need to apply Mexican law weighs strongly in favor of dismissal. In fact, it is likely that this Court would apply Pennsylvania law on liability and damages.

What is particularly revealing about the defendants' position on the localization and choice of law factors is that they not only ignore the Third Circuit cases relied on in this brief, they fail to cite a single Third Circuit appellate or trial court decision to support their arguments. Instead, as to these two key factors, they cite exclusively decisions from other Circuits. This is a strong indication that the law of this Circuit does not favor dismissal under the public interest factors.

**C. <u>Summary</u>**

Defendants' *forum non conveniens* arguments fail to meet their burden on this motion to dismiss. Plaintiffs' choice of a convenient and interested forum is entitled to at least moderate deference, similar to that of a domestic plaintiff. Defendants must therefore demonstrate "a strong preponderance in favor of dismissal," which they cannot do. Defendants' selective focus on extraneous sources of proof and witnesses located in Mexico concerning maintenance, navigation, air traffic control, etc., disregards the truly relevant evidence located in the United States

concerning the design and manufacture of the defective actuators and the Mexican authorities' reliance on U.S. investigators, labs and scientific expertise to determine the cause of the crash and involvement of U.S. made components in a U.S. Type Certificated model aircraft. The salient evidence is not in the possession of Defendants, but American third-parties like Honeywell and the NTSB. Therefore, when one considers the qualitatively most relevant evidence of the actuators, Defendants' claims that the private interest factors favor Mexico crumbles. Defendants have similarly not met their burden on the public interest factors. The interest of Pennsylvania, and the United States, in adjudicating these claims is significant, Mexican law will not apply if this action proceeds here, and no basis is provided for Defendants claims that court congestion favors Mexico. Therefore, Defendants' have not shown by a strong preponderance that the private and public interest factors decidedly favor Mexico, and their motion on *forum non conveniens* is properly denied.

## IV. THE NON-PARTIES IDENTIFIED BY DEFENDANTS ARE NEITHER NECESSARY, NOR INDISPENSABLE

### A. Legal Standard

The court must accept as true all allegations of the complaint and draw all inferences in the non-moving party's favor on a motion to dismiss for failure to join a party pursuant to Rule 12(b)(7). *See Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, 310 F.R.D. 166, 170 (E.D. Pa. 2015) (*citing Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011)). The party moving for dismissal bears the burden of showing why an absent party should be joined under Rule 19. *See id*.

To determine if an action must be dismissed for failure to join necessary and indispensable parties under Rules 12(b)(7) and 19, the court must perform a two-step analysis. *See Incubadora*, 310 F.R.D. at 170 (*citing Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir.

2007)).  The first step is for the court to determine whether the absent parties are even "necessary"

pursuant to Rule 19(a).  Rule 19(a)(1) provides:

> **(1)** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>>> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If the parties are necessary under either (a)(1)(A) or (a)(1)(B), but joinder is not feasible,

then the court must determine whether the party is "indispensable" pursuant to Rule 19(b) such

that the case should be dismissed.  *See Incubadora*, 310 F.R.D. at 170.  If absent parties are not

necessary, then no section (b) "indispensable" analysis is required.  *See id.* (citing *Gen.*

*Refractories*, 500 F.3d at 313).

Rule 19(b) provides four factors for the court to consider in deciding "whether, in equity

and good conscience, the action should proceed among the existing parties or should be

dismissed."  The factors are:

> **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> **(2)** the extent to which any prejudice could be lessened or avoided by:
>> **(A)** protective provisions in the judgment;
>> **(B)** shaping the relief; or
>> **(C)** other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

The four factors listed are not exhaustive, but "are 'the most important considerations' in determining whether a party is indispensable." *See Gen. Refractories Co.*, 500 F.3d at 319 (*citing Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 640 (3d Cir. 1998)).  The Supreme Court "has interpreted the Rule 19(b) interests as including: (1) plaintiff's interest in having a forum; (2) defendant's interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for liability shared with another; (3) the interest of the outsider; and (4) the interests of the court and the public in efficiency." *Barrett v. Ambient Pressure Diving, Ltd.*, 235 F.R.D. 263, 272 (E.D. Pa. 2006) (citing *Provident Tradesman Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109-110 (1968)).

### B.  <u>Argument</u>

Defendants' failure to join argument under Rules 12(b)(7) and 19 is based almost entirely on *Whyham v. Piper Aircraft Corp.* 96 F.R.D. 557 (M.D. Pa. 1982). (*See* Defs.' Memo. at 25-30). What Defendants apparently fail to appreciate is that the court's analysis in *Whyham* has been rendered obsolete by subsequent Third Circuit decisions refining the Rule 19 standard and what is required for a party to be "necessary." *See, e.g.*, *Incubadora*, 310 F.R.D. at 171.  As more fully explained below, neither RFS nor SAA are necessary parties because complete relief can be accorded among the present parties and the potential need for a separate contribution claim is insufficient, as a matter of law, to make a party "necessary." *See id.*  Additionally, Rule 19 protects against parties being subject to inconsistent *obligations*, such that they cannot comply with two different judgments simultaneously, but not inconsistent adjudications. *See Micheel v. Haralson*, 586 F. Supp. 169, 171 (E.D. Pa. 1983).  There is no risk here of Defendants being subject to

inconsistent obligations from different damages judgments by proceeding without SAA and RFS – they can abide by whatever judgment is made here by paying whatever damages they obliged to pay and simultaneously recoup whatever they can recover from others elsewhere.   Therefore, neither of these parties is "necessary" and Defendants' motion to dismiss pursuant to Rules 12(b)(7) and 19 must be denied.

**1.   Neither the Operator (SAA), Nor the Maintenance Company (RFS) Are Necessary Parties for This Action**

Defendants fail to explicitly argue which part or parts of Rule 19(a) make SAA and RFS necessary parties despite bearing the burden of demonstrating every element of this 12(b)(7) motion. *See* (Defs.' Memo. at 26-27); *Incubadora*, 310 F.R.D. at 170.  Given their argument and heavy reliance on *Whyham*, however, it appears that Defendants claim SAA and RFS satisfy the criteria of section 19(a)(1)(B). (*See* Defs.' Memo. at 25 (citing *Whyham*, 96 F.R.D. at 561 (holding that Rule 19(a)(2)(i) and (ii), since recodified as 19(a)(1)(B) and (B)(ii), respectively, rendered non-parties necessary)).  To meet that portion of Rule 19, RFS and SAA must actively claim an interest in this matter *and* it must be shown that proceeding without them may either impair RFS and SAA's ability to protect their claimed interests *or* leave Defendants subject to a substantial risk of incurring inconsistent obligations. *See* F.R.C.P. 19(a)(1)(B).  RFS and SAA, however, do not satisfy any element of Rule 19(a)(1)(B).

First, neither SAA nor RFS "claims an interest relating to the subject of th[is] action" such that their interests need protecting. *Id.* at (B)(i).  Neither RFS, nor SAA has appeared or in any way claimed an interest in this matter, and the Third Circuit has held that "an unsubstantiated or speculative risk will not satisfy Rule 19(a)(1)(B) criteria, and the possibility that an absent party's rights will be harmed under subsection (a)(1)(B)(i) must be real." *See Incubadora*, 310 F.R.D. at 172 (*citing Huber v. Taylor*, 532 F.3d 237, 250-51 (3d Cir. 2008)).  In *Incubadora* for instance,

defendants' positing that the Mexican entities "*may* claim an interest" or that the findings in that litigation "*might* weaken the [Mexican] entities' bargaining position and/or impair their ability to protect their interests" in real or imagined proceedings elsewhere, without any support in the record for such musings, was insufficient to satisfy subsection (B)(i). *Id.* Here, the same is true of Defendants' arguments concerning RFS and SAA. No evidence or support whatsoever has been presented for the idea that either of these Mexican non-parties claims an interest, and no explanation is provided for how proceeding in their absence could harm any such claimed interest. Defendants also do not assert there are any proceedings involving SAA or RFS and Plaintiffs or Defendants elsewhere.[16] Accordingly, the Defendants do not and cannot show that RFS or SAA are "necessary" pursuant to subsection (B)(i).

Second, there is no risk whatsoever of the already present Defendants being subject to inconsistent obligations by proceeding in the absence of SAA and RFS. *See* Rule 19(a)(1)(B)(ii). "Absent pending litigation between Defendants and the absent parties, there is no real risk of multiple of inconsistent obligations [under (a)(1)(B)(ii)]." *Incubadora*, 310 F.R.D. 172 (*citing Diaz Contracting, Inc. v. Lisbon Contractors, Inc.*, No. 88–9203, 1991 WL 53663, at *6 (E.D. Pa. Apr. 2, 1991)). Defendants do not raise any such pending litigation in their motion. Further, even if there was such litigation (which there is not), the fact that another court may assign liability differently does not subject Defendants to multiple or inconsistent *obligations* within the meaning of subsection (B)(ii). *See id.* (*citing Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d

---

[16] Even assuming, *arguendo*, that Defendants are asserting findings in this action could somehow harm the interests of these Mexican non-parties in relation to the criminal action pending in Mexico, that is also irrelevant to the necessary parties analysis. SAA, the operator of the helicopter, is not even involved in the Mexican criminal investigation, so it has no interest that could be harmed in that respect. There are apparently some kind of criminal proceedings against RFS individuals in Mexico, but Defendants have certainly not met their burden of demonstrating how any results from this case could negatively impact RFS in that respect, and their Mexican legal opinion is silent on this issue. *See generally* Alegre Aff.

399, 411(3d Cir. 1993) (holding that that risk of "double liability" does not include the situation

where, if a defendant loses, he may or is likely to, seek recovery or indemnification from an absent

party); and *Micheel*, 586 F. Supp. at 171 ("Rule 19(a)[(1)(B)(ii)] was intended to protect against

inconsistent *obligations*, not inconsistent *adjudications*")).   Therefore, SAA and RFS are not

necessary parties pursuant to subsection (B)(ii) either.

Although it does not appear that Defendants even attempt to argue necessity under

subsection (A) of Rule 19(a)(1), there is similarly no basis for claiming RFS or SAA need to be

joined under that provision.  Subsection (A) finds a party necessary to be joined if the court cannot

accord complete relief among the existing parties in that party's absence.  *See* Fed. R. Civ. P.

19(a)(1)(A).  While the *Whyham* case may initially seem to indicate that foreign third parties can

be necessary under this provision because they, not the defendant, might be liable for the alleged

damages, the *Incubadora* court succinctly stated the correct subsection (A) standard:

> Because the goal of Rule 19 is to preclude multiple lawsuits on the
> same cause of action, some courts, including *Whyham*, have
> interpreted the "complete relief" clause broadly, commanding
> joinder whenever nonjoinder will fail to resolve all related claims of
> all potentially interested persons. *See Whyham*, 96 F.R.D. at 560.
> Since *Whyham*, however, the Third Circuit has conclusively held
> that "[c]ompleteness is determined on the basis of those persons who
> are already parties, and not as between a party and the absent person
> whose joinder is sought." *Angst v. Royal Maccabees Life Ins. Co.*,
> 77 F.3d 701, 705 (3d Cir.1996); *see also Janney*, 11 F.3d at 405 ("A
> Rule 19(a)(1) inquiry is limited to whether the district court can
> grant complete relief to the persons already parties to the action. The
> effect a decision may have on the absent party is not material.").

*Incubadora*, 310 F.R.D. at 171.

Complete relief can clearly be granted as between Plaintiffs and Defendants on the products

liability manufacturing defect and failure to warn claims in this action, and the effect that this may

have on absent parties like SAA or RFS is immaterial.  Whether Plaintiffs elect not to bring an

action against SAA or RFS and may be unable to obtain relief from these entities if this litigation

holds them, not Defendants, liable is irrelevant and does not make them necessary parties. *See id.*

(citing *Temple Univ. Hosp. Inc. v. Grp. Health, Inc.*, 413 F. Supp. 2d 420, 429 (E.D. Pa. 2005)).

They are also not "necessary" because Defendants may theoretically seek contribution from RFS

or SAA in a later lawsuit. *See id.* (citing *Freedom Int'l Trucks, Inc. v. Eagle Enters., Inc.*, No. 97–

4237, 1998 WL 695397, at *3 (E.D. Pa. Oct. 5, 1998)).

The basic concept that Defendants overlook in their mistaken "necessary" parties argument

is that Rule 19 does not change "the well settled authorities holding that a tortfeasor with the usual

'joint-and-several' liability is merely a permissive party to an action against another with like

liability." *Huber v. Taylor*, 532 F.3d 237, 249-50 (3d Cir. 2008) (quoting Advisory Comm. Note

to Rule 19(a)).  "Courts . . . have long recognized that 'it is not necessary for all joint tortfeasors

to be named as defendants in a single lawsuit.'" *Id.* (quoting *Temple v. Synthes Corp., Ltd.*, 498

U.S. 5, 7 (1990) (per curiam)); *see also PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir.

2001) (noting that "a person's status as a joint tortfeasor does not make that person a necessary

party, much less an indispensable party").  Even if SAA or RFS share some of the liability for the

crash at issue in this litigation (which they do not), then that still does not make them necessary

parties to be joined under Rule 19(a).

The facts of the *Incubadora* case are instructive and on all fours with the facts as alleged

in this case.  In that case, Mexican chicken farmer plaintiffs were suing a U.S. manufacturer of

allegedly defective poultry vaccines. 310 F.R.D. at 169-170.  The *Incubadora* defendants claimed

that Mexican distributors of the vaccines caused the defect by damaging or otherwise mishandling

the vials, and argued that, because these distributors might be liable instead of defendants, they

were necessary parties under Rule 19. *See id.* at 170.  For all the reasons stated above, however,

41

the court denied the motion, holding that the Mexican distributors were not necessary, let alone indispensable. *Id.* at 172.  The same result should follow here.  The Defendants' complaints about the potential need for a later contribution action against RFS or SAA if they are not joined only demonstrates that they are just joint tortfeasors, unnecessary to be joined.

### 2.  Even if SAA or RFS Were Necessary (Which They Are Not), They Are Not Indispensable

Clearly, neither RFS nor SAA are necessary parties pursuant to Rule 19, and therefore, the Court does not even need to engage in an analysis of whether these parties are indispensable under Rule 19(b) so as to require dismissal. *See Gen. Refractories*, 500 F.3d at 313.  If the Court does still engage in a Rule 19(b) analysis, however, Plaintiffs respectfully submit that Defendants also fail to demonstrate that RFS and SAA are "indispensable."

The analysis of the first two factors in Rule 19(b)(1)-(2) ("to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties" and to what extent any such prejudice "can be lessened or avoided" by modification of the judgment) "overlaps considerably with the Rule 19(a) analysis." *Gen. Refractories*, 500 F.3d at 320 (citing *Gardiner v. Virgin Islands Water & Power Auth.*, 145 F.3d 635, 641 n. 4 (3d Cir. 1998)).  Therefore, for the same reasons above, there is no substantial prejudice to either absent party or Defendants from a judgment rendered in RFS and SAA's absence.  These factors weigh against dismissal for "indispensability."

The third Rule 19(b) factor ("whether a judgment rendered in the person's absence will be adequate") also weighs against either RFS or SAA being found indispensable because Plaintiffs can receive an adequate remedy even without these parties.  "Specifically, this element allows the court to consider whether the relief it grants will prove an adequate remedy *for the plaintiff*." *Gen.*

*Refractories Co.*, 500 F.3d at 320-21 (citing *Provident*, 390 U.S. at 112).  As discussed *supra*, this action can certainly grant an adequate remedy for Plaintiffs' products liability claims.  While this factor also "refer[s] to [the] public stake in setting disputes by wholes," *Provident*, 390 U.S. at 111, the Third Circuit has made clear "we surely will not hold that this stake is so great that it trumps the rules not otherwise requiring a plaintiff to join all potentially liable parties in joint and several liability situations." *Gen. Refractories Co.*, 500 F.3d at 321.  Whether or not Defendants' argument that trying this case together with RFS and SAA in Mexico would better serve judicial economy is correct (*see* Defs.' Memo. at 29), that is still not enough to make the third factor favor dismissal for indispensability under Rule 19(b).

Defendants also fail to demonstrate that Plaintiffs would have an adequate remedy if this action were dismissed for nonjoinder under the fourth Rule 19(b) factor.  It is Defendants who bear the burden of showing why an absent party should be joined under Rule 19. *See Incubadora*, 310 F.R.D. at 170.  Defendants argue that merely having Mexico as an adequate alternative forum is sufficient for this factor to support dismissal, but subsection (b)(4) requires more.  This factor asks "whether there is an assurance that the plaintiff, if dismissed, could sue effectively in another forum *where better joinder would be possible*." *See Wilson v. The Canada Life Assur. Co.*, 2009 WL 532830, at *11 (M.D. Pa. March 3, 2009) (quoting Fed. R. Civ. P. 19(b), 1966 advisory comm. notes) (emphasis added).  As discussed *supra* at page 24, Defendants have not established that either RFS or SAA could be impleaded into this case if it were re-filed in Mexico.  As Defendants' own Mexican legal expert notes, the statute of limitation for these claims in Mexico has passed, and he is silent on the availability of joining RFS or SAA, or seeking contribution from them. (*See generally* Alegre Aff.)  Plaintiffs' Mexican legal expert states that attempts to join RFS and SAA to this action in Mexico would be untimely. (*See* Cruz Decl. at ¶ 10).  Therefore, Defendants have

not provided any assurance that an adequate remedy and joinder is possible in Mexico, and this factor also should not favor dismissal or indispensability.

Since only two of the four Rule 19(b) factors even moderately favor finding SAA and RFS indispensable, and Defendants have not met their burden of providing adequate assurance of joinder in Mexico, Defendants have not met their burden of demonstrating that these parties are indispensable under Rule 19(b) and this is not one of those rare cases requiring dismissal for non-joinder.

### C. **Summary**

Defendants have not and cannot demonstrate that SAA and RFS are necessary, let alone indispensable parties under Rule 19. Despite Defendants' repeated complaints about the theoretical need for a separate contribution action at a later date, this only demonstrates that SAA and RFS are the "usual 'joint-and-several tortfeasors,'" *not* necessary parties. *See Huber v. Taylor*, 532 F.3d at 249-50. Parties who are not necessary do not even merit an indispensability analysis, but for similar reasons, Defendants have not demonstrated SAA or RFS are indispensable either. Therefore, Defendants' motion to dismiss pursuant to Rule 12(b)(7) for failure to join should be denied.

## V.   <u>CONCLUSION</u>

For all the above discussed reasons, Plaintiffs respectfully submit that Defendants motion fails to satisfy the standards for dismissal on the basis of either *forum non conveniens* or Rules 12(b)(7) and 19.  Therefore, Defendants motion should be denied in its entirety.

Dated: May 7, 2021

                                     Respectfully submitted,

                                     **KREINDLER & KREINDLER LLP**

By:    /s/ Anthony Tarricone_____

                                     Anthony Tarricone (*pro hac vice*)
855 Boylston Street, Suite 1101
Boston, MA 02116
atarricone@kreindler.com

Vincent C. Lesch (*pro hac vice*)
485 Lexington Avenue
New York, NY 10017
vlesch@kreindler.com

**KATZMAN, LAMPERT & STOLL**
Bradley J. Stoll
121 North Wayne Ave.
Suite 205
Wayne, PA 19087
bstoll@klm-law.com

**GONZALEZ & ASSOCIATES LAW FIRM, P.C.**
Jaime A. Gonzalez, Jr. (applicant *pro hac vice*)
Catherine Smith (applicant *pro hac vice*)
Summit Park North
817 E. Esperanza, Ave.
McAllen, TX 78501
jaime@jaglawfirm.com
cat@jaglawfirm.com

***Attorneys for Plaintiffs***

45

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that I have filed the foregoing via the Court's CM/ECF system on May 7, 2021, which automatically generates notification of the filing to all counsel of record.


             <u>/s/ Vincent C. Lesch     </u>
             Vincent C. Lesch