IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARTHA JULIA HIDALGO                              :
VILLAFANE, Individually, As Executor and          : Civil Action No.: 2:20-cv-06393-RBS
as Personal Representative of the Estate of        :
Martha Erika Alonso Hidalgo,                       :
                                                   :
MA. GUADALUPE NANCY CANALES                        :
ELIZALDE, Individually, as Executor and            :
as Personal Representative of the Estate of Marco  :
Antonio Tavera Romero,                             :
                                                   :
LOURDES FRANCISCA MENDOZA                          :
HERNANDEZ, Individually, as Executor and           :
as Personal Representative of the Estate of        :
Hector Baltazar Mendoza,                           :
        v.                                         :
AGUSTAWESTLAND PHILADELPHIA                         :
CORPORATION                                         :
        and                                        :
LEONARDO S.p.A.                                    :

---

**DEFENDANTS' REPLY REGARDING MOTION TO SUBMIT SUPPLEMENTAL
AUTHORITY IN FURTHER SUPPORT OF MOTION TO DISMISS
PURSUANT TO *FORUM NON CONVENIENS***

Defendants, AgustaWestland Philadelphia Corporation ("AWPC") and Leonardo S.p.A.

("Leonardo") (collectively, "Defendants"), file the present reply regarding their motion to submit

supplemental authority in further support of their previously filed Motion to Dismiss pursuant to

the doctrine of *forum non conveniens* (the "FNC Motion")   *See* Dkt. Nos. 14, 22, 23 and 34.

## ARGUMENT

Plaintiffs' opposition to Defendants' motion to submit supplemental authority completely

misses the mark, for several reasons.

First, Defendants have not suggested in their FNC Motion that the North Carolina court's

order is binding on this Court, or that it has *res judicata* or claim preclusion effect.  To the contrary,

Defendants simply asked this Court to consider the North Carolina court's order (which was not even issued until July 29, 2022) as additional authority in support of their FNC Motion.

Second, regardless of how Plaintiffs attempt to characterize them, the arguments raised in Honeywell's motion, like the arguments raised by Defendants here, are focused on whether Plaintiffs' claims were more conveniently litigated, and whether there was an available forum, _**in Mexico**_.   For the Court's reference, a true and correct copy of Honeywell's as-filed FNC motion (without exhibits) is annexed hereto as Exhibit A.  A cursory reading of Honeywell's FNC motion reveals that it relied upon much of the same evidence as Defendants have done here.

Third, the fact that litigation arising out of the same accident is also pending in Georgia, against other parties which have not filed a _forum non conveniens_ motion, is irrelevant and should have no bearing on the FNC Motion pending before this Court.  The defendants in the Georgia action presumably were named because of alleged overhaul and repair activities that they engaged in, _**in Georgia**_.  _See_ Dkt. 23-2.  In other words, in the Georgia action, there was actual suit-related conduct in Georgia.

By contrast, Defendants herein have filed their FNC Motion because the litigation pending before this Court has absolutely no connection whatsoever to Pennsylvania.  As noted in prior filings, the Subject Helicopter was designed and manufactured, _**in Italy**_, by Leonardo, and sold by Leonardo to its initial purchaser, _**in Mexico**_.  AWPC  was never in the chain of distribution of, and never maintained or serviced, the Subject Helicopter.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully submit that their Motion to Submit Supplemental Authority in Further Support of Motion to Dismiss Pursuant to _Forum Non Conveniens_ be granted.

Dated: August 19, 2022

Respectfully submitted,

**FITZPATRICK & HUNT, PAGANO, AUBERT LLP**
By: */s/ John M. Socolow*
John M. Socolow, Esquire (admitted *pro hac vice*)
1 Landmark Square – 21st Floor
Stamford, CT 06901
(203) 580-4445 (Phone)
(203) 580-4350 (Fax)
john.socolow@fitzhunt.com

-and-

**SALMON, RICCHEZZA, SINGER & TURCHI LLP**
John E. Salmon, Esquire
Zachary J. Ballard, Esquire
1601 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 606-6600 (Phone)
(215) 606-6601 (Fax)
jsalmon@srstlaw.com
zballard@srstlaw.com
*Attorneys for Defendants*
*AgustaWestland Philadelphia Corporation and*
*Leonardo S.p.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have filed the foregoing via the Court's CM/ECF system on August

19, 2022, which automatically generates notification of the filing to all counsel of record.


*/s/ John M. Socolow*
John M. Socolow

# EXHIBIT A

STATE OF NORTH CAROLINA FILED IN THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION

COUNTY OF MECKLENBURG 20-CVS-16946

2022 MAR -7 · P 4: 34

MARTHA JULIA HIDALGO, as Executor of
the Estate of Martha Erika Alonso Hidalgo
(Deceased), et al.

Plaintiffs,

vs.

HONEYWELL INTERNATIONAL INC.,

Defendant.

**DEFENDANT HONEYWELL
INTERNATIONAL INC.'S
MOTION TO STAY PURSUANT
TO N.C.S.G. § 1-75.12(a)**

Defendant Honeywell International Inc. ("Honeywell"), through its attorneys, and pursuant to North Carolina General Statutes § 1-75.12(a), respectfully moves to stay these proceedings on the grounds of *forum non conveniens*.

## INTRODUCTION

This case arises out of a December 24, 2018 accident in which a helicopter registered, owned, operated, and maintained entirely in Mexico crashed near Puebla City, Mexico while transporting exclusively Mexican citizens, including two notable Mexican political figures. The Mexican government's investigation into the accident centered around the Mexican owner/operator and Mexican maintenance company responsible for the airworthiness of the helicopter, and criminal prosecutions of those involved are ongoing in Mexico. All relevant events, witnesses, and evidence are located in Mexico – over which this Court has no jurisdiction – and Mexico (not North Carolina) has the far superior interest in the outcome of this case and in the proper application of its own law. As such, this case should be stayed on the grounds of *forum non conveniens* (or "FNC") in favor of properly and fairly litigating this matter in Mexico where it belongs, and Honeywell's motion should therefore be granted.

1

## FACTUAL BACKGROUND

### I.   THE ACCIDENT AND INVESTIGATION LED BY MEXICAN AUTHORITIES.

On December 24, 2018, an Agusta A109S helicopter, serial number 22174, Mexican Registration No. XA-BON (the "Accident Helicopter"), crashed after takeoff from Puebla, Mexico with the intended destination of Mexico City, Mexico.  (Ex. A, First Am. Compl., ¶ 22; Ex. B, Translated AFAC Final Report at p. 5 of 87).   The helicopter was piloted by Roberto Coppe Obregón and Plaintiff Ma. Guadalupe Nancy Canales Elizalde's decedent Marco Antonio Tavera Romero.  (Ex. B, at p. 5; Ex. C, Garcia Aff., ¶¶ 21-22).  Both pilots were Mexican citizens and held Commercial Helicopter Pilot licenses issued by the Mexican Agencia Federal de Aviación de Civil ("AFAC"), which is the Mexican government agency that regulates and oversees all aviation activities in Mexico.  (Ex. B, at pp. 5, 59; Ex. C, ¶ 23).  The pilots were employed by Servicios Aéreos de Altiplano, S.A. de C.V. ("SAA"), a Mexican company with its base of operations at the International Airport of Puebla, which also owned and operated the Accident Helicopter at the time of the accident.  (Ex. B, at p. 17; Ex. C, ¶¶ 22-23).

There were also three passengers aboard the Accident Helicopter – newly elected Governor of Puebla Martha Erika Alonso Hidalgo; her husband, Senator and former Puebla Governor Rafael Moreno Valle Rosas; and Senator Moreno Valle's assistant, Hector Baltazar Mendoza – all of whom were Mexican citizens and residents.  (Ex. A, ¶¶ 1-12; Ex. C, ¶¶ 21-22).  News of the crash garnered nationwide interest in Mexico and prompted significant political attention given the recent Puebla election and party affiliations of those aboard.  (Ex. C, ¶¶ 22-24).  The investigation into the crash was led by the Mexican AFAC in accordance with Annex 13 to the International Civil Aviation Convention, which issued its Final Report in March 2020.  (Ex. B, at pp. 3, 5).

The Accident Helicopter was an Agusta A109S, which was designed and manufactured by Leonardo S.p.A. ("Leonardo") in Italy and sold to its first purchaser in Mexico – Eolo Plus S.A. de C.V. ("Eolo"), a Mexican company – in April 2010. (Ex. B, at p. 17; Ex. D, Dalmasso Decl., ¶¶ 4-5). Eolo registered the aircraft with the Mexican AFAC for operations in Mexico. (Ex. B, at p. 17). The helicopter was subsequently sold to SAA. (Ex. B, at p. 17). In short, and throughout its entire operational history, the Accident Helicopter was operated and maintained exclusively in Mexico. (Ex. B, at pp. 17-18; Ex. D, ¶¶ 5-8; Ex. E, Helkey Decl., ¶¶ 7-9).

The Accident Helicopter was equipped with two roll linear actuators manufactured by Honeywell. (Ex. A, ¶ 18). These linear actuators are components within the larger Automatic Flight Control System ("AFCS") that performs basic stabilization and autopilot functions in the helicopter. (Ex. B, at p. 30). Only one of those actuators is the subject of this litigation (the "Subject Actuator" – part number 4012373-909, serial number 0908L409). (Ex. A, ¶ 16). The other actuator is the subject of separate litigation filed by Plaintiffs in Georgia against a different party. (Ex. F, Precision Compl., ¶ 11). The Subject Actuator was designed in Arizona and manufactured in Michigan in 2009. (Ex. G, Eller Aff., ¶¶ 3-4). In 2010, Leonardo S.p.A. installed the Subject Actuator on the Accident Helicopter in Italy. (Ex. D, ¶ 4; Ex. H, Accident Helicopter Original Equipment List). The Accident Helicopter was then delivered to Eolo in Mexico and has remained there ever since. (Ex. D, ¶5; Ex. A, ¶ 17). After installation, the Subject Actuator was never returned to Honeywell or to a Honeywell-authorized repair station for maintenance, repair, or overhaul. (Ex. A, ¶ 28).

Central to the AFAC's investigation into the crash was the operational and maintenance history of the Accident Helicopter in Mexico. (Ex. B, at p. 83). According to that investigation, another Mexican company, Rotor Flight Services S.A. de R.L. de C.V. ("RFS"), exclusively

maintained the Accident Helicopter. (Ex. B, at pp. 7, 18). Importantly, the AFAC investigation revealed that eleven days before the accident, on December 13, 2018, SAA reported an issue with the actuator that is subject of the Georgia litigation. (Ex. B, at pp. 21-22; Ex. F, ¶ 20). For reasons unknown, SAA and RFS decided not to fix that actuator before the subject flight, which made the Accident Helicopter unairworthy at the time of the crash – i.e., illegal to fly. (Ex. B, at p. 81).

Along those same lines, the AFAC further noted numerous issues with the maintenance records kept by RFS personnel, including missing inspection results in work orders, missing references to test documentation and other incomplete (but required) sections of work orders. (Ex. B, at p. 66). The maintenance and record-keeping of the Accident Helicopter was so suspect that following the crash, Mexican authorities arrested several RFS employees on charges of homicide, property damage, and providing false testimony in connection with the accident. (Ex. C, ¶¶ 24, 27, 28). Criminal charges were also brought against SAA shareholders in connection with this accident. (Ex. C, ¶¶ 24, 27, 28)

The AFAC examined other components recovered from the Accident Helicopter, including the Subject Actuator involved in this litigation. (Ex. B, at pp. 42-48). Although the AFAC found two loose screws from a circuit board within the Subject Actuator, it could not determine when they came loose. (Ex. B, at p. 71).

The AFAC determined the probable cause of the accident to be: "loss of control of the helicopter due to a sudden roll to the left, which was not recovered by the pilot in command, causing the helicopter to invert its position during flight and impact with that configuration against the terrain." (Ex. B, at p. 83). The AFAC further identified the following contributing causes:

1. Inefficient maintenance practices by the company providing the maintenance services [RFS].
2. Inadequate operational safety culture of the operator [SAA].

3. Pressure from the operator [SAA] to continue flights with knowledge of an intermittent malfunction of the roll linear actuator of the Stability Augmentation System number two (SAS 2) [not the Subject Actuator], beyond the respective requirements outlined in the Minimum Equipment List (MEL) applicable to the helicopter.

4. Insufficient supervision of the maintenance and operation of the helicopter by the [Mexican] Civil Aviation Authority.

(Ex. B, at p. 83).

At the conclusion of the AFAC's investigation of the accident, the Accident Helicopter wreckage was transferred to the Attorney General's Office of the State of Puebla, where it remained under the surveillance and custody of the Puebla Attorney General's Office following the AFAC's issuance of its Final Report in March 2020.  (Ex. B, at pp. 44-45).

## II.    THE LITIGATION ARISING FROM THIS ACCIDENT.

Plaintiffs have filed three lawsuits arising out of this accident.  This wrongful death and survival action was filed against Honeywell in North Carolina.  The only known connection this case has with North Carolina is that it is the new location of Honeywell's headquarters, which recently opened its doors on December 1, 2021.  (Ex. I, Charlotte Reg. Bus. Alliance, *Honeywell Opens Global Headquarters in Uptown Charlotte*, Dec. 2, 2021).  A second lawsuit is pending in the State Court of Clayton County, Georgia against Precision Aviation Group, Inc. d/b/a Precision Accessories & Instruments, d/b/a Precision Heliparts Latin America and Aeronautical Technology, Inc., d/b/a Precision Aero Technology (collectively, "Precision").  In that lawsuit, Plaintiffs allege that Precision negligently overhauled the other roll actuator.  (Ex. F, ¶¶ 20, 27).

In a third lawsuit filed in the U.S. District Court for the Eastern District of Pennsylvania, Plaintiffs allege that the helicopter's overall AFCS was defectively designed, manufactured, sold, and supported by Leonardo S.p.A. and AgustaWestland Philadelphia Corporation (collectively, "Leonardo").  (Ex. J, Leonardo Compl., ¶¶ 50-54).  Leonardo has similarly filed a motion to

dismiss for *forum non conveniens* in favor of Mexico and has made the same general stipulations

to consent to a Mexico forum, as Honeywell does here, should this case be refiled in Mexico. (Ex.

K, Leonardo FNC Motion at 16 of 38; Ex. L, Honeywell Stip.).

According to the First Amended Complaint in this action, Plaintiffs are all citizens and

residents of Mexico, as were their decedents at the time of the accident. (Ex. A, ¶¶ 1-12). In their

capacities as executors of the decedents' estates, probate actions were opened by each plaintiff in

various courts located in Puebla, Mexico, and upon information and belief, all persons who could

potentially recover in this case are located in Mexico. (*See* Ex. A, ¶¶ 1-12).

## ARGUMENT

### I.     THIS CASE SHOULD BE STAYED ON GROUNDS OF *FORUM NON CONVENIENS.*

Under North Carolina law, if the trial court determines that the facts and circumstances

underlying a case "would work substantial injustice for the action to be tried in a court of this State,

the judge on motion of any party may enter a motion to stay further proceedings in this State."

N.C.G.S. § 1-75.12(a). In other words, when it appears that North Carolina "is an inconvenient

forum and that another is available which would better serve the ends of justice and the

convenience of [the] parties, a stay should be entered." *Motor Inn Mgmt., Inc. v. Irvin-Fuller Dev.

Co.*, 46 N.C. App. 707, 713 (1980) (citation omitted).

In deciding whether to grant a stay, North Carolina courts consider the following

convenience factors and policy considerations:

> (1) The nature of the case, (2) the convenience of the witnesses, (3) the availability
> of compulsory process to produce witnesses, (4) the relative ease of access to
> sources of proof, (5) the applicable law, (6) the burden of litigating matters not of
> local concern, (7) the desirability of litigating matters of local concern in local
> courts, (8) convenience and access to another forum, (9) choice of forum by
> plaintiff, and (10) all other practical considerations.

*Lawyers Mut. Liab. Ins. Co. of N.C. v. Nexsen Pruet Jacobs & Pollard*, 112 N.C. App. 353, 356 (1993) (citing *Motor Inn*, 46 N.C. App. at 713).   "These factors parallel the public and private interest factors that federal courts use to decide motions to dismiss premised on *forum non conveniens*." *Cardiorentis Ag v. IQVIA, Ltd.*, 2018 NCBC LEXIS 243, at *8 (N.C. Super. Ct. Dec. 31, 2018), *aff'd* 2020 N.C. LEXIS 96 (N.C. Feb. 28, 2020) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).   Courts may properly consider information outside the pleadings, including affidavits submitted by the parties, and merits discovery is generally unnecessary to resolve the *forum non conveniens* inquiry. *Id.* at *5 (citing *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d Cir. 1987); *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd.*, 722 F. Appx. 870, 886 (11th Cir. 2018)).

It is not necessary for the Court to find that every factor weighs in favor of a stay in order to grant the motion. *See Lawyers Mut. Liab. Ins. Co.*, 112 N.C. App. at 357; *Wachovia Bank v. Deutsche Bank Tr. Co. Ams.*, 2006 NCBC LEXIS 10, at *12 (N.C. Super. Ct. June 2, 2006). Rather, the trial court need conclude only that: (1) a substantial injustice would result in the absence of a stay; (2) the stay is justified by the factors that are relevant and material; and (3) the alternative forum is convenient, reasonable, and fair.   *See Bryant & Assocs., LLC v. ARC Fin. Servs., LLC*, 238 N.C. App. 1, 5 (2014); *Cardiorentis*, 2018 NCBC LEXIS 243, at *8.

Here, the overwhelming weight of all factors demonstrates that this case is centered around and belongs in Mexico, not North Carolina, and a stay of these proceedings pursuant to North Carolina General Statutes § 1-75.12(a) and on the grounds of *forum non conveniens* is warranted.

### A.     The Convenience Factors All Weigh Decisively In Favor of a Mexican Forum.

In weighing the factors focused on the convenience of the litigation – i.e., the nature of the case, convenience of witnesses, availability of compulsory process to produce witnesses, relative

ease of access to sources of proof, and all other practical considerations – it is undeniable that Mexico is the most convenient, reasonable, and fair forum.   As North Carolina courts have recognized, "[g]iven the difficulty and expense associated with gathering evidence in a foreign jurisdiction, the relative ease of access to sources of proof has been considered particularly important in the *forum non conveniens* analysis." *Cardiorentis*, 2018 NCBC LEXIS 243, at *17 (citing *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003)).   This is especially true with international aviation accidents, like this one, because the material evidence – i.e., the wreckage, the accident investigation, critical witnesses, and important physical and documentary evidence – is typically found only in the country where the aircraft was maintained, operated, and the accident occurred.   "Certainly, to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on depositions, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil*, 330 U.S. at 511.   Thus, the convenience factors in N.C.G.S. § 1-75.12(a) weigh in favor of a stay when the material evidence and witnesses are located outside North Carolina and in a foreign jurisdiction. *See id.* at *18.[1]

The decision in *Torreblanca de Aguilar v. Boeing Co.* from the U.S. District Court for the Eastern District of Texas is instructive.   806 F. Supp. 139 (E.D. Tex. 1992).   There, plaintiffs' decedents were killed on a flight that crashed shortly after takeoff from Mexico City en route to Puerto Vallarta. *Id.* at 140.   The Mexican government's investigation into the accident found that a tire explosion in the aircraft's wheel caused an in-flight fire that ultimately disabled critical systems within the aircraft and resulted in the crash. *Id.* at 140.   The estates of those passengers

---

[1] In such cases, a stay or dismissal can also help to ensure that the parties are not subject to successive, expensive litigation on the same set of facts and prevent prejudice to defendants by allowing them to present evidence at trial on the fault of all potentially culpable third parties. *Piper Aircraft*, 454 U.S. at 259; *see also Delta Air Lines, Inc. v. Chimet, S.P.A.*, 619 F.3d 288, 300 (3d. Cir. 2010); *In re Air Crash over the Mid-Atlantic on June 1, 2009*, 760 F. Supp. 2d. 832, 845-46 (N.D. Cal. 2010); *Helog AG v. Kaman Aerospace Corp.*, 228 F. Supp. 2d 91, 93 (D. Conn. 2002).

filed wrongful death claims sounding in products liability against the aircraft manufacturer and others in Texas, but the court dismissed the case on FNC grounds, finding that litigating in Texas would have resulted in undue hardship to the court and the defendants. *Id.* at 144  In reaching that conclusion, the court held:

> The relevant evidence concerning potential liability is located principally in Mexico. [T]he investigation of the accident was conducted by the Mexican government  and the investigation records are located in Mexico City. Virtually all of the material procured or generated during the investigation as well as all the physical evidence of any significance is in the custody of the Mexican government. Mexico City is also the place where the aircraft was based and where it received periodic maintenance and inspections. Records and witnesses establishing the overhaul, maintenance and servicing history of the aircraft and its components are in Mexico. Records and witnesses concerning the operational history of the aircraft, the hiring and training of Mexicana's pilots, mechanics and other technicians are also located in Mexico City.  This evidence is all beyond this court's subpoena power. . . . Such difficulties in obtaining testimony and evidence located in foreign jurisdictions is a strong factor favoring *forum non conveniens* dismissal.

*Id.* at 143-44.

The *Aguilar* court went on to find that "the presence of important witnesses in Mexico, many of whom are not parties to this action or employees of the parties, would create extreme difficulties were this case to be tried in Texas." *Id.* at 144.  Testimony of non-party witnesses, for example, would need to be obtained using letters rogatory via the Hague Convention, which the *Aguilar* court found is both expensive and time-consuming. *Id.*  Even assuming the parties could obtain the testimony requested, the court observed that the defendants still would be forced to try the case by deposition, which would limit the jury's ability to evaluate the credibility of the witnesses. *Id.* (citing *Gulf Oil*, 330 U.S. at 511).  The court concluded that these difficulties could be obviated by litigating the case in Mexico and, therefore, FNC in favor of a Mexican forum was proper. *Id.*; *see also Ayala v. Bridgestone Ams. Tire Order Operations*, 2012 U.S. Dist. 205032, at *8 (E.D.N.C. 2012) ("Mexican authorities investigated the accident. This court will not be able

to compel attendance of key witnesses, for example, Mexican police officers."); *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 705 (7th Cir. 2005) (finding that access to liability and damages evidence favored FNC dismissal to Mexico where "plaintiff's medical, employment, vehicle, and tax records are in Mexico, as is evidence of the family's pain and suffering").

The same difficulties that justified FNC relief in *Aguilar* are present here.  Key testimony from witnesses who observed the accident flight and those that have first-hand knowledge of the operation and repair history of the Accident Helicopter, including those knowledgeable about the training and employment history of SAA and RFS personnel, are only located in Mexico.  (Ex. C, ¶¶ 23-28, 87-89; Ex. B, at pp. 17-24).  While Plaintiffs may argue that this case can be adequately tried on the handful of maintenance records and witness excerpts included in the Final Report, that is plainly insufficient.  The AFAC's investigation uncovered numerous issues with RFS's recordkeeping on the Accident Helicopter as well as inconsistencies with their interviews of RFS personnel about the airworthiness of the aircraft at the time of the mishap.  (Ex. B, at pp. 43, 66). Thus, the presence of both SAA and RFS (including the documents within their possession) is crucial in determining the issues of liability, as are all the damages documents and witnesses, which are likewise located in Mexico and beyond this Court's compulsory power.

While Honeywell could attempt to obtain evidence in Mexico through letters rogatory, there is no guarantee the letters would be executed.  (Ex. C, ¶¶ 83-88).  And, even if they were, obtaining evidence through letters rogatory is "burdensome, costly, and time-consuming." *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 21 & n.4 (1st Cir. 2004); (Ex. C, ¶¶ 85-88).  As other courts have observed, "the superiority of live testimony and the inconvenience of taped depositions obtained by letters rogatory favor[s] dismissal." *Clerides v. Boeing Co.*, 534 F.3d 623, 630 (7th Cir. 2008).  Moreover, the difficulties of adjudicating this

case in North Carolina "would be compounded by the presence of language barriers and the necessity for translation." *See Nai-Chao v. Boeing Co.*, 555 F. Supp. 9, 18 (N.D. Cal. 1982), *aff'd*, 708 F.2d 1406 (9th Cir. 1983).

Although Plaintiffs may argue that documents relating to design and manufacture of the Subject Actuator are located in the United States, Honeywell has agreed to produce all such relevant evidence in Mexico.  (Ex. L, ¶¶ 3-5).  Thus, access to information regarding the design and manufacture of the Subject Actuator will be the same whether this action is tried in North Carolina or Mexico.  As the same cannot be said of the liability and damages evidence in Mexico, a stay in favor of a Mexican forum should be granted.  *Ayala*, 2012 U.S. Dist. LEXIS 205032, at *8.  It is simply not possible to have a full and fair hearing on all of the relevant facts and issues of this case in North Carolina without the evidence, witnesses, and third parties that are located in Mexico beyond the reach of this Court's jurisdiction.[2]

**B.    Factors Relating to the Burden and Interest of the Forum also Weigh in Favor of FNC.**

In looking to the factors that evaluate the burden on the forum and the forum's interest in the litigation – i.e., the burden of litigating matters not of a local concern, the desirability of litigating matters of local concern in local courts, convenience and access to another forum, and the potentially applicable law – they overwhelmingly weigh in favor of staying the case on FNC grounds.  *See Motor Inn*, 46 N.C. App. at 712; *Cardiorentis*, 2018 NCBC LEXIS 243, at *17.  Indeed, the *Aguilar* court found that Mexico had "paramount interest" in the lawsuit arising out of

---

[2] Other courts have found that the location of evidence of a product's design or manufacture in the United States does not make it any more convenient when the defendant seeking FNC consents to producing that evidence in Mexico. *See, e.g.*, *Aguilar*, 806 F. Supp. at 144 ("The fact that some evidence concerning the aircraft's design and manufacture may be located elsewhere in the United States does not make the Eastern District of Texas a convenient forum."); *De Pedrero v. Schweizer Aircraft Corp.*, 635 F. Supp. 2d 251, 263 (W.D.N.Y. 2009) ("Defendant has consented to provide design defect evidence and witnesses relevant to this issue in a Mexican forum, while highly material evidence located in Mexico, such as the accident investigation documents and witnesses, which will not be readily within Plaintiffs' control in this court, would be more accessible to both sides in a Mexican forum.").

the crash of an aircraft operated in Mexico and regulated by Mexican authorities, where "accident investigation was conducted by the Mexican government at considerable expenditure of resources" and where "[a]lmost all of the passengers and crew were Mexican citizens." 806 F. Supp. at 144.

Mexico similarly has paramount interest in this case. The crash resulted in the deaths of prominent Mexican citizens, including political figures who held office in the very place where the Accident Helicopter crashed, prompting nationwide media attention throughout Mexico and the investigations led by Mexican authorities. (Ex. C, ¶¶ 21-24; Ex. B, at pp. 3-5). Those investigations culminated not only in the criminal prosecutions of Mexican nationals employed by RFS and SAA for their involvement in the subject accident, but also in the Mexican AFAC issuing numerous safety recommendations on the regulation and oversight of aircraft operations and maintenance in Mexico. (Ex. C, ¶¶ 21-24; Ex. B, at pp. 83-87). These facts demonstrate that Mexico has a significant interest in the safety of air transportation for its citizens and the companies operating within its borders, including RFS and SAA.

Any interest North Carolina has in this litigation is overshadowed by that of Mexico's. The only conceivable connection between North Carolina and this case is that Honeywell's corporate headquarters are now located in the State, after relocating here in December 2021. (Ex. I, at pp. 1-2). But none of the activity or evidence at issue in this case is located in North Carolina. Specifically, the Subject Actuator was not designed, manufactured, installed, or operated in a helicopter here. (Ex. G, ¶¶ 3-4; Ex. D, ¶ 4). "Although [North Carolina] courts have a general interest in providing a forum to hear disputes involving injuries caused by citizens of the State, this interest is diminished when the lion's share of relevant activity occurred abroad and when the controversy is unlikely to be governed by North Carolina law." *Cardiorentis*, 2018 NCBC LEXIS

243, at *23-24.  As such, Mexico's interest in this litigation far outweighs any that North Carolina might have.

Moreover, it would be unfair to charge this Court and the citizens of Mecklenburg County with the burden and costs associated with what will likely be a very complicated, highly technical, translated, and lengthy trial, given that North Carolina's "interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260-61 (1981); *see also NLA Diagnostics LLC v. Theta Techs. Ltd.*, 2012 U.S. Dist. LEXIS 108779, *13-14 (W.D.N.C. Aug. 3, 2012) (finding that jury duty should not be imposed upon the people of a community which has no relation to the litigation); *Ayala*, 2012 U.S. Dist. 205032, at *6 ("Mexico has an interest in resolving this controversy, as it relates to its own citizens.  Maintaining the case in North Carolina would require jury duty of persons with no connection to this litigation.").

This is particularly true where, as here, the laws of Mexico are likely to apply in this case, because North Carolina follows the doctrine of *lex loci delicti* – i.e., the law of the place where the injury occurred.  *See, e.g., Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 698 (2010) (finding that *lex loci delicti* "is the appropriate choice of law test to apply to tort claims"). Given the complexities associated with the application of a foreign sovereign's substantive law, which would "necessitate the interpretation and translation of Mexican law, along with the controversies surrounding such matters," this factor also weighs heavily in favor of a stay on the grounds of *forum non conveniens*.  *See, e.g., Dunham v. Hotelera Canco S.A. de C.V.*, 933 F. Supp. 543, 555 (E.D. Va. 1996) (finding Mexico law likely applying under Virginia's *lex loci delicti* rules, which weighed in favor of FNC dismissal to Mexico); *Cruz*, 2009 U.S. Dist. LEXIS 108281,

at *16 (finding that Mexican law would govern claims for crash in Mexico pursuant to *lex loci delicti* and granting FNC on grounds that it would be more "proper for Mexico to use its courts and laws to decide a dispute that involves its citizens from an accident that took place within its borders"); *Vivanco v. Biomet, Inc.*, 2005 U.S. Dist. LEXIS 8952 (N.D. Ind. May 9, 2005) (granting FNC to Mexico and finding that "Indiana's *lex loci delicti* rules dictate that Mexican law applies to the [plaintiff's] tort claims because they arise out of alleged injuries suffered in Mexico").

Accordingly, the factors bearing on the burden and interest of the forum strongly support a stay in favor of Mexico on the grounds of *forum non conveniens*.

### C.      Mexico Is an Adequate and Available Alternative Forum.

There is also no question that Mexico is a reasonable and fair forum capable of applying its own laws.  Indeed, American courts have repeatedly held that Mexico is an adequate forum for the adjudication of wrongful death claims and cases involving alleged product defects.  *See, e.g.*, *In re Ford Motor Co.*, 591 F.3d 406, 412-13 (5th Cir. 2009) ("These many decisions create a nearly airtight presumption that Mexico is an available forum."); *Cruz v. Cooper Tire & Rubber Co.*, 2009 U.S. Dist. LEXIS 108281, at *6 (W.D. Ark. Nov. 19, 2009) ("Many courts have stated that Mexico is an adequate forum for tort litigation that involves American companies and American-made products.").  The affidavit of Honeywell's Mexican law expert further supports a finding that Mexico provides Plaintiffs with an adequate forum for their claims.  (Ex. C, ¶¶ 29, 89). Mexican courts offer Plaintiffs analogous causes of action and provides procedural safeguards, efficient court systems, and remedies.  (Ex. C, ¶¶ 15-20, 48-66).  Numerous rules govern the filing of pleadings, the presentation of evidence, hearings, trial, and appellate proceedings, as well as the trial court's authority to compel the production of relevant evidence and appearance of witnesses in Mexico.  (Ex. C, ¶¶ 15-20, 34, 70, 81-82, 89).

Mexico is also an available forum because Honeywell has agreed to consent to jurisdiction in Mexico if its FNC motion is granted.  (Ex. C, ¶¶ 42-45).  This alone establishes Mexico's availability as a forum for this case.  *See Ayala*, 2012 U.S. Dist. LEXIS 205032, at *6-7 (finding availability of Mexican forum met where "defendants consent to be sued in Mexico and agree to not assert limitations as a defense to the re-filing of this lawsuit following dismissal under the doctrine of *forum non conveniens* so long as these claims were timely filed in the first instance").

As such, Mexico is an adequate and available forum for Plaintiffs' claims.

### D.      Plaintiffs' Choice of Forum Deserves Little Deference.

With regard to the last remaining factor – Plaintiffs' choice of forum – it is well settled that a foreign plaintiff's choice of forum is not given the same deference afforded to the citizens of that forum.  *Piper Aircraft*, 454 U.S. at 256; *Ayala*, 2012 U.S. Dist. LEXIS 205032, at *8-9.  As such, a plaintiff's choice of a North Carolina forum deserves less deference when they elect to sue outside their home forum, as "there is simply less reason to believe that a litigant would choose a foreign forum for reasons of convenience."  *Cardiorentis*, 2018 NCBC LEXIS 243 at *8 (citing *Piper Aircraft*, 454 U.S. at 256); *accord Ayala*, 2012 U.S. Dist. LEXIS 205032, at *8 ("[A]lthough plaintiff's choice of forum is typically given great deference, that is not true where the plaintiff chooses to sue in a state where plaintiff does not reside.").

Here, Plaintiffs have no discernible connection to North Carolina and are all citizens and residents of Mexico.  Consequently, their choice of a North Carolina forum is entitled to little deference and plainly fails to outweigh the factors supporting a stay on the grounds of FNC.

## CONCLUSION

Mexico is the far more convenient and proper forum to hear this case and provides an available and suitable alternative forum in which the parties may fairly adjudicate their claims and

defenses. A stay pursuant to the doctrine of *forum non conveniens* and North Carolina General Statutes § 1-75.12(a) is therefore supported by the facts and law, and Honeywell respectfully requests that its motion be granted upon the conditions set forth in its stipulation.

This 7th day of March, 2022

Respectfully Submitted,

**HONEYWELL INTERNATIONAL INC.**

By:

David N. Allen, NC Bar No. 9095
Benjamin S. Chesson, NC Bar No. 41923
Anna C. Majestro, NC Bar No. 50850
ALLEN, CHESSON & GRIMES PLLC
505 N. Church Street
Charlotte, NC 28202
Phone: (704) 755-6010
dallen@allenchesson.com
bchesson@allenchesson.com
amajestro@allenchesson.com
*Counsel for Defendant*

Michael G. McQuillen (pro hac vice pending)
John M. Kelly (pro hac vice pending)
Steven L. Boldt (pro hac vice pending)
Abby Van Grinsven (pro hac vice pending)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
mmcquillen@amm-law.com
jkelly@amm-law.com
sboldt@amm-law.com
avangrinsven@amm-law.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing via electronic mail on this ⌐ th day of March, 2022, to the parties listed below:

Charles G. Monnett, Esq.
CHARLES G. MONNETT III & ASSOCIATES
6842 Morrison Boulevard, Suite 100
Charlotte, North Carolina 28211
Email: cmonnett@carolinalaw.com

Anthony Tarricone, Esq.
Vincent Lesch, Esq.
KREINDLER & KREINDLER LLP
750 Third Avenue
New York, New York 10017
Email: atarricone@kreindler.com
Email: vlesch@kreindler.com

Jaime A. Gonzalez, Jr., Esq.
Catherine Smith, Esq.
GONZALEZ & ASSOCIATES LAW FIRM, PC.
Summit Park North
817 E. Esperanza, Ave.
McAllen, Texas 78501
Email: iaimegaglawfirm.com
Email: cat@jaglawfirm.com

*Attorneys for Plaintiffs*

David N. Allen

17