IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUAN CARLOS ALONSO HIDALGO, ET AL.    :
                                        :          CIVIL ACTION
                     v.                    :
                                          :          NO. 20-6393
                                          :
AGUSTAWESTLAND PHILADELPHIA          :
CORPORATION, ET AL.                    :

## MEMORANDUM

**SURRICK, J.**                                              **February 1, 2024**

        Plaintiffs brought this suit against Leonardo S.p.A. ("Leonardo"), an Italian corporation, and its wholly owned subsidiary AugustaWestland Philadelphia Corporation ("AWPC"), a Delaware corporation with its headquarters in Philadelphia, after their relatives, all Mexican citizens, died in a helicopter crash in the Mexican state of Puebla.  The helicopter was designed and manufactured by Leonardo in Italy.  It does not appear that AWPC played a role in its production or sale.  Defendants filed a Motion to Dismiss pursuant to the doctrine of *forum non conveniens* as well as Fed. R. Civ. P. 12(b)(7) for failure to join necessary parties under Fed. R. Civ. P. 19.  While we have "great sympathy" for the Plaintiffs, "who lost loved ones in this horrific accident, . . . sympathy cannot be a substitute for an unbiased application of the law."  *In re Air Crash over the Mid-Atlantic on June 1, 2009*, 760 F. Supp. 2d 832, 835 (N.D. Cal. 2010).  Accordingly, for the foregoing reasons, we grant Defendants' Motion on the grounds of *forum non conveniens* and hold that Mexico is a more appropriate forum to adjudicate Plaintiffs' claims.  We need not address Defendants' arguments concerning Fed. R. Civ. P. 19.

I.    **BACKGROUND**

This matter arises from a helicopter crash that occurred on December 24, 2018, in Santa

Maria Coronago, Puebla, Mexico.  ("Compl.," ECF No. 1, ¶ 7.)  The helicopter was en route

from Puebla, Mexico, to Mexico City, Mexico, when the crash occurred.  (*Id.*, ¶ 27.)  Aboard the

helicopter were the Plaintiffs' decedents: Martha Erika Alonso Hidalgo, the recently elected

Governor of the State of Puebla, Marco Antonio Tavera Romero, and Hector Baltazar Mendoza,[1]

all Mexican citizens.  (*Id.*, ¶¶ 7, 12; "Pls' Resp.," ECF No. 18-1, at 1, 26.)[2]  All were killed as a

result of the crash.  (Compl., ¶ 7.)  Plaintiffs allege that during the flight, one or both of the SAS1

and SAS2 roll actuators in the helicopter malfunctioned and caused the helicopter to roll left and

exit controlled flight.  (*Id.*, ¶ 29.)  Plaintiffs further allege that the pilots were unable to regain

control of the helicopter and the helicopter crashed.  (*Id.*, ¶ 30.)  Mexican civil aviation

authorities also concluded that "[l]oss of control of the helicopter due to a sudden roll to the left"

was the likely cause of the crash, though it did not make any definitive conclusions regarding the

roll of the actuators.  (*See* "AFAC Report," ECF No 14-5, at 82–83 (listed pagination of 87).)

The decedents' families and estates now bring this action against Defendants Leonardo,

an Italian corporation, and its wholly owned subsidiary AWPC, a Delaware Corporation with its

headquarters in Philadelphia.  (*See* Compl., ¶¶ 8, 10; *see also* Pls' Resp. at 8.)  Defendants

---

[1] Baltazar Mendoza was the assistant to Rafael Moreno Valle Rosas, the former governor and then senator
for Puebla as well as husband to Alonso Hidalgo, who was also killed in the accident.  (*See* Pls' Resp. at
1.; "Mot.," ECF No. 14-2, at 2.)  The estate of Valle Rosas is not a plaintiff in this case.

[2] In deciding a motion to dismiss on the grounds of *forum non conveniens*, the court may consider
materials outside of the pleadings, including affidavits and exhibits.  *In re Dewey & LeBoeuf LLP*,
522 B.R. 464, 476–477 (Bankr. S.D.N.Y. 2014); *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F.
Supp. 2d 712, 724 (S.D.N.Y. 2011); *see also Copia Commc'ns, LLC* v. AMResorts, L.P., No. CV 16-
5575, 2017 WL 4012687, at *1 (E.D. Pa. Sept. 11, 2017) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S.
235, 258–59 (1981), for the proposition that motions to dismiss based on forum non conveniens should be
resolved based on affidavits submitted by the parties).

design, manufacture, assemble, sell, and provide product support for the A109S Helicopter, which is the type of helicopter involved in this matter.  (Compl., ¶¶ 7, 9, 11.)  Leonardo is the FAA Type Certificate holder of the A109S Helicopter and primarily manufactures the helicopter in Italy.  (*Id.*, ¶ 18–19; "Sommer Decl.," ECF No. 18-16, ¶ 10.)  The helicopters are often exported from Italy to the United States and other North American destinations, including Mexico, through AWPC.  (*See* Compl., ¶ 19; ECF No. 18-10.)

The helicopter involved in this matter (the "subject helicopter") was designed and manufactured in Italy by Leonardo and was initially purchased by a Mexican company. ("Dalmasso Decl.," ECF No. 14-8, ¶¶ 4–5.)  However, it does not appear that the subject helicopter was ever exported or shipped to AWPC in Philadelphia or anywhere else in the United States.  (*See id.*, ¶¶ 4–8.)  It also appears that AWPC did not play a role in designing, manufacturing, testing, or selling the helicopter.  (*See* "Helkey Aff.," ECF No. 14-9, ¶¶ 5–8.)  At the time of the crash, the subject helicopter was owned and operated by Servicios Aereos del Altiplano ("SAA") and maintained by Rotor Flight Services ("RFS"), both Mexican companies. (AFAC Report at 5, 7.)  It appears that eleven days prior to the subject flight, RFS found the SAS2 actuator to be malfunctioning and in need of repair.  (Compl., ¶ 31; AFAC Report at 7, 68.)  Nevertheless, SAA's Minimum Equipment List ("MEL") for the subject helicopter, which is based on the Master MEL for the A109S Helicopter, prepared by Leonardo and published by the European Aviation Safety Authority, advised that the helicopter could, under certain conditions, continue to fly with one or both of the SAS actuators being inoperative.  (AFAC Report at 22–24.)  Plaintiffs allege that neither Leonardo nor AWPC provided "any other instructions or warnings concerning the danger of operating" the helicopter without both SAS actuators functioning properly.  (Compl., ¶ 33.)

After the crash, the Mexican civil aviation authorities in the Agencia Federal de Aviación Civil ("AFAC") collaborated with the United States National Transportation Safety Board ("NTSB"), the equivalent civil aviation authorities of Italy, Canada, and the European Union, as well as Leonardo and Honeywell International, Inc., the U.S.-based manufacturer of the actuators, to investigate the crash and produce the AFAC Report. (*See* AFAC Report at 5–6, 10.) The actuators were sent to the United States for analysis and inspection. (*Id.* at 47–48.) They were initially sent to the Chicago, Illinois, facilities of Varex, an imaging company, and were put through a CT scan under the direction of the NTSB. (*Id.* at 48, Ex. E at 2.) These scans revealed that the SAS1 actuator contained two loose screws. (*Id.* at 69.) The actuators were then sent to Honeywell's facility in Boyne City, Michigan, for further disassembly and inspection, which confirmed the loose screws. (*Id.* at 48, Ex. E at 3, 5.) The Plaintiffs allege that the SAS1 actuator was original to the subject helicopter and was in the same defective condition as when it was installed and that operating with only one properly functioning actuator rendered the subject helicopter incapable of meeting the minimum safety standards for controllability. (Compl., ¶ 35; Pls' Resp. at 7.)

Plaintiffs further allege that, as a result of the acts and/or omissions of the Defendants, their decedents sustained personal injuries, including conscious and physical pain and suffering, pre-impact fright and terror, fear of impending death, post-impact fright and terror, mental anguish, emotional distress, the physical manifestation of personal injury due to the extreme terror and freight experienced, and other severe injuries for a measurable period of time prior to their death. (Compl., ¶ 36.) Plaintiffs maintain that Defendants were aware and had prior notice of the propensity of the subject helicopter to experience the kind of malfunction that allegedly occurred here through at least two prior incidents involving substantially similar helicopters that

rolled and caused the helicopters to leave controlled flight due to a failure of actuators.  (*Id.*,

¶¶ 37–38.)  Defendants allegedly concealed this information and only contributed to the problem

by amending the Master MEL without disclosing the dangers known to them.  (*Id.*, ¶ 39.)

Plaintiffs now bring this action pursuant to Pennsylvania's Wrongful Death and Survival

Statutes, 42 PA. CONS. STAT. §§ 8301, 8302, "and/or any other applicable law" for both the

decedents' and their own damages, asserting the Court's diversity jurisdiction under 28 U.S.C.

§ 1332.  (*Id.*, ¶¶ 12, 41–42.)  Specifically, Plaintiffs assert strict products liability, negligence,

and breach of warranties claims against Defendants AWCP and Leonardo.  (*Id.*, ¶¶ 43–71.)

Defendants have brought a Motion to Dismiss on the grounds of *forum non conveniens*, arguing

that Mexico is a more appropriate forum for adjudicating this dispute, as well as Fed. R. Civ. P.

12(b)(7) for failure to join necessary parties (SAA and RFS) under Fed. R. Civ. P. 19.  (Mot. at

1–2.)

## II.    LEGAL STANDARD

"The principle of *forum non conveniens* is simply that a court may resist imposition upon

its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute."  *Gulf*

*Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).  Under the doctrine, "dismissal will ordinarily be

appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant

or the court, and where the plaintiff is unable to offer any specific reasons of convenience

supporting his choice."  *Piper*, 454 U.S. at 249.  "The *forum non conveniens* determination is

committed to the sound discretion of the trial court."  *Id.* at 257.

"The Third Circuit has articulated a three-part test for analyzing *forum non conveniens*

motions."  *Behrens v. Arconic, Inc.*, 487 F. Supp. 3d 283, 309 (E.D. Pa. 2020), *reversed in part*

*on other grounds*, No. 20-3606, 2022 WL 2593520, at *5 (3d Cir. July 8, 2022).  "[A] district

court must first determine whether an adequate alternative forum can entertain the case." *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189–90 (3d Cir. 2008). "[T]he district court must then determine the appropriate amount of deference to be given the plaintiff's choice of forum." *Id.* at 190. Then "the district court must balance the relevant public and private interest factors." *Id.* "If the balance of these factors indicates that trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience, the district court may, in its discretion, dismiss the case on *forum non conveniens* grounds." *Id.* "Defendants bear the burden of persuasion on each of these elements." *Behrens*, 487 F. Supp. 3d. at 309–10 (citing *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991) ("Lony II")).

## III.   DISCUSSION

Below, we analyze each component of this three-part test and conclude, in our discretion, that this action should be dismissed because Mexico is a more appropriate forum to adjudicate Plaintiffs' claims.

### A.   Mexico is an Adequate Alternative Forum

An alternative forum is available if "all defendants are amenable to process there" and is generally adequate if the plaintiff's claim "is cognizable in the forum's courts." *Wilmot v. Marriott Hurghada Mgmt., Inc.*, 712 F. App'x 200, 203 (citing *Piper Aircraft*, 454 U.S. at 254 n.22). Where the other forum's remedy is clearly unsatisfactory, it may not be an adequate alternative. *Behrens*, 487 F. Supp. at 310 (quoting *Piper*, 454 U.S. at 254 n.22). However, such circumstances are rare. *Id.*

We are satisfied that Mexico is an adequate alternative forum for this case. As a condition of dismissal here, Defendants have consented to service of process in Mexico and have

agreed not to raise statute of limitations or jurisdictional defenses if this matter is brought there. (Mot. at 7.)  In addition, Plaintiffs' claims in this matter are cognizable in Mexican courts. ("Alegre Aff.," ECF No. 14-10, at ¶¶ 18–20, 50.)  This and other federal courts have found Mexico to be an adequate alternative forum for purposes of *forum non conveniens*.  *See Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, 116 F. Supp.3d 519, 524 (E.D. Pa. 2015); *see also In re Ford Motor Co.*, 591 F.3d 406, 412 (5th Cir. 2009) ("We have held in numerous cases that Mexico is an available forum for tort suits against a defendant that is willing to submit to jurisdiction there."); *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 667 (9th Cir. 2009) (district court did not abuse its discretion in holding that Mexico was an adequate alternative forum); *Stromberg v. Marriott Int'l, Inc.*, 256 F. App'x 359, 360 (D.C. Cir. 2007) (district court did not abuse its discretion in holding that Mexico was an adequate alternative forum for a case concerning a taxi cab accident in Mexico); *Navarrete De Pedrero v. Schweizer Aircraft Corp.*, 635 F. Supp. 2d 251, 260–61 (W.D.N.Y. 2009) (holding that Mexico was an adequate alternative forum in a case concerning a helicopter crash in Mexico); *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 659 (S.D. Tex. 2003) (finding that Mexico was an adequate alternative forum in a case concerning a plane crash in Mexico "if all defendants agree to submit to the jurisdiction of the Mexican courts and waive limitations defenses"). Plaintiffs do not dispute that Mexico is an adequate alternative forum for this case.  (Pls' Resp. at 11.)  Therefore, we are satisfied that an adequate alternative forum exists for purposes of *forum non conveniens*.

### B.    Deference to Plaintiff's Choice of Forum

"When the plaintiff is a domestic resident or citizen, 'a strong presumption of convenience exists' in favor of the chosen forum."  *Behrens*, 487 F. Supp. 3d at 316 (quoting

*Windt.*, 529 F.3d at 190).  However, "[w]hen the plaintiff is foreign, this presumption 'applies

with less force,' because the 'assumption that the chosen forum is appropriate is in such cases

less reasonable.'"  *Id.* (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S.

422, 430 (2007)).  Accordingly, "[a foreign] Plaintiffs' choice of forum is entitled to a lesser

amount of deference unless they can make a 'strong showing of convenience.'"  *Id.* at 317

(quoting *Windt*, 529 F.3d at 190).  "[T]he reason for giving a foreign plaintiff's choice less

deference is not xenophobia, but merely a reluctance to assume that the choice is a convenient

one."  *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989) ("Lony I").

"Moreover, any degree of deference to plaintiffs' choice to sue in defendants' home forum (as

opposed to plaintiffs' home forum) is available only to the extent that plaintiffs or the case

possess a *bona fide* connection to this forum."  *Acosta v. JPMorgan Chase & Co.*, 219 F. App'x

83, 86 (2d Cir. 2007) (cleaned up) (citing *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329

F.3d 64, 74 (2d Cir. 2003)); *see also Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869,

874–76 (3d Cir. 2013).  Ultimately, the district court must determine whether the "considerable

evidence of convenience has . . . overcome any reason to refrain from extending full deference to

the foreign plaintiff's choice."  *Lony I*, 886 F.2d at 634 (3d Cir. 1989).

     Neither Plaintiffs nor this case possess a *bona fide* connection to this district, as the center

of gravity for this case is squarely in Mexico.  First and foremost, all of the Plaintiffs are citizens

of Mexico and do not have any connection to this district.  (*See* Compl., ¶ 12; Pls' Resp. at 26.)

Moreover, the accident occurred in Mexico, was witnessed in Mexico, and was principally

investigated by Mexico's civil aviation authority, AFAC.  (*See generally* AFAC Report.)  And

while AWPC's headquarters are in Philadelphia, it does not appear that AWPC was in any way

involved in the design, production, testing, sale, or distribution of the subject helicopter.  (*See*

Dalmasso Decl., ¶¶ 4–8; Helkey Aff., ¶¶ 5–8.)  The subject helicopter was designed and manufactured by Leonardo in Italy and sold initially to a Mexican company in Mexico. (Dalmasso Decl., ¶¶ 4–5.)  At the time of the accident, the subject helicopter was owned by a different Mexican company, SAA, and maintained by a third Mexican company, RFS.  (AFAC Report at 5, 7.)

Plaintiffs represent that one aspect of their defense will be that the subject helicopter was negligently maintained.  (Mot. at 11.)  Accordingly, much of the relevant evidence for this defense, namely witnesses and documents related to SAA and RFS's use and care for the subject helicopter, is in Mexico.  "[A]t this preliminary stage in the litigation, the Court's obligation is not to definitively determine what defenses would be legally or factually available at trial." *Behrens*, 487 F. Supp at 328.  "Instead, deciding a *forum non conveniens* motion simply requires delineating the likely contours of the case by ascertaining, among other things, the nature of the plaintiff's action, the existence of any potential defenses, and the essential sources of proof." *Id.* (cleaned up) (citing *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 181 (3d Cir. 1991)).

"The contours of this case reveal that there are [Mexico]-based third-parties who may bear some degree of culpability for the [helicopter crash] and who Defendants may justifiably seek to implead."[3]  *Behrens*, 487 F. Supp at 328; *see also Piper*, 453 U.S. at 259 ("problems posed by the inability to implead potential third-party defendants clearly support[s]" dismissal on grounds of *forum non conveniens*); *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283–84 (11th Cir. 2001) (district court did not abuse its discretion in dismissing a case concerning an

---

[3] While an attempt to implead SAA or RFS in Mexico may be time barred (*see* "Cruz Decl.," ECF 18-17, ¶ 10), Defendants would appear nonetheless to be able to contest their own liability based on a defense that SAA and/or RFS were negligent.  Regardless, a court need only consider a defendant's desire to pursue claims against foreign third parties and need not resolve whether the defendant's claims would be time barred.  *See Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 300 (3d Cir. 2010).

airplane crash in Argentina on grounds of *forum non conveniens*, in part based on the defendant's claims that evidence related to its defense of negligent maintenance on part of a third party was in Argentina).  The defendants present more than enough evidence from the AFAC Report to suggest that a defense that RFS and/or SAA were negligent would not be frivolous.  (*See* "Def. Reply," ECF No. 22, at 2–10.)  It does not matter, as the Plaintiffs maintain, that neither SAA or RFS ever repaired or altered the actuators.  (*See* Pls. Resp. at 13–14.)  The negligence case Defendants seek to present is that these companies knew that the SAS2 actuator needed to be replaced but failed to take necessary actions. (*See* Def. Reply at 14.)  Ultimately, the likely need to obtain relevant evidence from RFS and SAA in Mexico if this case were to proceed in Pennsylvania makes doing so less convenient, not more.

In contrast, Plaintiffs claim that there is a "clear convenience" in litigating this case in the Eastern District of Pennsylvania.  (Pls' Resp. at 11.)  In particular, they claim that "all the relevant evidence and witnesses for litigating the defective condition of the failed actuators is located in the United States."  (*Id.* at 12.)  To be sure, there is likely important relevant evidence regarding the actuators in the United States, as they were analyzed by Varex in Chicago and Honeywell in Michigan.  Furthermore, the NTSB, headquartered in Washington, D.C., played a significant role in the investigation, producing extensive reports evaluating the results of these analyses that were referenced and relied upon in the AFAC Report.  (AFAC Report at 48, Ex. E; ECF No. 30.)  And the SAS2 actuator that RFS found in need of repair had been sent to Precision Aviation Group in Georgia for repair.  (AFAC Report at 66, 68, 71.)  However, because none of these locations are in Pennsylvania or fall within a 100-mile radius of the courthouse where this Court sits, we could not compel the production of relevant witnesses or documents from any of these entities.  *See* Fed. R. Civ. P. 45(c); *Behrens*, 487 F. Supp at 321.

What is critical here is that the choice of forum is not between Mexico and the United

States broadly, but between Mexico and the Eastern District of Pennsylvania.  *See Da Rocha v.*

*Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318, 1323 (S.D. Fla. 2006) ("While it is true that

the Plaintiffs have identified numerous witnesses and documents in the United States and

Canada, none of them are in Florida where this Court sits.").  Plaintiffs claim that because

AWPC and Leonard are closely connected, "employees of Leonardo who designed,

manufactured, tested, distributed and sold the subject helicopter are much more likely to travel to

and/or interact with the headquarters of AWPC, Leonardo's base of operations for North

America, than they are with Mexico."  (Pls. Resp. at 12.)  However, Defendants point out that

this is immaterial, as they have stated that as a condition of dismissal here, they will be amenable

to service of process in Mexico and will not raise statute of limitations or jurisdictional defenses.

(Mot. at 7; Def. Reply at 11.)  And while it is true that a Mexican court would not have

jurisdiction to compel the production of evidence from the American sources that Plaintiffs

highlight, much of this evidence has already been extensively detailed in the AFAC Report, to

which the parties have access.  AFAC conducted the investigation, and while it collaborated with

the NTSB, it also collaborated with civil aviation authorities in Italy, Canada, and the European

Union, as well as two Mexican organizations.  (AFAC Report at 5–6.)  If anywhere is the ideal

forum for Plaintiffs to access relevant evidence regarding the crash, it is Mexico, where AFAC,

its employees, and records are located, not the Eastern District of Pennsylvania.[4]

---

[4] Plaintiffs also brought separate lawsuits against Honeywell in North Carolina and Precision in Georgia. (*See* Def. Reply at 2; ECF No. 23.)  While the suit against Honeywell has been dismissed under North Carolina's *forum non conveniens* doctrine (*see* "Hidalgo v. Honeywell," ECF No. 34), Plaintiffs will have the ability to access relevant evidence from Precision as part of their Georgia suit insofar as it is also not dismissed.

11

Although Plaintiffs argue that *Behrens* supports the idea that their choice of forum is entitled to deference, that case in fact points in the opposite direction. Specifically, Plaintiffs note the *Behrens* court's observation that "[t]here is some support for the proposition that if the *defendant* is headquartered in the country and/or forum where the case is brought, the plaintiffs' choice of forum is entitled to deference—*even if* the plaintiffs are foreign." *Behrens*, 487 F. Supp. 3d. at 317 (collecting cases); (Pls' Resp. at 12). The *Behrens* court concluded that because one of the defendants in that case was headquartered in Pennsylvania, and all of the defendants were located in the United States, it was at least somewhat convenient to litigate the case in the Eastern District of Pennsylvania. *Behrens*, 487 F. Supp. 3d. at 317. Critically, though, the court held that because the plaintiffs had not presented "considerable" evidence of convenience, and "because of the countervailing indications on convenience," the plaintiffs' choice of forum would only be entitled to a moderate amount of deference. *Id.* at 318. These "countervailing indications on convenience" were that much of the evidence related to defenses the defendants may have sought to assert, as well as relevant witnesses and all of the plaintiffs themselves, were in the United Kingdom. *Id.* Likewise, in this case, much if not all of the evidence regarding Defendants' negligent maintenance defense is in Mexico, as well as potential witnesses of the crash, relevant witnesses as to damages, and witnesses from AFAC. Furthermore, in *Behrens*, the court found that there was "a natural convenience of litigating" the case in Pennsylvania due to the fact that one of the plaintiffs' main theories was that one of the defendants made design decisions for a defective product from its headquarters in Pennsylvania. *Id.* In contrast, the subject helicopter here was designed and manufactured in Italy by Leonardo, and AWPC had no role in its production or sale. And unlike in *Behrens*, one of the defendants

here, Leonardo, is not located in the United States.  In short, *Behrens* does not support the Plaintiffs' case.[5]

Accordingly, Plaintiffs' choice of forum will only be accorded a "low degree of deference." *Windt.*, 529 F.3d at 191.  Plaintiffs have not shown that this case possesses a *bona fide connection* to the Eastern District of Pennsylvania, *Acosta*, 219 F. App'x at 86, and have not made a "strong showing of convenience" justifying granting any significant amount of deference to their choice of forum, *Behrens*, 487 F. Supp. 3d at 317.

### C.   Factor Three: Private Interest Factors

Next, we must analyze whether the balance of the relevant private and public interest factors indicate that trying this case in the Eastern District of Pennsylvania "would result in oppression or vexation to the [Defendants] out of all proportion to the [Plaintiffs'] convenience." *Windt*, 529 F.3d at 190.  The relevant "private interests" courts must consider are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for the attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) the possibility of viewing relevant premises; and (4) any other potential obstacle impeding an otherwise easy, cost-effective, and expeditious trial.  *Id.* at 189 (citing *Gulf Oil*, 330 U.S. at 508).  Here, the private interests weigh in favor of dismissal.

---

[5] *Melgares v. Sikorsky Aircraft Corp.*, 613 F. Supp.2d 231 (D. Conn. 2009), a case from the District of Connecticut, is also instructive.  That case concerned a helicopter crash in Spain which killed the plaintiffs' decedents.  *Melgares*, 613 F. Supp.2d at 236.  All of the plaintiffs and the decedents were Spanish citizens.  *Id.* at 241.  However, the helicopter at issue had been manufactured by the defendant in Connecticut.  *Id.* at 237.  Nonetheless, the court went on to only grant the plaintiffs' choice of forum "some" deference, less than what would be accorded domestic plaintiffs, and ultimately dismissed the plaintiffs' action on *forum non conveniens grounds*.  *Id.* at 245, 252.  In contrast to *Melgares*, the subject helicopter in this case was designed and manufactured in Italy, not the district in which this case was brought, and AWPC played no role in testing or distributing it.

1.      *Ease of Access to Sources of Proof*

As discussed, AFAC, the agency that conducted the investigation of the crash, is in Mexico.  Therefore, many relevant witnesses who were involved with the investigation, as well as important agency records, will be much more accessible should this case proceed in Mexico.  Furthermore, the crash wreckage is in Mexico.  While there is some relevant evidence in the United States concerning the actuators, we would lack jurisdiction to compel its production, in addition to any evidence in Mexico, and it has already been thoroughly discussed in the AFAC Report.  Furthermore, SAA and RFS, relevant non-parties for the Defendants' negligent maintenance defense, as well as crash witnesses, are located in Mexico.[6]  Finally, because the Plaintiffs and decedents are all Mexican citizens, most if not all relevant witnesses and records concerning the damages Plaintiffs and their decedents suffered are likely in Mexico.

*Dahl v. United Techns. Corp.*, 632 F.2d 1027 (3d Cir. 1980), a case concerning a helicopter crash in Norway, provides useful guidance on this front.  The helicopter in that case was manufactured in Connecticut but was owned and operated by a Norwegian company.  *Dahl*, 632 F.2d at 1028–29.  The crash was investigated by the Norwegian Civil Aviation Administration.  *Id.* at 1030.  As the district court stated, "a substantial amount of the testimonial evidence will come from Norwegians," including from people who knew the decedents on the issue of damages, employees from the companies that owned and serviced the helicopter on the issue of liability, and Norwegian government officials who investigated the accident.  *Id.*  Even though evidence relating to the liability of the helicopter manufacturer appeared to be "largely in

---

[6] Plaintiffs claim that "all the facts needed" for Defendants to pursue their defense based on the negligence of SAA and RFS are already detailed in the AFAC report, while "[t]he sources of proof for Plaintiffs' products liability claims, however, are overwhelming[ly] in the United States and require further discovery."  (ECF No. 29 at 2–3.)  However, Plaintiffs do not explain why the AFAC report is sufficient for Defendants' defense but would be inadequate for their products liability claim.

the United States," the Third Circuit held that the "district court did not err in concluding that access to materials and witnesses militated in favor of a Norwegian forum," in part because evidence related to the potential negligence of Norwegian companies that owned, operated, and maintained the helicopter was largely in Norway and the defendants would be unable to implead those companies if the case proceeded in the United States.  *Id.* at 1031.  Likewise, in this case, the helicopter crash occurred in Mexico, was investigated primarily by Mexican civil aviation authorities, and potential negligent third parties, as well damages witnesses, are in Mexico.  And unlike in *Dahl*, the helicopter at issue was not even manufactured in the United States.

Plaintiffs contend that *Dahl* is inapposite for several reasons, none of which are convincing.  First, the Plaintiffs claim that, unlike in *Dahl*, foreign investigative witnesses are of minimal importance because AFAC relied heavily on the NTSB to investigate the actuators. (Pls' Resp. at 17.)  Be this as it may, AFAC was still the organization that conducted the investigation of the crash and its investigators, who collaborated with the NTSB and can speak to its findings and its role in AFAC's investigation, are in Mexico.  Second, Plaintiffs maintain that unlike the foreign maintenance company in *Dahl*, which "serviced or made installations on the helicopter," RFS never removed the relevant actuators.  (*Id.*, quoting *Dahl*, 632 F.2d at 1030.) However, that is besides the point.  What is relevant is that the Defendants have presented a nonfrivolous case of negligence against RFS; it is just that the Defendants take issue with RFS's *inaction* rather than any specific actions.  Third, Plaintiffs contend that *Dahl* is distinguishable because AFAC, unlike the Norwegian authorities when *Dahl* was decided, is not currently conducting its investigation.  (*Id.*)  However, *Dahl* does not turn in any way on the fact that Norwegian authorities were currently investigating the crash rather than having already done so. *See Dahl*, 632 F.2d at 1030 ("Among the potential liability witnesses are . . . the Norwegian

government officials who *investigated* the accident." (emphasis added)).  Lastly, Plaintiffs

emphasize that the Defendants cannot consent to make available in Mexico the products liability

evidence in this case in the same way the helicopter manufacturer in *Dahl* consented to make

available in Norway all of the relevant evidence in its control.  (Pls' Resp. at 18, citing *Dahl*,

632 F.2d at 1031.)  Instead, according to Plaintiffs, the product liability evidence here is

primarily in the hands of third parties in the United States.  (*Id.*)  Again, however, this American

evidence is outside of the jurisdiction of this Court.  In sum, *Dahl* points towards dismissal here

with regard to ease of access to sources of proof.[7]

2.     *Ability to Compel Witness Attendance, if Necessary*

As discussed, any witnesses located at Honeywell's facility in Michigan, Varex's facility

in Chicago, and NTSB headquarters in Washington, D.C., are outside of the jurisdiction of this

Court pursuant to Fed. R. Civ. P. 45(c).  While they are also outside the jurisdiction of Mexican

courts, AFAC officials, RFS and SAA employees, the Mexican witnesses to the crash, and

Mexican damages witnesses, are not.  On balance, significantly more non-party witnesses would

be potentially amendable to process in Mexico compared to the Eastern District of Pennsylvania.

*See Behrens*, 487 F. Supp. 3d. at 324 ("In assessing the relative availability and cost of obtaining

the attendance of [] witnesses in this forum as compared to [a foreign forum], the distinction

between party witnesses and nonparty witnesses is relevant.").  And while the Hague Convention

is an available mechanism to depose foreign witnesses, "depositions are not an 'adequate

---

[7] Plaintiffs contend that this case is more akin to *Lewis v. Lycoming*, 917 F. Supp. 2d 366 (E.D. Pa. 2013). The *Lewis* case concerned a helicopter crash in the UK and involved British plaintiffs and British decedents.  *Lewis*, 917 F. Supp. 2d at 368–69.  Nevertheless, the court denied the defendants' motion to dismiss on the ground of *forum non conveniens*.  *Id.* at 377.  However, unlike this case, the helicopter in that case was manufactured in the U.S. and crash wreckage was shipped to Delaware, which fell within the subpoena power of this Court sitting in Philadelphia.  *See id.* at 369; Fed. R. Civ. P. 45(c).  These facts played a key role in the court's decision to deny the motion to dismiss.  *See Lewis*, 917 F. Supp. 2d at 371, 376.

16

substitute' for live testimony at trial" and "complying with the Hague Convention would come at excessive cost to Defendants and would put them at a significant, and unfair, disadvantage." *Id.* (quoting *Jones v. FC USA, Inc.*, No. 17-1126, 2017 WL 5453497, at *4 (E.D. Pa. Nov. 14, 2017)).  Therefore, this factor also weighs in favor of dismissal and adjudication in Mexico.

### 3.     Means to View Relevant Premises and Objects

Both parties agree that viewing the accident site, at minimum, "*per se* is not critical." (Mot. at 16; Pls' Resp. at 16.)  However, to the extent that viewing the crash wreckage may be necessary, this weighs in favor of adjudication in Mexico.  *See Lewis*, 917 F. Supp. 2d at 371, 376.

### 4.     Other Factors

The parties dispute to what extent the need to translate documents and witness testimony weighs in favor of dismissal here and adjudication in Mexico.  Specifically, Defendants claim that "[m]ost of the relevant documents, including accident investigation reports, flight logs, maintenance logs, training records, other records relating to the Subject Helicopter and its crew as well as governmental regulatory oversight documents will have been originally drafted in Spanish, requiring official translation into English, at considerable expense," if this action were to proceed in the United States.  (Mot. at 17.)  They also aver that they have already incurred significant expense translating the AFAC Report from Spanish to English.  (*Id.* at 14.) Defendants also "note that English will not be the native language of the Plaintiffs or the overwhelming majority of nonparty witnesses, such as personnel from SAA and RFS, persons involved in the investigation of the Subject Accident, and persons involved in the criminal investigation of RFS."  (*Id.* at 17.)  Plaintiffs counter that "[m]any of the SAA records referred to by RFS, including the MEL, however, were kept in English and all the technical documents that RFS would have used to maintain the subject helicopter were published in English – not

Spanish" and that these documents would need to be translated to Spanish if this case were to proceed in Mexico.  (Pls' Resp. at 23.)

While some amount of translation between English and Spanish will be inevitable whether this action proceeds in Mexico or the United States, on balance there will likely be a greater need for translation if this case were to proceed in the United States rather than Mexico. This factor also weighs in favor of adjudication in Mexico.

### D.        Factor Four: Public Interest Factors

The relevant "public interests" that a court must consider include: "administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in 'having the trial of a diversity case in a forum that is at home with the state law that must govern the case'; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."  *Windt*, 529 F.3d at 189 (citing *Gulf Oil*, 330 U.S. at 508–09). "To evaluate these factors, the court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum."  *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988).  We are satisfied that the public interests also weigh in favor of dismissal.

#### 1.        Court Congestion

Defendants essentially argue that because of the private interest factors discussed above, trying this case in the Eastern District of Pennsylvania will be "inefficient, time-consuming, costly, and an unnecessary burden on this Court's already busy docket."  (Mot. at 17–18.) However, this argument essentially amounts to a re-hashing of the private interest factors. Defendants do not present any evidence regarding the relative congestion of this Court compared

18

to the court where this action might be brought in Mexico.  *See Lony II*, 935 F.2d at 613 (court did not "consider comparative court congestion as a factor weighing toward dismissal" because there was no evidence in the record comparing "the relative congestion of German and Delaware courts"); *Roe v. Wyndham Worldwide, Inc.*, No. 18-1525, 2020 WL 707371, at *7 (D. Del. Feb. 12, 2020) (because defendant did not present any evidence upon which court could compare the congestion of the U.S. District Court for the District of Delaware and the courts of Turkey, court could not conclude that court congestion favored transfer); *Hoffman v. Rosewood Hotels & Resorts, LLC*, No. 2012-86, 2013 WL 3974098, at *6 (D.V.I. July 31, 2013) (same with regard to the U.S. District Court of the Virgin Islands and the courts of the British Virgin Islands). Accordingly, this factor is accorded no weight in our analysis.

### 2.    *Local Interests*

We must consider the interests of three jurisdictions with regard to this case: Pennsylvania, the United States, and Mexico.  *See Behrens*, 487 F. Supp. 3d. at 322.  While the Plaintiffs did not bring this case in Pennsylvania state court, it was brought pursuant to Pennsylvania statutes.  (*See* Compl., ¶ 41.)  Pennsylvania certainly has an interest in seeing its laws enforced, *see Lony I*, 886 F.2d at 643, and "in policing the conduct of corporations that operate within its borders, especially in the context of an international accident," *Behrens*, 487 F. Supp. 3d. at 333.  However, AWPC was not involved in the design, production, sale, or distribution of the subject helicopter, which crashed in Mexico.  Therefore, Pennsylvania has little to no interest in having its laws enforced in connection to this case.

The next jurisdiction to be considered is the United States generally.  "Numerous courts have acknowledged the national interest in deterring and punishing unlawful corporate behavior, regardless of the location of the injury or the citizenship of the victims."  *Behrens*, 487 F. Supp.

3d. at 334 (citing *Windt*, 529 F.3d at 193–94; *Lewis*, 917 F. Supp. 2d at 375).  In particular, this

is the case when defective products are designed or manufactured in the United States.  *See*

*Lewis*, 917 F. Supp. 2d at 375, 377 (denying a motion to dismiss pursuant to *forum non*

*conveniens* in a case involving a helicopter crash where "the aircraft and all its relevant parts

were designed and manufactured" in the United States); *McCafferty ex rel. Est. of Prant v.*

*Raytheon Inc.*, No. 03-6729, 2004 WL 1858080, at *3 (E.D. Pa. Aug. 19, 2004) (denying a

motion to dismiss pursuant to *forum non conveniens* in a case involving a plane crash where

plaintiffs claimed that American defendants "were involved in the manufacture and sale of the

allegedly defective aircraft and defective engine"); *ICIPA S.R.L. v. Learjet, Inc.*, No. 97-2725,

1997 WL 539714, at *3 (E.D. Pa. Aug. 7, 1997) (plaintiff's claims regarding a malfunctioned

aircraft had "far more relevance to the place of design and manufacture, *i.e.,* the United States,

than to Italy, the mere situs of registry and ownership").  Here, the defective SAS1 actuator

seems to have been designed by Honeywell in Arizona (Sommer Decl., ¶ 9; Pls' Resp. at 28) and

manufactured at Honeywell's Boyne City, Michigan, facility (Pls. Resp. at 7; ECF 18-6).

  Therefore, to the extent that the United States has an interest in this case, its interest

concerns Honeywell's activities, which occurred outside of this district.  "Although the

relationship between the United States and a case generally should be considered, this does not

mean that the relationship between the local federal court district and the case should not."

*Windt*, 529 F.3d at 191.  The Plaintiffs' complaint simply "does not raise a local dispute."  *Id.* at

193.  While AWPC is headquartered in Philadelphia, as discussed, it did not have any

involvement with the production, sale, testing, or distribution of the subject helicopter.  *See id.*

("Although two of the defendants are residents of New Jersey, there are no allegations that

actions or events occurring in New Jersey gave rise to the fraud and mismanagement at issue in

this case.").[8]  True, the SAS1 actuator was manufactured in the United States pursuant to a

"Technical Standard Order" issued by the Federal Aviation Administration.  (Sommer Decl.,

¶ 9.)  However, any relevant manufacturing defect that was counter to federal regulation

occurred in Michigan, not in Pennsylvania.  Furthermore, even Plaintiffs' suit against Honeywell

in North Carolina has been dismissed on state-level *forum non conveniens* grounds.  (*See*

Hidalgo v. Honeywell.)  As the court held there, "[a]ny interest . . . the United States might have

related to Honeywell's . . . manufacture of actuators . . . elsewhere in the United States does not

overcome the supreme interest Mexico has in this accident."  (*Id.*, ¶ 12.)

 Mexico's "supreme interest" is clear.  The accident occurred in Mexico, killed Mexican

citizens (including two prominent Mexican politicians), was investigated by Mexican authorities

at AFAC, and the subject helicopter was owned, operated, and maintained by Mexican

companies.  Furthermore, authorities in Puebla, Mexico, are currently conducting a criminal

investigation into officials at RFS.  (*See* ECF No. 14-6.)[9]  As Defendants state, "the issue of the

safety of Mexican citizens flying in an aircraft owned, operated, and maintained by Mexican

---

[8] Therefore, this case is unlike *Miller v. Boston Scientific Corp.*, 380 F. Supp. 2d 443 (D.N.J. 2005).
There, the court held that "[a] defendant's contacts with the forum state 'are relevant to the *forum non conveniens* inquiry only insofar as they relate to the ease and fairness of trying a case in particular jurisdiction.'"  *Miller*, 380 F. Supp. 2d at 454 (D.N.J. 2005) (quoting *Manu Int'l, S.A. v. Avon Prods., Inc.*, 641 F.2d 62, 65 (2d Cir. 1981)).  First, we note that this precedent appears to be in conflict with and thus superseded by the precedent just cited in the Third Circuit's subsequent decision in *Windt*, which emphasized the relevance of the defendant's contacts with the forum in evaluating the forum's interest in the dispute.  Second, in that case, the defendant conducted clinical trials on the allegedly defective product in the local federal court district and therefore, the extent of the defendant's contacts with New Jersey were "not a factor favoring dismissal."  *Id.*  Here, AWPC did not engage in any activity in this district related to the subject helicopter.

[9] *See also* Claudia Espinoza, *Cae otra implicada en accidente de helicóptero que causó la muerte de los Moreno Valle en Puebla*, EL HERALDO DE MEXICO (Feb. 16, 2023),
https://heraldodemexico.com.mx/nacional/2023/2/16/cae-otra-implicada-en-accidente-de-helicopero-que-causo-la-muerte-de-los-moreno-valle-en-puebla-482236.html [https://perma.cc/9CJ9-E4JP] (title translates to "Another implicated in helicopter accident that caused the death of the Moreno Valles in Puebla falls").

companies is one of compelling interest and of paramount importance to Mexico, and far outweighs any interest that Pennsylvania [or the United States] may have." (Mot. at 19.)  *See also Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139, 144 (E.D. Tex. 1992) (holding that Mexico, rather than Texas or the United States, had "the paramount interest" in a lawsuit concerning the crash of a Mexican owned airplane in Mexico, involving primarily Mexican plaintiffs, and which was investigated by the Mexican government); *Air Crash over the Mid-Atlantic*, 760 F. Supp. 2d at 846 (finding that "France's interest [in litigation involving crash of an Air France flight] is especially obvious here because it is also conducting the official civil investigation and an official criminal investigation").  Accordingly, the balance of local interests clearly favors dismissal.  Furthermore, "in light of [Pennsylvania's] lack of associations with this case and [Mexico's] substantial associations with this case . . . the burdens of jury service on the local community in resolving this non-local dispute favor[] dismissal."  *Windt*, 529 F.3d at 193.

### 3.    *Conflict of Laws and the Problems in Applying Foreign Law*

Finally, we must consider the interest in "having the trial of a diversity case in a forum that is at home with the state law that must govern the case" and "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law."  *Windt*, 529 F.3d at 189.  "If choice of law analysis reveals that the US court will need to apply foreign law, this factor weighs in favor dismissal."  *Behrens*, 487 F. Supp. 3d. at 336–37.

Since "[a] federal court sitting in diversity applies the choice of law regime of the state in which the court sits," were this case to proceed in this Court, we would look to Pennsylvania's choice of law framework.  *Id.* (citing *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996)).  "Pennsylvania choice of law rules require a three-step analysis."  *Id.*  "First, the district court must determine whether there is an '*actual* or real conflict between the potentially

applicable laws.'" *Id.* (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (emphasis in original)). "Second, if there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation." *Id.* (cleaned up) (quoting *Hammersmith*, 480 F.3d at 230). "The third step depends on the type of conflict that exists." *Id.* "[T]here is a true conflict when the governmental interests of *both* jurisdictions would be impaired if their law were not applied." *Lacey*, 932 F.2d at 187 n.15. "If a true conflict exists, the court must determine which state has the greater interest in the application of its law." *Id.* "A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Id.* at 187. "In such a situation, the court must apply the law of the state [or jurisdiction] whose interests would be harmed if its law were not applied." *Id.* "An 'unprovided-for' case is one in which neither state's interests would be impaired if its laws were not applied." *Hammersmith*, 480 F.3d at 230 n.9. In that situation, courts should apply the traditional, lex loci rules; that is, courts apply the law of the place of the contract or injury depending on if the case is a contract or tort action. *Id.* at 227, 230 n.9.

First, we find that the relevant law of Pennsylvania and Mexico are in conflict. In particular, Mexican law appears to significantly limit the damages available in a wrongful death suit compared to what is available under Pennsylvania law.[10] (*See* Alegre Aff., ¶¶ 21–26, 30–31, 46.) *See also* 42 PA. CONS. STAT. §§ 8301, 8302; *Kimble v. Laser Spine Inst., LLC*, 264 A.3d

---

[10] Plaintiffs also assert that Mexico does not recognize strict products liability. (Pls' Resp. at 32.) However, their source for this claim states that "[t]here is no legislation in Mexico regulating claims of a defect[ive] product for death. There is a strict or subjective civil liability in which a person, by their wrongful act, causes damage to another. In either case, whoever causes such damage must be held liable for it, but there is no Products Liability Law in Mexico." (Cruz Decl., ¶ 5.) From this, it does not appear to us that any difference in products liability law between Mexico and Pennsylvania would be relevant or determinative here.

782, 801 (Pa. Super. Ct. 2021) (Pennsylvania's Wrongful Death Act "permits a claimant to recover both economic and noneconomic damages, including damages for loss of society and comfort" and "may also extend to the profound emotional and psychological loss suffered as a result of the death of a family member").

However, this conflict appears to be a "false conflict."  As the Plaintiffs put it, "Mexico's failure to adopt strict liability and its more restrictive damages law protect Mexican residents and corporations from expansive liability and damages."  (Pls' Resp. at 32.)  Applying Pennsylvania law here would not impair the interests of Mexico in protecting its citizens and companies from expansive liability because the defendants are not Mexican.  (*Id.*)  Applying Mexican law here, however, would impair Pennsylvania's interest in fully deterring the tortious conduct of its citizens, should AWPC be found liable.[11]  Therefore, were this case to proceed here, we would apply the law of Pennsylvania, the jurisdiction "whose interests would be harmed if its law were not applied."  *Lacey*, 932 F.2d at 187.  Accordingly, this factor does not weigh in favor of dismissal.

**E.    Summary and Conclusion**

We are satisfied that Mexico is a more appropriate forum to adjudicate Plaintiffs' claims. Mexico is an adequate alternative forum for this case and Plaintiffs' choice of forum is accorded a low amount of deference, as neither Plaintiffs nor this case possess a *bona fide* connection to this district.  In addition, both the private and public interest factors weigh decidedly in favor of dismissal.  With regard to the private factors, it will be much more convenient to access relevant sources of proof (including crash wreckage to the extent that it is relevant) in Mexico and for

---

[11] As discussed, AWPC does not appear to have any direct connection to the subject helicopter.  However, it is not our role at this stage to determine if AWPC is or could be found liable in connection with the accident.

relevant witnesses to testify there.  Furthermore, the need for translating documents and testimony will be less burdensome in Mexico.  With regard to the public factors, no problems in conflict of laws or in the application of foreign law would be presented were this case to proceed here, as we would apply Pennsylvania law.  Moreover, there is no evidence that this Court is any more congested than the Mexican court or courts where this action might be brought.  However, Mexico has the paramount interest in trying this case, as the accident occurred in Mexico, killed Mexican citizens, and the subject helicopter was owned, operated, and maintained by Mexican companies.  In short, the "locus," or center of gravity, of this case is squarely in Mexico and it would not be appropriate to burden a Pennsylvania jury with this case.  *See Van Cauwenberghe*, 486 U.S. at 528.

We are satisfied that "Defendants have carried their burden to show that litigating this case in Pennsylvania would result in oppressiveness and vexation out of all proportion" to any convenience of the Plaintiffs and "have overcome the Third Circuit's admonition that dismissal for *forum non conveniens* is the exception rather than the rule." *Behrens*, 487 F. Supp. 3d. at 344 (cleaned up) (citing *Lony II*, 935 F.2d at 609).  Dismissal is appropriate here.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted on the grounds of *forum non conveniens*.  Accordingly, we need not address Defendant's claims under Fed. R. Civ. P. 12(b)(7) regarding the failure of Plaintiffs to join necessary parties under Fed. R. Civ. P. 19.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**